United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 03, 2023
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **SERTA SIMMONS BEDDING, LLC,** | § | **Case No. 23-90020 (DRJ)** |
| *et al.,* | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | **Re: Docket Nos. 11, 109** |
| | § | |

AMENDED
## FINAL ORDER (I) AUTHORIZING DEBTORS
## TO (A) OBTAIN POSTPETITION FINANCING AND
## (B) USE CASH COLLATERAL, (II) GRANTING (A) LIENS
## AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
## EXPENSE STATUS AND (B) ADEQUATE PROTECTION TO
## CERTAIN PREPETITION LENDERS, (III) MODIFYING
## <u>AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF</u>

Upon the motion (the "**Motion**")[2] of Serta Simmons Bedding, LLC ("**SSB**") and its

affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-

captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363,

364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506, and 507 of title 11 of the United States

Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-1 of the Bankruptcy Local Rules

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined therein, the DIP Loan Documents (as defined below).

for the Southern District of Texas (the "**Bankruptcy Local Rules**"), seeking entry of this final

order (the "**Final Order**"), among other things, the following relief, on a final basis:

(i)      authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis in the aggregate principal amount of up to $125 million (the "**DIP Facility**" and the loans thereunder, the "**DIP Loans**"), pursuant to the terms and conditions of that certain *Senior Secured Super-Priority Debtor-in-Possession ABL Credit Agreement*, attached to the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Claims with Superpriority Administrative Expense Status and (B) Adequate Protection to Certain Prepetition Lenders, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (Docket No. 109) (the "**Interim Order**") as **Exhibit 2** (as the same may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "**DIP Credit Agreement**") by and among (a) Dawn Intermediate, LLC ("**Holdings**"), (b) SSB (the "**Top Borrower**"), (c) National Bedding Company L.L.C. and SSB Manufacturing Company, as borrowers (collectively with Top Borrower, the "**Borrowers**"), (d) Eclipse Business Capital LLC, as administrative agent (in such capacity, the "**DIP Agent**"), and (e) the lenders from time to time party thereto (the "**DIP Lenders**" and each, a "**DIP Lender**"; the DIP Agent and the DIP Lenders under the DIP Loan Documents (as defined below) are collectively referred to herein as the "**DIP Credit Parties**");

(ii)      authorizing the Debtors to execute and deliver the DIP Credit Agreement and all other related documents, instruments, letters, notes, and agreements, including, without limitation, security agreements, deposit account control agreements, pledge agreements, guaranties and promissory notes (collectively, the "**DIP Loan Documents**") and to perform such other acts as may be necessary, convenient, advisable, desirable, or appropriate in connection with the DIP Loan Documents;

(iii)      until the Termination Declaration Date (as defined herein), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents and this Final Order, authorizing the Debtors, to request extensions of credit under the DIP Facility up to an aggregate principal amount of $125,000,000 (the "**DIP Financing**"), of which $35 million plus the aggregate amount of the Letters of Credit (including, without limitation, those Existing Letters of Credit that are designated "Continuing Letters of Credit" in accordance with paragraph 11(d) of this Final Order) became available immediately upon entry of the Interim Order (the "**Interim Financing**");

(iv)      authorizing the Debtors to incur and guarantee loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees (including, without limitation, letter of credit fees, letter of credit issuing fees, commitment fees, administrative agency fees, and other fees payable pursuant to the DIP Loan Documents), costs, expenses, and other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other

Obligations (as defined in the DIP Credit Agreement) due or payable under the DIP Facility, including with respect to the Letters of Credit (collectively, the "**DIP Obligations**"), and to perform such other and further acts as may be necessary, convenient, advisable, desirable, or appropriate in connection therewith;

(v)      authorizing all Debtors other than the Borrowers (the "**DIP Guarantors**") to jointly and severally guarantee the DIP Facility and DIP Obligations as set forth herein and in the DIP Loan Documents;

(vi)      granting allowed superpriority administrative expense claim status pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Chapter 11 Cases and any Successor Cases (as defined herein) to the DIP Obligations, subject to the priorities set forth herein;

(vii)      authorizing the Debtors to use all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), that the Debtors are holding or may obtain, pursuant to Bankruptcy Code sections 361 and 363 and Bankruptcy Rules 4001(b) and 6004 and in accordance with the Approved Budget (as defined below);

(viii)      granting to the DIP Agent, for the benefit of the DIP Credit Parties, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting Cash Collateral, which liens shall be subject to the priorities set forth herein;

(ix)      authorizing the Debtors to pay the principal, interest, fees, costs, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, unused line fees, closing fees, administrative fees, any additional fees, exit fees, set forth in the DIP Loan Documents, the reasonable and documented fees and disbursements of the DIP Credit Parties' attorneys, advisers, accountants, and other consultants, and all related expenses of the DIP Credit Parties, in each case, subject to the terms and provisions of the DIP Credit Agreement;

(x)      authorizing the Debtors to provide adequate protection to the Prepetition Secured Creditors (as defined herein) solely to the extent of any Diminution in Value (as defined herein), which adequate protection shall include certain adequate protection liens, claims and payments described herein;

(xi)      approving certain stipulations by the Debtors with respect to the Prepetition Credit Documents and the Prepetition Collateral as set forth herein;

(xii)      waiving any applicable stay and provisions for immediate effectiveness of this Final Order;

(xiii)      vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and

provisions of the DIP Loan Documents, the Interim Order, and this Final Order; and

(xiv)   granting related relief.

The Court having considered the relief requested in the Motion, the exhibits attached thereto, the *Declaration of Brent T. Banks in Support of Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Claims with Superpriority Administrative Expense Status and (B) Adequate Protection to Certain Prepetition Lenders, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (Docket No. 27) and the *Declaration of John Linker in Support of Debtors' Chapter 11 Petitions and First Day Relief* (Docket No. 26), the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on January 24, 2023 (the "**Interim Hearing**") and the final hearing held on March 1, 2023 (the "**Final Hearing**"); and due and sufficient notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), 9014, and all applicable Bankruptcy Local Rules; and the Final Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the relief requested is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' business and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry in the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    _Petition Date_.  On January 23, 2023 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") commencing these Chapter 11 Cases.  On January 24, 2023, this Court entered an order approving joint administration of the Chapter 11 Cases.

B.    _Debtors in Possession_.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.    _Jurisdiction and Venue_.  This Court has jurisdiction, pursuant to 28 U.S.C. § 1334, over these proceedings and over the persons and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief sought in the Motion and granted in this Final Order are sections 105, 361, 362, 363, 364, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Bankruptcy Local Rules 2002-1, 4001-1, 4002-1(i), and 9013-1.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.      _Committee Formation_.  On February 9, 2023, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Committee**").

E.      _Notice_.  The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

F.      _Debtors' Stipulations, Releases, and Acknowledgements_.  In requesting the use of Cash Collateral, and in exchange for and as a material inducement to the Prepetition Secured Creditors to agree to consent to access the cash collateral, and subordination of the Prepetition Liens (as defined below) to the Carve Out (as defined below) and DIP Liens (as defined below), solely with respect to certain collateral, and as a condition to consenting to the use of Cash Collateral, and without prejudice to the rights of the parties-in-interest as set forth in paragraphs 30 and 43 herein, upon entry of the Interim Order, the Debtors admitted, stipulated, acknowledged, and agreed, as follows (collectively, the admissions, stipulations, acknowledgements, and agreements set forth in this paragraph F, the "**Debtors' Stipulations**"):

(i)      _Prepetition ABL Obligations_.  Holdings, Top Borrower, certain of the other Debtors (together with the guarantors of the Prepetition ABL Facility, collectively, the "**Prepetition ABL Obligors**"), UBS AG, Stamford Branch, as administrative agent (in such capacity, the "**Prepetition ABL Agent**") for its own benefit and the benefit of the lenders from time to time party thereto (collectively, with the Prepetition ABL Agent, the "**Prepetition ABL Lenders**") are party to that certain _ABL Credit Agreement_ dated as of November 8, 2016 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time,

the "**Prepetition ABL Agreement**," and together with the Loan Documents (as defined therein) and the Prepetition ABL Payoff Letter (as defined herein), collectively, the "**Prepetition ABL Documents**" and the revolving facility thereunder, the "**Prepetition ABL Facility**").  Pursuant to the Prepetition ABL Documents, the Prepetition ABL Lenders provided revolving credit, certain banking products and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Obligors.  Under the Prepetition ABL Documents, the Prepetition ABL Lenders provided the Prepetition ABL Obligors with, among other things up to $200,000,000 in Revolving Commitments (as defined in the Prepetition ABL Agreement), including a $40,000,000 Letter of Credit Sublimit (as defined in the Prepetition ABL Agreement). As of the Petition Date, there were (i) no outstanding revolving loans, (ii) $28 million in Existing Letters of Credit and (iii) other outstanding obligations under the Prepetition ABL Documents, including, without limitation, reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, arising, due, owing or chargeable in respect of any of the Prepetition ABL Obligors' obligations pursuant to, or secured by, the Prepetition ABL Documents, in each case payable pursuant to the terms and conditions of the Prepetition ABL Agreement (collectively, the "**Prepetition ABL Obligations**").  The Prepetition ABL Obligations are secured by (a) first priority security interests in and liens on the ABL Priority Collateral (as defined in the ABL Intercreditor Agreement (as defined herein)) and (b) second priority security interests in and liens on the Term Loan Priority

Collateral (as defined in the ABL Intercreditor Agreement) (the ABL Priority Collateral and the Term Loan Priority Collateral together, the "**Prepetition Collateral**" and the liens and security interests in clauses (a) and (b), the "**Prepetition ABL Liens**").

(ii)     *Prepetition PTL Obligations*.  Holdings, Top Borrower, and certain of the other Debtors as borrowers (together with the guarantors of the Prepetition PTL Facility, collectively, the "**Prepetition PTL Obligors**"), Wilmington Savings Fund Society, FSB, as successor administrative agent and collateral agent (collectively in such capacities, and including any predecessors and successors thereto, "**Prepetition PTL Agent**") for its own benefit and the lenders, and the lenders from time to time party thereto (collectively with the Prepetition PTL Agent, the "**Prepetition PTL Lenders**") are party to that certain *Super-Priority Term Loan Agreement*, dated as of June 22, 2020 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition PTL Agreement**," and together with the Loan Documents (as defined therein) the "**Prepetition PTL Documents**" and the term loan facility thereunder, the "**Prepetition PTL Facility**").  As of the Petition Date, the Prepetition PTL Obligors were obligated under the Prepetition PTL Agreement to the Prepetition PTL Lenders in the aggregate outstanding principal amount of not less than $1.027 billion, on account of Term Loans (as defined in the Prepetition PTL Agreement) plus all accrued, accruing, and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, arising, due, owing or chargeable in respect of any of the Prepetition PTL Obligors' obligations pursuant to,

or secured by, the Prepetition PTL Documents, in each case constituting "Obligations" (as defined in the Prepetition PTL Agreement) and due and payable pursuant to the terms and conditions of the Prepetition PTL Agreement (the "**Prepetition PTL Obligations**").   The Prepetition PTL Obligations are secured by (a) first priority security interests in and liens on the Term Loan Priority Collateral, and (b) second priority security interests in and liens on the ABL Priority Collateral (the liens and security interest in clauses (a) and (b), the "**Prepetition PTL Liens**").

          (iii)    *Prepetition Non-PTL Obligations.*   Holdings, Top Borrower, and certain of the other Debtors as borrowers (together with the guarantors, collectively, the "**Prepetition Non-PTL Obligors**"), UBS AG, Stamford Branch, as administrative agent and collateral agent (collectively in such capacities, the "**Prepetition Non-PTL Agent**" and, together with the Prepetition PTL Agent, the "**Prepetition Term Loan Agents**" and, together with the Prepetition ABL Agent, collectively, the "**Prepetition Agents**") for its own benefit and the lenders, and the lenders from time to time party thereto (collectively with the Prepetition Non-PTL Agent, the "**Prepetition Non-PTL Lenders**" and, together with the Prepetition PTL Lenders, the "**Prepetition Term Loan Lenders**" and, together with the Prepetition ABL Lenders, collectively, the "**Prepetition Secured Creditors**") are party to that certain *First Lien Term Loan Agreement* dated as of November 8, 2016 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition Non-PTL Agreement**," and, together with the Loan Documents (as defined therein), the "**Prepetition Non-PTL Documents**" (and, collectively with the Prepetition PTL Documents and the Prepetition ABL Documents, the "**Prepetition Credit Documents**") and the term loan facility thereunder, the "**Prepetition Non-PTL Facility**" (and together with the Prepetition ABL Facility and the Prepetition PTL Facility,

the "**Prepetition Loan Facilities**") and the obligations thereunder the "**Prepetition Non-PTL Obligations**" (and, together with the Prepetition PTL Obligations, collectively, the "**Prepetition Term Loan Obligations**" and, together with the Prepetition ABL Obligations, collectively, the "**Prepetition Secured Obligations**")).  The Prepetition Non-PTL Obligations are secured by (a) first priority security interests in and liens on the Term Loan Priority Collateral, and (b) second priority security interests in and liens on the ABL Priority Collateral (the liens and security interest in clauses (a) and (b), the "**Prepetition Non-PTL Liens**" and, together with the Prepetition PTL Liens, the "**Prepetition Term Loan Liens**" and, together with the Prepetition ABL Liens, collectively, the "**Prepetition Liens**"), subject in all respects to the Intercreditor Agreements (as defined below).

(iv) *Intercreditor Agreements*.  Pursuant to that certain *ABL Intercreditor Agreement* dated as of November 8, 2016, by and among the Prepetition ABL Agent and each of the Prepetition Term Loan Agents (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**ABL Intercreditor Agreement**"), the Prepetition Agents have agreed, among other things and as more specifically set forth therein, on the respective rights, interests, obligations, priority, and positions of the Prepetition Lenders with respect to the Prepetition Collateral.

(v) Pursuant to that certain *First Lien Intercreditor Agreement* dated as of June 22, 2020, by and between the Prepetition PTL Agent and the Prepetition Non-PTL Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Term Intercreditor Agreement**," and together with the ABL Intercreditor Agreement, the "**Intercreditor Agreements**"), the Prepetition Term Loan Agents have agreed, among other things and as more specifically set forth therein, on the respective rights, interests, obligations, priority

and positions of the Prepetition Term Loan Creditors with respect to the Prepetition Collateral. The Intercreditor Agreements are "subordination agreements" within the meaning of section 510(a) of the Bankruptcy Code. The DIP Credit Agreement shall constitute a "Refinancing" (as such term is defined in the applicable Intercreditor Agreement). As a result thereof, the DIP Credit Parties' interests in the Prepetition Collateral and DIP Collateral shall be the same as the Prepetition ABL Agent prior to such Refinancing and shall be governed by the Intercreditor Agreements unless otherwise expressly provided by this Final Order. The Intercreditor Agreements are, in each case, binding and enforceable against the Prepetition Secured Creditors in accordance with their terms.

(vi)   *Prepetition Secured Obligations*. Each of the Debtors acknowledge that the Prepetition ABL Obligations and the Prepetition PTL Obligations owing to the Prepetition ABL Lenders and the Prepetition PTL Lenders, respectively, constitute legal, valid, and binding obligations of the Debtors and their applicable affiliates, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition ABL Obligations and the Prepetition PTL Obligations owing to the Prepetition ABL Lenders and the Prepetition PTL Lenders, respectively, is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases.

(vii)   *Prepetition Liens*. The Debtors acknowledge that the Prepetition Liens granted to the Prepetition Secured Creditors constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and

perfected security interests in and liens on the Prepetition Collateral, were granted to, or for the benefit of, the applicable Prepetition Secured Creditors for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

(viii)    *No Challenges/Claims*.  No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition ABL Obligations and Prepetition PTL Obligations exist, and no portion of the Prepetition Liens or Prepetition ABL Obligations and Prepetition PTL Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtors and their estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of the Prepetition ABL Lenders and Prepetition PTL Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Credit Documents, the Prepetition ABL Obligations, the Prepetition PTL Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition ABL Obligations and the Prepetition PTL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.  The Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations or

the Prepetition PTL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens.  Notwithstanding anything to the contrary herein, nothing herein precludes, prohibits, or waives the rights of the Debtors to seek to enforce the Prepetition Credit Documents or the Intercreditor Agreements or seek relief regarding the interpretation, validity, or effectiveness of the Prepetition Credit Documents or the Intercreditor Agreements including, but not limited to, the Adversary Proceeding (as defined in the RSA (as defined in the Motion)).

       (ix)    *Cash Collateral*.  All of the Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code and is Prepetition Collateral of the Prepetition Secured Creditors, subject in all respects to the priorities set out in the Intercreditor Agreements; provided, however, that nothing in this Final Order shall be construed to grant any of the Debtors' creditors a replacement lien, a priming lien, and/or any other type of lien on any statutory trust fund taxes that the Debtors hold for the benefit of governmental unit(s).

       (x)    *No Control*.  None of the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Creditors controls the Debtors or their operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Final Order, the DIP Facility, the DIP Loan Documents, the Prepetition Secured Obligations, and/or the Prepetition Credit Documents.

       (xi)    *Release*.  Subject to paragraphs 30 and 43 hereof, and the challenge rights granted thereunder, each of the Debtors, on their own behalf and on behalf of each of their past,

present, and future predecessors, successors, heirs, subsidiaries, and assigns, forever, unconditionally, permanently, and irrevocably released, discharged, and acquitted each of the Prepetition PTL Agent, the Prepetition PTL Lenders, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, advisors, sub-fund advisors, and collateral managers, and each of their respective heirs, predecessors, successors and assigns (collectively, the "**Released Parties**"), each in their respective capacity as such, of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), actions, suits, controversies, proceedings, losses, damages, injuries, debts, liens, actions, judgments, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, pending, or threatened, arising under, in connection with, or relating to the Prepetition Secured Obligations or the Prepetition Credit Documents, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) Claims and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any

of the Prepetition PTL Obligations, the Prepetition PTL Documents, or the Prepetition PTL Liens, and further waived and released any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition PTL Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or released to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Final Order.

(xii)   *Initial Financing*.   In accordance with the Interim Order, this Court authorized, among other things, (a) the Borrowers to borrow the Initial Financing, (b) to enter into the Prepetition ABL Payoff Letter and the LC Pledge Agreement, and as provided therein satisfy the Prepetition ABL Obligations and to cash collateralize (if required) (y) the Existing Letters of Credit and (z) any Banking Services Obligations (as defined in the Prepetition ABL Agreement) continuing after the Prepetition ABL Payoff Date that are provided by a Prepetition ABL Lender to any Debtor (the remaining Prepetition ABL Obligations described in clauses (y) and (z) above, the "**Remaining Prepetition ABL Obligations**"), (c) the Guarantors to jointly and severally guarantee on a senior secured basis all DIP Obligations, and (d) the DIP Credit Parties to execute and deliver the DIP Documents and to incur and perform all of the DIP Obligations in accordance with, and subject to, the terms of the DIP Documents and the Interim Order.  On January 23, 2023, the DIP Credit Agreement was executed, and the Borrowers were authorized to borrow on the terms and conditions set forth in the DIP Documents and the Interim Order.

G.   *Findings Regarding the Postpetition Financing*.

(i)   *Request for Postpetition Financing*.  The Debtors seek authority on a final basis to: (a) enter into, and access and use the liquidity provided under, the DIP Facility on the terms described herein and in the DIP Loan Documents and (b) use Cash Collateral on the terms described herein to administer their cases and fund operations.

(ii)      *Priming of Certain Prepetition Liens; Consent to Use of Cash Collateral*. The priming of the Prepetition Liens on the ABL Priority Collateral by the DIP Liens, as contemplated by the DIP Facility and to the extent set forth in this Final Order, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors.  For the avoidance of doubt, with respect to the Term Loan Priority Collateral, the DIP Liens shall not prime, and shall instead be subject and subordinate in all respects to, the Prepetition Term Loan Liens, and the DIP Liens shall not prime the ABL Cash Collateral (as defined below) except as otherwise provided herein.  The Prepetition Secured Creditors have either consented, or are deemed to consent, to priming by the DIP Liens of the Prepetition Liens on the ABL Priority Collateral, to the Debtors' use of Cash Collateral, and to the subordination of the Prepetition Liens to the Carve Out on the terms and conditions set forth in this Final Order, and with respect to the Prepetition ABL Lenders, subject to the occurrence of the Prepetition ABL Payoff Date.

(iii)      *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facility as provided for herein is necessary and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, to protect the value of their assets, and to otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral.  Without the ability to access the DIP Facility or Cash Collateral, the Debtors, their estates, their creditors, their equity holders, and the possibility for a successful reorganization would suffer immediate and irreparable harm.  The Debtors do not have sufficient available sources of working capital and

financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms*.   Given their current financial condition, financing arrangements and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Credit Parties on terms more favorable than the DIP Facility.   The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.   The Debtors are unable to obtain adequate credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.   Financing on a postpetition basis is not otherwise available under sections 364(c)(1), 364(c)(2) and 364(c)(3) without granting the DIP Agent, for the benefit of the DIP Credit Parties, (x) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities and to the extent set forth herein, (y) superpriority claims and priming liens to the extent set forth herein, and (z) the other protections set forth in this Final Order, and without incurring the Adequate Protection Superpriority Claims and Adequate Protection Liens described herein.

(v)    *Adequacy of the Approved Budget*.   As set forth in the DIP Loan Documents, the Debtors have prepared and delivered to the DIP Credit Parties and the Consenting Creditors (as defined in the RSA) a budget, a copy of which is annexed as Exhibit B to the Motion (as the same may be modified from time to time consistent with the terms of the DIP Loan Documents and this Final Order, the "**Approved Budget**").   The Approved Budget has been thoroughly reviewed by the Debtors, their management, and their advisors.   The Debtors, their management,

and their advisors believe the Approved Budget and the estimate of administrative expenses due or accruing during the period covered by the Approved Budget were developed using reasonable assumptions, and based on those assumptions, the Debtors believe there should be sufficient available assets to pay all administrative expenses due or accruing during the period covered by the Approved Budget.  As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility, and the authorization to use Cash Collateral, the DIP Credit Parties require, and the Debtors have agreed, that proceeds of the DIP Facility and the Cash Collateral shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents and this Final Order and in accordance with the Approved Budget (subject to Permitted Variances (as defined in the DIP Loan Documents)).  The extension of the DIP Facility and the satisfaction of the Prepetition ABL Obligations are part of an integrated transaction.

(vi)     *Certain Conditions to DIP Facility*.  The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things: (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the respective obligations thereunder, and to confer upon the DIP Credit Parties all applicable rights, powers, and remedies thereunder in each case as modified by this Final Order; (b) the provision and scope of adequate protection, as set forth herein, of the Prepetition Secured Creditors' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; (c) the DIP Credit Parties being granted, as security for the prompt payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents, subject to the priorities set forth in the Intercreditor Agreements, superpriority perfected security interests in and liens upon the DIP Collateral (as defined below) to the extent set forth herein.

H.    _ABL Payoff_.   Contemporaneously with the closing of the DIP Credit Agreement, commitments under the Prepetition ABL Documents terminated, the Prepetition ABL Obligations (other than the Remaining Prepetition ABL Obligations) were paid in full in accordance with the terms of the Prepetition ABL Payoff Letter, the Existing Letters of Credit and Banking Service Obligations continued in place and the obligations under and in connection with such Existing Letters of Credit and Banking Service Obligations were cash collateralized in accordance with the terms of the DIP Loan Documents, the LC Pledge Agreement, and the Prepetition ABL Payoff Letter and the Debtors shall perform their other obligations set forth in the Prepetition ABL Payoff Letter.   The Debtors deposited Cash for the benefit of the Prepetition ABL Lenders in an amount sufficient to satisfy the Remaining Prepetition ABL Obligations and certain anticipated additional obligations that may arise during the Chapter 11 Cases in connection with the Prepetition ABL Documents (the "**Postpetition ABL Fees**" and, collectively with the Remaining Prepetition ABL Obligations, the "**ABL Cash Collateral**") in accordance with the terms of the DIP Loan Documents, the Prepetition ABL Documents, the LC Pledge Agreement, and the Prepetition ABL Payoff Letter.   Neither the Carve Out nor any liens granted under the Interim Order or this Final Order, including, but not limited to, the DIP Liens and the Adequate Protection Liens (as defined below), shall extend or have recourse to the ABL Cash Collateral until the Remaining Prepetition ABL Obligations and Postpetition ABL Fees are satisfied in full; <u>provided</u> that upon the satisfaction of the Remaining Prepetition ABL Obligations and/or Postpetition ABL Fees in accordance with the Prepetition ABL Payoff Letter, the LC Pledge Agreement, the Interim Order, and this Final Order, the corresponding portion of ABL Cash Collateral shall immediately and automatically become DIP ABL Priority Collateral (as defined below) and the DIP Liens and

Adequate Protection Liens shall attach to such ABL Cash Collateral without further action by the Debtors, DIP Agent, or Prepetition Secured Parties or the need for further approval of the Court.

I.      *Prepetition Term Loan Lenders Adequate Protection*.  The Prepetition Term Loan Lenders are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code and as set forth in paragraph 13 of this Final Order for any diminution in value resulting from, among other things, the (a) provisions of this Final Order granting the DIP Liens, (b) use of the Cash Collateral, (c) use, sale, lease, or depreciation of the Prepetition Collateral, and/or (d) the imposition of the automatic stay under the Bankruptcy Code.  The terms of the adequate protection being provided reflect the Debtors' prudent exercise of business judgment and constitute a reasonable compromise for the use of the Prepetition Collateral, including the Cash Collateral.  As adequate protection as provided for in this Final Order, the Prepetition Term Loan Lenders shall receive, subject to the Intercreditor Agreements, among other things, the Adequate Protection Liens (as defined herein) to secure the applicable Prepetition Term Loan Obligations, the Adequate Protection Superpriority Claims (as defined herein) with respect to the applicable Prepetition Term Loan Obligations, and the Adequate Protection Payments (as defined herein), as applicable.

J.      *Sections 506(c) and 552(b)*.  The Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral that as a material inducement to the DIP Credit Parties' agreement to provide the DIP Facility and the Prepetition Secured Creditors' consent to the use of Cash Collateral, and in exchange for (a) the DIP Credit Parties' willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Credit Parties' and the Prepetition Secured Creditors' agreement to subordinate the Prepetition Liens and the DIP Liens, respectively, to the DIP Carve Out (as defined herein) and the Carve Out (as defined herein),

as applicable, and (c) the consensual use of Cash Collateral consistent with the Approved Budget, the terms of the DIP Loan Documents, and the terms of this Final Order each of the DIP Credit Parties and the Prepetition Secured Creditors are entitled to receive (x) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below, and (y) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

K.    *Good Faith of the DIP Credit Parties*.

(i)    *Willingness to Provide Financing*.  Each of the DIP Credit Parties has indicated a willingness to provide financing to the Debtors subject to: (a) the entry by this Court of this Final Order; (b) approval by this Court of the terms and conditions of the DIP Facility and the DIP Loan Documents and satisfaction of the Prepetition ABL Obligations and termination of the Prepetition ABL Agreement as contemplated by the Interim Order and this Final Order and the Prepetition ABL Payoff Letter; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that each of the DIP Credit Parties is extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that each of the DIP Credit Parties' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to the Interim Order and this Final Order and the DIP Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of the Interim Order or this Final Order or any other order, which findings shall be effective on a final basis upon entry of this Final Order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the Interim Order, this Final Order, the DIP Loan Documents, the extension of

credit and the fees paid and to be paid thereunder (a) are fair, reasonable, and the best available to the Debtors under the circumstances, (b) reflect the Debtors' exercise of prudent and sound business judgment consistent with their fiduciary duties, and (c) are supported by reasonably equivalent value and consideration. The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors and the DIP Credit Parties. The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used, and extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and each of the DIP Credit Parties is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

L.      *Good Cause*. Good cause has been shown for the entry of this Final Order. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (i) minimize disruption to the Debtors' businesses and on-going operations, (ii) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors, and (iii) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets. The terms of the DIP Facility are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration. The DIP Facility is the product of reasonable, arm's length, good faith negotiations between the Debtors and the DIP Credit Parties.

M.      *Relief Essential; Best Interest*.   The Final Hearing was held in accordance with Bankruptcy Rules 4001(b)(2) and (c)(2).   Consummation of the DIP Financing and the use of Cash Collateral in accordance with this Final Order and the DIP Documents are in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      <u>Motion Granted; DIP Financing Approved</u>.   The Motion is granted on a final basis, the DIP Financing is authorized and approved on a final basis, and the use of Cash Collateral on a final basis is authorized, in each case subject to the terms and conditions set forth in this Final Order.

2.      <u>Objections Overruled</u>.   All objections to the DIP Financing and/or entry of this Final Order to the extent not withdrawn or resolved are hereby overruled on the merits.

**<u>DIP Facility Authorization</u>**

3.      <u>Authorization of the DIP Financing and DIP Loan Documents</u>.   Under the Interim Order, the Debtors were expressly and immediately authorized and empowered (a) to execute and deliver the DIP Loan Documents, (b) to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of the Interim Order, this Final Order, and the DIP Loan Documents (including the Approved Budget), (c) to deliver all instruments, agreements, certificates, letters, and documents that may be necessary, desirable, or required for performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by the Interim Order, this Final Order, and the DIP Loan Documents, and (d) to satisfy the Prepetition ABL Obligations and collateralize any Remaining Prepetition ABL Obligations under the Prepetition ABL Documents.   The foregoing authorizations and empowerment are hereby ratified

and confirmed on a final basis.  In the event of any inconsistency between the terms and conditions of the Interim Order and this Final Order, from and after entry of this Final Order, the terms and conditions of this Final Order shall control.  The Debtors were, by the Interim Order, and hereby are authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due and without need to obtain further Court approval, including, without limitation, commitment fees, closing fees, administrative fees, unused line fees, any additional fees and other amounts set forth in the DIP Loan Documents, and the reasonable and documented fees and disbursements of the DIP Credit Parties' attorneys, advisers, accountants, and other consultants, all to the extent required by the DIP Loan Documents, with invoices to be provided in accordance with paragraph 26 below.  All collections and proceeds of DIP ABL Priority Collateral, whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by the Interim Order, this Final Order, and the DIP Loan Documents.  Upon execution and delivery, the DIP Loan Documents shall represent valid and binding, and joint and several, obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with the terms of the DIP Loan Documents.  The Debtors were, by the Interim Order, and hereby are authorized, without need to obtain further Court approval, to (i) make the Adequate Protection Payments (as defined below) and (ii) make all payments required under the Prepetition ABL Payoff Letter, including, without limitation, providing the ABL Cash Collateral to secure the Remaining Prepetition ABL Obligations and certain anticipated additional obligations that may arise during the Chapter 11 Cases.

       4.    <u>Authorization to Borrow</u>.  Until the Termination Declaration Date, and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents,

the DIP Facility and this Final Order, the Debtors are hereby authorized to request DIP Loans under the DIP Facility up to an aggregate principal amount of $125,000,000.  No other corporate action is required for the Debtors to execute and deliver the DIP Loan Documents, perform their obligations thereunder or request any extension of credit under the DIP Facility as set forth herein.

5.      DIP Obligations.  The DIP Loan Documents, the Interim Order, and this Final Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which DIP Obligations, upon entry of the Interim Order became enforceable, and which, upon entry of this Final Order, shall continue to be enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (collectively, "**Successor Cases**").  The DIP Obligations include all loans and any other indebtedness or obligations, contingent or absolute, which upon entry of the Interim Order or from time to time may be owing by any of the Debtors to any of the DIP Credit Parties under the DIP Loan Documents, the Interim Order, or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Loan Documents, and are joint and several obligations of the Debtors in all respects.  No obligation, payment, transfer or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, the Interim Order, or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

6.      Postpetition Liens and Collateral.

(a)      Effective immediately upon the entry of the Interim Order, pursuant to sections 364(c)(3) and 364(d) of the Bankruptcy Code, the Debtors were authorized to grant and did, pursuant to the Interim Order, and do hereby grant on a final basis to the DIP Agent (for the benefit of itself and the other DIP Credit Parties under the DIP Loan Documents) continuing valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "**DIP Liens**") the "Collateral" (as defined in the DIP Credit Agreement) (the "**DIP Collateral**").  DIP Collateral that is of a type that would be ABL Priority Collateral (as defined in the ABL Intercreditor Agreement) and the proceeds and products thereof, in each case, constitute "**DIP ABL Priority Collateral**," and DIP Collateral that is of a type that would be Term Loan Priority Collateral (as defined in the ABL Intercreditor Agreement) and the proceeds and products thereof and shall, in each case, constitute "**DIP Term Loan Priority Collateral**."

(b)      All existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including, without limitation, any intercompany subordination agreements), and freight forwarder agreements entered into or in connection with Prepetition ABL Documents were, by the Interim Order, and shall in each case be deemed to be delivered in connection with the DIP Facility, shall constitute DIP Loan Documents and shall remain in full force and effect without any further action by the Debtors (except to the extent that the DIP Agent, the Debtors, and the Requisite Consenting Creditors (as defined in the RSA) agree that such documents shall be

terminated), the DIP Agent or any other person, and in each case the DIP Agent shall be deemed to be a party thereto, any and all references in any such agreements or documents referred to in clause (ii) above to the "Credit Agreement" shall hereafter be deemed to mean and refer to the DIP Credit Agreement, and any and all references in any such agreements or documents referred to in clause (ii) above to the "Loan Documents" shall hereafter be deemed to mean and refer to the DIP Loan Documents, as amended, modified, supplemented or restated and in effect from time to time. Without limiting the foregoing, (i) with respect to that certain *Blocked Account Control Agreement*, dated as of August 24, 2020, by and between the Company, Agents and Depositary (as each term is defined therein) (the "**JPM DACA**"), the DIP Agent was, by the Interim Order, and shall be deemed to be the successor to the "ABL Agent" (as defined therein) under the terms of the JPM DACA and shall have all of the rights, remedies and obligations accorded to the "ABL Agent" under the JPM DACA; and (ii) with respect to that certain *Amended and Restated Deposit Account and Sweep Investment Control Agreement*, dated as of August 28, 2020, by and between the Company, Agents and Bank (as each term is defined therein) (the "**WF DACA**"), the DIP Agent was, by the Interim Order, and shall be deemed to be the successor to the "First Agent" (as defined therein) under the terms of the WF DACA and shall have all of the rights, remedies and obligations accorded to the "First Agent" under the WF DACA.

      7.    <u>DIP Lien Priority in DIP Collateral</u>.

      (a)    *DIP Liens*.  The DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interest and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or applicable law; <u>provided,</u>

however, that the DIP Liens on the ABL Priority Collateral and the Term Loan Priority Collateral (in each case, whether in existence on the Petition Date or hereafter arising) shall be subject to the ABL Intercreditor Agreement and treated in accordance with the relative priorities set forth on **Exhibit 1** hereto.  For the avoidance of doubt, with respect to the DIP Term Loan Priority Collateral, the DIP Liens shall not prime, and shall instead be subject and subordinate in all respects to, the Prepetition Term Loan Liens.

(b)     Other than as set forth herein, the DIP Liens, the DIP Superpriority Claim, the DIP Carve Out, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases or any claim for reclamation or return (whether asserted pursuant to section 546(c) of the Bankruptcy Code or otherwise), and shall be valid and enforceable against the Debtors, their estates, any trustee, or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to challenge under sections 510, 549, 550, or 551 of the Bankruptcy Code.

(c)     *Continuing Effect of Intercreditor Agreements.*  Subject to paragraph 43 herein and except as otherwise expressly set out herein: (i) the DIP Agent, the DIP Lenders and the Prepetition Secured Creditors shall be bound by the terms and conditions set forth in the Intercreditor Agreements, including with respect to the Prepetition Collateral and the DIP Collateral; (ii) nothing contained in this Final Order shall be deemed to abrogate or limit the

respective rights, claims and obligations of each of the DIP Agent, the DIP Lenders and the Prepetition Secured Creditors under the Intercreditor Agreements; and (iii) the Intercreditor Agreements shall apply and govern the respective rights, obligations, and priorities of each of the DIP Agent, the DIP Lenders and the Prepetition Secured Creditors with respect to the Prepetition Collateral and the DIP Collateral in these Chapter 11 Cases.  All loans and advances made by the DIP Agent and/or DIP Lenders pursuant to and under the DIP Facility and all other DIP Obligations outstanding thereunder shall be deemed to be Prepetition ABL Obligations under the ABL Intercreditor Agreement.   On the Prepetition ABL Payoff Date, the DIP Agent shall be deemed to be the successor to the Prepetition ABL Agent under the terms of the ABL Intercreditor Agreement and shall have all of the rights, remedies and obligations accorded to the "ABL Collateral Agent" under the ABL Intercreditor Agreement.

8.    <u>DIP Superpriority Claim</u>.

(a)    *DIP Superpriority Claim*.  Subject to the DIP Carve Out, on account of all DIP Obligations now existing or hereafter arising pursuant to the Interim Order and this Final Order, the DIP Loan Documents, or otherwise, the DIP Agent (for the benefit of itself and the other DIP Credit Parties under the DIP Loan Documents) was, pursuant to the Interim Order, and is hereby granted, pursuant to sections 364(c)(1), 503 and 507 of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (collectively, the "**DIP Superpriority Claim**") for all DIP Obligations.   Subject to paragraph 8(b) of this Final Order, the DIP Superpriority Claim shall have priority over any and all other obligations, liabilities and indebtedness of each Debtor, whether now in existence or hereafter incurred by such Debtor including without limitation administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c),

507(a), 507(b), 546(c), 546(d), 726 and 1114 of the Bankruptcy Code, which allowed DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof.

(b)     *Priority of DIP Superpriority Claim*.  Subject only to the ABL Intercreditor Agreement and the relative priorities set forth on **Exhibit 1** hereto, the DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, all proceeds of claims or causes of action that the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof; provided, however, that the DIP Superpriority Claim shall be payable from and have recourse to all proceeds of claims or causes of action that the Debtors may be entitled to assert under section 549 of the Bankruptcy Code and any and all recoveries and settlements thereof, subject to the Intercreditor Agreements (including the priorities set forth therein), with relative priorities set forth on **Exhibit 1** hereto.

9.     No Obligation to Extend Credit.  No DIP Credit Party shall have any obligation to make any loan or advance or issue any letter of credit under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Loan Documents and this Final Order have been satisfied in full or waived in accordance with the DIP Loan Documents.

10.     Use of DIP Facility Proceeds.  The DIP Loans were made available to the Debtors: (i) on the Closing Date to (a) refinance all outstanding obligations and replace commitments under the Prepetition ABL Facility, including all fees, costs, expenses due thereunder and cash collateralizing the Existing Letters of Credit outstanding under the Prepetition ABL Facility as of

the Petition Date (the date on which such refinancing occurs, the "**Prepetition ABL Payoff Date**"), and (b) to pay the fees, costs and expenses incurred in connection with the transactions contemplated hereby; and (ii) on and/or after the Closing Date (a) for the Debtors' working capital requirements and for general corporate purposes (including to fund the costs, fees, and expenses in connection with administration of the Chapter 11 Cases) in accordance with the provisions governing the Approved Budget (including the Permitted Variance (as defined in the DIP Credit Agreement) provisions set forth in the DIP Credit Agreement), (b) payment of all reasonable and documented out-of-pocket costs, fees and expenses required by the DIP Loan Documents, and (c) to fund the Professional Fees Account (as defined below) and obligations benefitting from the DIP Carve Out (without regard to whether such obligations are provided for in the Approved Budget), in each case of (i) and (ii) above, in accordance with the terms of the DIP Loan Documents.

11. <u>Refinancing of Prepetition ABL Obligations</u>.

(a) The satisfaction of Prepetition ABL Obligations outstanding as of the Petition Date in connection with the Debtors' entry into the DIP Facility is approved. Upon entry of the Interim Order, the Debtors were authorized to (a) execute and deliver the Prepetition ABL Payoff Letter and the LC Pledge Agreement, (b) use proceeds of the DIP Financing (as defined in the Motion) to satisfy the outstanding Prepetition ABL Obligations in accordance with the terms of the Prepetition ABL Payoff Letter and the LC Pledge Agreement, and (c) perform their obligations under the Prepetition ABL Payoff Letter and the LC Pledge Agreement.

(b) The Prepetition ABL Agent and Wells Fargo were, by the Interim Order, and hereby are authorized to apply any ABL Cash Collateral to the payment of any Postpetition ABL Fees and Remaining Prepetition ABL Obligations in accordance with the terms of the Prepetition ABL Payoff Letter and the LC Pledge Agreement without further order of this Court.

Any payments or transfers made by Debtors to the Prepetition ABL Agent, Wells Fargo, or any other Prepetition ABL Lender in connection with satisfying the outstanding Prepetition ABL Obligations, Postpetition ABL Fees or Remaining Prepetition ABL Obligations in accordance with the terms of the Prepetition ABL Payoff Letter or LC Pledge Agreement shall not be avoidable or recoverable from the Prepetition ABL Agent, Wells Fargo, or any such other Prepetition ABL Lender under §§ 547, 548, 550, 553 or any other section of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.

(c)     The liens on and security interest in the ABL Cash Collateral granted to the Prepetition ABL Agent and Wells Fargo pursuant to the Prepetition ABL Payoff Letter and the LC Pledge Agreement were, by the Interim Order, and hereby are approved and, notwithstanding anything set forth herein or otherwise, to the contrary shall be first and senior in priority to all other interest and liens of every kind, nature, and description on the ABL Cash Collateral, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or applicable law or any other liens granted pursuant to the Interim Order and this Final Order.

(d)     From time to time on and after the date hereof, Debtors were, by the Interim Order, and hereby are authorized to designate any letter of credit issued in connection with the Prepetition ABL Facility to be deemed to have been issued pursuant to the DIP Facility (each such letter of credit, a "**Continuing Letter of Credit**"); provided that both Wells Fargo and the DIP Agent provide their prior written consent to such designation, subject to such terms and conditions as Wells Fargo and the DIP Agent may require.  Upon the satisfaction of such terms and conditions

and subject to such consent of Wells Fargo and the DIP Agent, such Continuing Letter of Credit shall be deemed to be a letter of credit for all purposes under the DIP Facility.

## Authorization to Use Cash Collateral

12.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in compliance with the Approved Budget, the Debtors are authorized to use Cash Collateral in accordance with the Approved Budget (subject to Permitted Variances (as defined in the DIP Loan Documents)) until such time as the Court approves a Stay Relief Motion (as defined in the DIP Credit Agreement) authorizing the DIP Credit Parties or the Prepetition Secured Parties (subject to the Intercreditor Agreements) to terminate the Debtors' use of Cash Collateral, provided that the Prepetition Secured Parties are granted the Adequate Protection Superpriority Claims, Adequate Protection Liens, Adequate Protection Payments, as applicable, and other forms of adequate protection set forth herein.  Notwithstanding anything to the contrary in this Final Order or the DIP Loan Documents, the Debtors shall not be authorized to use Qualified Cash (as defined in the DIP Credit Agreement) as Cash Collateral. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further orders of this Court), or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order and the DIP Loan Documents and in accordance with the Approved Budget.

## Adequate Protection Provisions

13.     As adequate protection for any diminution in value of the interest of the Prepetition Secured Creditors in the Prepetition Collateral (including Cash Collateral), including on account of the granting of, among other things, the DIP Liens, the incurrence of the DIP Obligations, the subordination (as applicable) of the Prepetition Liens to the Carve Out, the Debtors' use of Cash

Collateral, the imposition of the automatic stay or the Debtors' use, sale, lease, depreciation, or disposition of the Prepetition Collateral and Cash Collateral during the pendency of the Chapter 11 Cases (collectively, "**Diminution in Value**"), the Prepetition Secured Creditors shall receive adequate protection as follows:

(a)     *Adequate Protection Liens*.  To the extent of any Diminution in Value, each of the Prepetition PTL Agent (for the benefit of itself and the other Prepetition PTL Lenders) and the Prepetition Non-PTL Agent (for the benefit of itself and the other Prepetition Non-PTL Lenders) were, by the Interim Order, and hereby are granted, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable and perfected replacement and additional postpetition security interests in, and liens on the Term Loan Priority Collateral (the "**Adequate Protection Liens**").  The Adequate Protection Liens granted to the Prepetition PTL Agent shall secure the Prepetition PTL Obligations and the Adequate Protection Liens granted to the Prepetition Non-PTL Agent shall secure the Prepetition Non-PTL Obligations.

(i)     The Adequate Protection Liens shall be (A) deemed to be valid, binding, non-avoidable, enforceable and fully perfected as of the Petition Date and (B) in all instances, subject to the Intercreditor Agreements and with the relative priorities set forth on **Exhibit 1** hereto.  Other than as set forth herein, until the indefeasible payment in full in cash of the Prepetition Secured Obligations, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of

the Chapter 11 Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to Bankruptcy Code sections 506(c), 510, 549, or 550.  No lien or interest avoided and preserved for the benefit of any Debtor's estate pursuant to Bankruptcy Code section 551 shall be made *pari passu* with or senior to the Adequate Protection Liens.

(ii)    *Priority of Adequate Protection Liens*.  The Adequate Protection Liens shall be payable from and have recourse to all Collateral and DIP Collateral, subject to the Intercreditor Agreements (including the priorities set forth therein), with relative priorities set forth on **Exhibit 1** hereto.

(b)    *Adequate Protection Payments*.  So long as no Event of Default (as defined herein) exists, the Prepetition PTL Agent shall be entitled to the payment of all reasonable and documented fees, costs, expenses and charges of the Prepetition PTL Agent and the Prepetition PTL Lenders shall be entitled to the payment of all reasonable and documented fees, costs, expenses and charges of the PTL Group Advisors (as defined in the RSA), including, without limitation, Gibson, Dunn & Crutcher LLP, as counsel to the ad hoc group of Prepetition PTL Lenders (the "**Ad Hoc Priority Lender Group**"), Jackson Walker L.L.P., as local counsel to the Ad Hoc Priority Lender Group, Centerview Partners LLC, as financial advisor to the Ad Hoc Priority Lender Group, Wilmer Cutler Pickering Hale and Dorr LLP, as counsel to the Prepetition PTL Agent, and Latham & Watkins ("**LW**") (as to LW, solely in connection with defending litigation, if any, in connection with the Prepetition PTL Documents specifically directed at the Prepetition PTL Agent, or such other amounts as reasonably agreed by the Debtors and the Ad Hoc Priority Lender Group (provided that such group is a majority of Prepetition PTL Lenders)), as counsel to the Prepetition PTL Agent incurred and/or accrued in connection with the Debtors and/or the Chapter 11 Cases, subject to recharacterization of such payments as principal payments

under the applicable Prepetition PTL Documents in the event of a final determination by order of the Court that the Prepetition PTL Lenders are undersecured (solely upon a motion filed by the Debtors, the Committee or any other party in interest).   The Prepetition PTL Agent and the Prepetition PTL Lenders shall each deliver an invoice in summary form (which shall not be required to include time entry detail and may be redacted for privileged information; provided, however, that the U.S. Trustee and the Committee reserve their rights to request additional detail regarding the services rendered and expenses incurred by such professionals) to the Debtors, counsel to the Debtors, the U.S. Trustee, and the Committee, with a copy of such invoices delivered simultaneously to the DIP Agent.   If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) days after delivery of such invoice to the Debtors, counsel to the Debtors, the U.S. Trustee, and the Committee, the Debtors shall promptly pay such fees and expenses in full.   If an objection to Prepetition PTL Agent's or Prepetition PTL Lenders' invoice is timely received, the Debtors shall promptly pay the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.   The Prepetition PTL Agent and Prepetition PTL Lenders shall not be required to file applications or motions with, or obtain approval of, the Court for the payment of any of its fees or out-of-pocket expenses (other than with respect to disputed amounts).   Payments of any amounts set forth in this paragraph are not subject to avoidance, subordination, or disgorgement.

(c)      *Adequate Protection Superpriority Claims.*

(i)      *Superpriority Claims of the Prepetition PTL Agent and Prepetition Non-PTL Agent*.  As further adequate protection of the interests of (A) the Prepetition PTL Agent and the other Prepetition PTL Lenders with respect to the Prepetition PTL Obligations and (B) the

36

Prepetition Non-PTL Agent and the other Prepetition Non-PTL Lenders with respect to the Prepetition Non-PTL Obligations, each of the Prepetition PTL Agent (for the benefit of itself and the other Prepetition PTL Lenders) and the Prepetition Non-PTL Agent (for the benefit of itself and the other Prepetition Non-PTL Lenders) were, by the Interim Order, and hereby are granted an allowed administrative claim against the Debtors' estates under section 503 of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors and their estates of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code, as provided for by section 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**"), to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of the Prepetition PTL Agent's and the Prepetition Non-PTL Agent's interests in the Prepetition Collateral.

(ii)    *Priority of Adequate Protection Superpriority Claims*.    The Adequate Protection Superpriority Claims shall be payable from and have recourse to all Collateral, DIP Collateral, and pre- and postpetition property of the Debtors, and all proceeds thereof, including, without limitation, all proceeds of claims or causes of action that the Debtors or their estates may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof ("**Chapter 5 Proceeds**") excluding, however, any Chapter 5 Proceeds for actual or constructive fraud, willful misconduct, lender liability or other intentional wrongful acts against the Prepetition PTL Lenders (as to the Prepetition PTL Lenders) or Prepetition Non-PTL Lenders (as to the Prepetition Non-PTL Lenders), respectively (such proceeds, "**Excluded**

**Proceeds**"); provided, however, the Adequate Protection Superpriority Claims will be paid from, (a) first, Collateral other than Chapter 5 Proceeds and (b) second, Chapter 5 Proceeds that do not constitute Excluded Proceeds; provided, however, that the Adequate Protection Superpriority Claims were, by the Interim Order, and shall be payable from and have recourse to all proceeds of claims or causes of action that the Debtors or their estates may be entitled to assert under section 549 of the Bankruptcy Code and any and all recoveries and settlements thereof, subject to the Intercreditor Agreements (including the priorities set forth therein), with relative priorities set forth in the **Exhibit 1** hereto.

(d)     *Reporting*.   The Debtors shall timely provide, or make available upon request, the Prepetition Term Loan Agents, the Prepetition Secured Creditors, and the Committee (on a professionals' eyes only basis) with copies of all financial reporting provided to the DIP Credit Parties pursuant to the DIP Loan Documents with respect to monthly, quarterly, and annual financial statements and budget reporting substantially simultaneously with such delivery to the DIP Credit Parties.

(e)     *Reservations of Rights*.   Subject only to the Carve Out described in paragraph 30 hereof and the Intercreditor Agreements, nothing contained herein shall impair or modify the Prepetition Secured Creditors' rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Creditors in this Final Order is insufficient to compensate for any Diminution in Value of the interest of the Prepetition Secured Creditors' in the Prepetition Collateral during these Chapter 11 Cases or any Successor Cases.   Nothing contained in this Final Order shall be construed as an admission as to the extent of any Diminution in Value, if any, in the interest of any Prepetition Secured Creditors in the Prepetition Collateral and nothing shall impair or modify the rights of any party to contest any

assertion of Diminution in Value or contest any request for additional adequate protection. Notwithstanding anything contained in this Final Order, all parties' rights are reserved with respect to allocation of any Adequate Protection Payments provided for in this Final Order with respect to any allowed secured claims of any parties receiving such Adequate Protection Payments.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

14.    <u>Amendments</u>.  The DIP Loan Documents may from time to time be amended, restated, amended and restated, supplemented, or otherwise modified, in each case in accordance with the provisions of the DIP Loan Documents governing amendments thereto, by the parties thereto, and subject to the consent rights under the RSA, each without further application to or order of the Court; <u>provided</u>, that any amendment to the DIP Credit Agreement that (a) shortens the maturity of the extensions of credit thereunder, (b) increases the aggregate commitments thereunder, or (c) increases the rate of interest payable with respect thereto (each, a "**Material DIP Amendment**"), shall be provided (which may be by electronic mail) to the U.S. Trustee and the Committee, which shall have 5 days from the date of such notice within which to object, in writing to the Material DIP Amendment; <u>provided</u>, <u>further</u>, that in connection with any Material DIP Amendment, the Debtors shall provide 5 days' prior written notice to the advisors to the Prepetition Term Loan Agents.  If the U.S. Trustee or the Committee timely objects to the Material DIP Amendment, the Material DIP Amendment shall only be permitted pursuant to an order of the Court.  The foregoing shall be without prejudice to the Debtors' right to seek approval from the Court of a Material DIP Amendment on an expedited basis.

15.    <u>Approved Budget</u>.  The Approved Budget and any modification to, or amendment or update of, the Approved Budget shall be in form and substance reasonably satisfactory to the DIP Agent and the Requisite Consenting Creditors and modified or amended in accordance with the DIP Loan Documents, subject to the Consenting Creditor consent rights in the RSA and on

notice to the Committee.  The DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Requisite Consenting Creditors shall be deemed to have approved a Proposed Budget (as defined in the DIP Credit Agreement) unless the DIP Agent (at the direction of the Required Lenders) and the Requisite Consenting Creditors shall have objected to such Proposed Budget within 4 Business Days after receiving such Proposed Budget, which Proposed Budget shall be provided to the Committee simultaneously with it being provided to the DIP Agent and the Requisite Consenting Creditors; provided further that, to the extent the DIP Agent (at the direction of the Required Lenders) or the Requisite Consenting Creditors object, as applicable, to any Proposed Budget and any such objection is unresolved prior to the end of the thirteenth week of the Approved Budget, then a hearing with respect to any such objection shall be conducted by this Court.

16.    Modification of Automatic Stay.  The automatic stay imposed under section 362(a) of the Bankruptcy Code was, by the Interim Order, and hereby is modified as necessary to effectuate all of the terms and provisions of the Interim Order and this Final Order, including, without limitation to permit: (a) the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; (b) the Debtors to incur all liabilities and obligations to the DIP Agent as contemplated under the DIP Loan Documents; (c) the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, to administer the Remaining Prepetition ABL Obligations in accordance with the terms of the Prepetition ABL Documents (including applying the proceeds of the ABL Cash Collateral without the need for any further order of the Court); and (d) the Debtors to pay, and the DIP Credit Parties and Prepetition Secured Creditors to retain and apply, all amounts referred to, required under, and in accordance with the terms of this Final Order and the DIP Loan Documents.

17.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.

(a)    The Interim Order and this Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral or requirement to register liens on any certificates of title (a "**Perfection Act**").  Notwithstanding the foregoing, if any DIP Agent or Prepetition Agents, as applicable, shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then such DIP Agent or Prepetition Agent, as applicable, is authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary or required by the DIP Loan Documents or the Prepetition ABL Payoff Letter, which act or acts shall be deemed to have been accomplished as of the date and time of entry of the Interim Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The DIP Agent or Prepetition Agents, as applicable, may choose to file, record, or present a certified copy of the Interim Order or this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of the Interim Order or this Final Order in accordance with applicable law.  Should any DIP Agent or Prepetition Agent, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure

in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of the Interim Order or this Final Order.

(b)     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of any liens and security interests granted and created by the Interim Order and this Final Order (including the DIP Liens and the Adequate Protection Liens) or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law was, by the Interim Order, and hereby is pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of this Court; provided, however, that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens.  By virtue of the terms of this Final Order, to the extent that any DIP Agent or Prepetition Agent, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors, such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Final Order without further action by the applicable DIP Agent or Prepetition Agent.

18.     <u>Application of Proceeds of DIP Collateral</u>.  Subject to the Carve Out and the limitations set forth in the Intercreditor Agreements, the priority rights of the holders of the Prepetition Permitted Liens[4] in particular DIP Collateral, the proceeds of DIP Collateral shall be applied in accordance with the terms of the DIP Loan Documents.  The Debtors shall not, directly

---

[4] "**Prepetition Permitted Liens**" means certain liens, other than those held by the Prepetition Secured Creditors, permitted by the Prepetition Credit Documents, as applicable, to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable, and senior to the Prepetition Liens as of the Petition Date.

or indirectly, voluntarily purchase, redeem, defease, or prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations, the Adequate Protection Payments required under this Final Order, and obligations authorized by an order of the Court (which may include, without limitation, obligations secured by Prepetition Permitted Liens).

19.     <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the repayment in full in cash of all DIP Obligations (or, with the consent of the DIP Agent, the DIP Obligations are converted into the Exit Facility pursuant to the Exit Commitment Letter) (each as defined in the DIP Credit Agreement), and the termination of the DIP Credit Parties' obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 18 herein.

20.     <u>Maintenance of DIP Collateral and Prepetition Collateral</u>.  Until the indefeasible payment in full in cash of all Prepetition Secured Obligations and all DIP Obligations (or, with the consent of the DIP Agent, the DIP Obligations are converted into the Exit Facility pursuant to the Exit Commitment Letter) and the termination of the DIP Credit Parties' obligations to extend credit under the DIP Loan Documents, as provided therein, the Debtors shall (a) insure the Prepetition Collateral and the DIP Collateral as required under the DIP Loan Documents and the Prepetition

Credit Documents, and (b) maintain the cash management system in effect as of the Petition Date or as otherwise agreed to by the DIP Agent.

21.     Termination Declaration Date.  On the Termination Declaration Date, (i) all DIP Obligations shall be immediately due and payable and (ii) all commitments to extend credit under the DIP Facility will terminate.

22.     Events of Default.  The occurrence of an "Event of Default" under the DIP Credit Agreement shall constitute an event of default under this Final Order (each, an "**Event of Default**").

23.     Rights and Remedies Upon Event of Default.

(a)     *DIP Facility Termination.*  Immediately upon the occurrence and during the continuance of an Event of Default, the DIP Agent may in its sole discretion (or at the direction of the Required Lenders) (i) declare the DIP Facility terminated (such declaration, a "**Termination Declaration**") or (ii) send a reservation of rights notice to the Debtors, with a copy to the Committee, which notice may advise the Debtors that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent ("**Reservation of Rights**").

(b)     Upon the issuance of a Reservation of Rights: (i) all or any portion of the Commitments (as defined in the DIP Credit Agreement) of the DIP Credit Parties to make loans or otherwise extend credit may be suspended or terminated in accordance with the DIP Loan Documents; (ii) all DIP Obligations may be deemed immediately due and payable in accordance with the DIP Loan Documents; (iii) after expiration of the Remedies Notices Period (as defined below), subject to approval of a Stay Relief Motion (as defined in the DIP Credit Agreement), the DIP Agent and the DIP Lenders may exercise all other rights and remedies available to them under the DIP Credit Agreement and, subject to approval of an applicable Stay Relief Motion, the RSA

and the Intercreditor Agreements, the Prepetition PTL Agent and the Prepetition PTL Lenders may exercise all other rights and remedies available to them under the Prepetition PTL Documents; and (iv) after expiration of the Remedies Notice Period, subject to approval of a Stay Relief Motion, any right or ability of the Debtors to use any Cash Collateral may be terminated, reduced or restricted by the DIP Agent or the Prepetition PTL Agent (at the direction of the majority Prepetition PTL Lenders), subject to the Intercreditor Agreements.

(c)     With respect to the DIP Collateral, following the Termination Declaration, subject to the Remedies Notice Period and approval of a Stay Relief Motion, the DIP Credit Parties or the Prepetition PTL Agent (at the direction of the majority Prepetition PTL Lenders), subject to the applicable Intercreditor Agreements, may (i) terminate the consensual use of cash collateral and (ii) exercise any rights and remedies provided to the DIP Agent under the DIP Loan Documents and the Prepetition PTL Agent (at the direction of the majority Prepetition PTL Lenders) under the Prepetition PTL Documents, the Bankruptcy Code, or this Final Order, or at law or equity, including all remedies provided under Debtor Relief Laws (as defined in the DIP Credit Agreement) and the Uniform Commercial Code, in each case subject to the applicable Intercreditor Agreements.  Without limiting the foregoing, the DIP Credit Parties, the Prepetition PTL Agent and the Prepetition PTL Lenders may, subject to the Remedies Notice Period, approval of a Stay Relief Motion, the RSA, and the Intercreditor Agreements, enter onto the premises of any Debtor in connection with an orderly liquidation of the DIP Collateral in accordance with paragraph 24 herein.

(d)     Subject to paragraph 12 and this paragraph 23, in the event the RSA is validly terminated (x) by the Consenting Creditors or (y) by the Debtors in circumstances other than for breach by the Consenting Creditors, the Prepetition PTL Agent (at the direction of the

majority Prepetition PTL Lenders) may terminate, subject to the Intercreditor Agreements and any relief granted by this Court, the consensual use of cash collateral ("**PTL Termination**").

(e)     *Notice of Termination*.  Any Termination Declaration or PTL Termination shall be given by email (or other electronic means), as applicable, to the Debtors, counsel to the Debtors, counsel to the DIP Agent, counsel to the DIP Lenders, counsel to the Prepetition Agents, the PTL Group Advisors, counsel to the Committee, and the U.S. Trustee (the date such Termination Declaration is made shall be referred to herein as the "**Termination Declaration Date**" and the date such PTL Termination is made shall be referred to herein as the "**PTL Termination Declaration Date**").  On the (i) Termination Declaration Date, the DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall cease and (ii) PTL Termination Declaration Date, the Prepetition PTL Agent (at the direction of the majority of the Prepetition PTL Lenders), subject to the Intercreditor Agreements and any relief granted by this Court, may terminate the consensual use of cash collateral, except, in each case, as provided in paragraph 12 and this paragraph 23 of this Final Order.  The Court may fashion any appropriate remedy at a hearing pursuant to a Stay Relief Motion, including upon approval of a Stay Relief Motion, any automatic stay otherwise applicable to the DIP Credit Parties, the Prepetition PTL Agent, or the Prepetition PTL Lenders shall be modified so that five (5) days after the Termination Declaration Date (the "**Remedies Notice Period**") (i) the DIP Credit Parties shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents, any applicable Intercreditor Agreements, this Final Order, or order of this Court and shall be permitted to satisfy the DIP Liens and the DIP Superpriority Claims, subject only to the DIP Carve Out, the Prepetition Permitted Liens, and, solely with respect to the Term Loan Priority Collateral, the Prepetition Term Loan Liens and (ii) the Prepetition PTL Agent and the Prepetition

PTL Lenders shall be entitled to exercise all rights and remedies against the DIP Collateral, in accordance with the Prepetition PTL Documents, any applicable Intercreditor Agreements, this Final Order, the RSA, or order of this Court, and shall be permitted to satisfy the Adequate Protection Liens and the Adequate Protection Superpriority Claims, subject only to the DIP Carve Out, the Prepetition Permitted Liens, the DIP Liens, the DIP Superpriority Claims, and the Carve Out.  During the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court.  The Court may fashion any appropriate remedy at a hearing pursuant to a Stay Relief Motion, and subject to approval of a Stay Relief Motion, the DIP Credit Parties, the Prepetition PTL Agent, and the Prepetition PTL Lenders shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement, the other DIP Loan Documents, the Prepetition PTL Agreement, and the other Prepetition PTL Documents, as applicable, and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the DIP Agent with respect thereto pursuant to the DIP Credit Agreement, the other DIP Loan Documents or this Final Order or the Prepetition PTL Agent, pursuant to the Prepetition PTL Credit Agreement, the other Prepetition PTL Documents, or this Final Order, subject in all respects to the Intercreditor Agreements.

24.    <u>Access to Leased Premises</u>.  The DIP Agent's or the Prepetition PTL Agent's exercise of its remedies pursuant to paragraph 23 shall be subject to: (i) any agreement in writing between the DIP Agent or Prepetition Agents and any applicable landlord, (ii) pre-existing rights of the DIP Agent or Prepetition Agents, and any applicable landlord under applicable non-

bankruptcy law, (iii) consent of the applicable landlord, or (iv) further order of the Court following notice and a hearing.

25.     Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Final Order.  The DIP Credit Parties and Prepetition Secured Creditors have acted in good faith in connection with this Final Order and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) and section 363(m) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court, or any other court, the DIP Credit Parties and Prepetition Secured Creditors are entitled, on a final basis as of entry of the Interim Order, to the protections provided in section 364(e) of the Bankruptcy Code.  Any such reversal, modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby, provided that this Final Order was not stayed by court order after due notice had been given to the DIP Agent and each of the Prepetition Agents at the time the advances were made or the liens, claims or priorities were authorized and/or created.  Any liens or claims granted to the DIP Credit Parties and Prepetition Secured Creditors hereunder arising prior to the effective date of any such reversal, modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including, without limitation, entitlement to all rights, remedies, privileges and benefits granted herein, provided, that this Final Order was not stayed by court order after due notice had been given to the DIP Agent and each of the Prepetition Agents at the time the advances were made or the liens, claims or priorities were authorized and/or created.

26.     <u>DIP and Other Expenses</u>.  The Debtors are authorized to pay all reasonable and documented out-of-pocket costs and expenses (and the DIP Agent is authorized to make advances or charges against the loan account to pay such agreed costs and expenses of the DIP Credit Parties in accordance with the DIP Loan Documents) of the DIP Credit Parties in connection with the DIP Facility (including, without limitation, costs and expenses incurred prior to the Petition Date), as required by the DIP Loan Documents.  The professionals for the DIP Credit Parties shall deliver an invoice in summary form (which shall not be required to include time entry detail and may be redacted for privileged information; <u>provided</u>, <u>however</u>, that the U.S. Trustee and the Committee reserve their rights to request additional detail regarding the services rendered and expenses incurred by such professionals) to the Debtors, the U.S. Trustee, and the Committee.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) days after delivery of such invoice to the Debtors, the U.S. Trustee, and the Committee, the Debtors shall promptly pay such fees and expenses in full.  If an objection to a professional's invoice is timely received, the Debtors shall promptly pay the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  The DIP Credit Parties' professionals shall not be required to file applications or motions with, or obtain approval of, the Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts).

27.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP Agent, each other DIP Credit Party and each Related Party (as defined in the DIP Credit Agreement), subject to and in accordance with the DIP Credit Agreement, including, without limitation, Section 9.03 thereof.

28.    <u>Proofs of Claim</u>.  Any order entered by the Court in relation to the establishment of a bar date for any claims (including, without limitation, administrative claims) in any of the Chapter 11 Cases or Successor Cases shall not apply to the DIP Credit Parties, the Prepetition ABL Lenders, or the Prepetition PTL Lenders.  None of the DIP Credit Parties, the Prepetition ABL Lenders, or the Prepetition PTL Lenders will be required to file proofs of claim or requests for approval of administrative expenses in any of the Chapter 11 Cases or Successor Cases, and the provisions of this Final Order relating to the DIP Obligations, the DIP Superpriority Claims, the Remaining Prepetition ABL Obligations, the relevant Adequate Protection Superpriority Claims, and the Debtors' Stipulations shall constitute timely filed proofs of claim and/or administrative expense requests in each of the Chapter 11 Cases.

29.    <u>Rights of Access and Information</u>.  The Debtors shall afford the DIP Credit Parties all of the rights of access and information provided for under the DIP Loan Documents.

30.    <u>Carve Out</u>.

(a)    *Carve Out*.  As used in this Final Order, "**Carve Out**" shall mean, collectively, the DIP Carve Out (as defined below) plus any transaction fees or success fees that have been earned by and are payable to the Debtors' investment banker and financial advisor as of the Carve Out Trigger Date.

(i)    *DIP Carve Out*.  "DIP Carve Out" means the sum of: (a) all fees required to be paid to the clerk of the Bankruptcy Court and to the U.S. Trustee (as defined herein) under 28

U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (without regard to the delivery of a Carve Out Notice (as defined herein)); (b) all reasonable and documented fees and expenses, in an aggregate amount not to exceed $50,000, incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the delivery of a Carve Out Notice) ("**Chapter 7 Trustee Fee Cap**"); (c) to the extent allowed at any time, whether by interim or final compensation or other order, all accrued and unpaid claims for fees, costs and expenses (excluding any transaction fees or success fees) incurred by persons or firms retained by the Debtors pursuant to Sections 327, 328 or 363 of the Bankruptcy Code (collectively, the "**Debtor Professionals**") or retained by the Committee (such professionals, collectively, the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**," and such fees, costs and expenses of Professional Persons other than any such financing transaction fees with respect to the DIP Facility or other transaction or success fees, the "**Professional Fees**"), at any time on or prior to the first calendar day after delivery of a Carve Out Notice, whether allowed before or after delivery of a Carve Out Notice and without regard to whether such fees, costs and expenses are provided for in the Approved Budget or were invoiced after the Carve Out Trigger Date (as defined herein); (d) any Professional Fees of the Debtor Professionals incurred after the first calendar day following delivery by the DIP Agent of the Carve Out Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise, in an aggregate amount not to exceed $5,000,000 (the amount set forth in this clause (d) being the "**Debtor Post Carve Out Cap**"); and (e) any Professional Fees of the Committee Professionals incurred after the first calendar day following delivery by the DIP Agent of the Carve Out Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise, in an aggregate amount not to exceed $750,000 (the amount set forth in this clause (e) being the "**Committee Post Carve Out Cap**" and

together with the Debtor Post Carve Out Cap, the "**Post-Carve Out Caps**"); provided, further, that nothing herein shall be construed to impair the ability of any party to object to the allowance of the fees, expenses, reimbursement or compensation described herein on any grounds.

(b)     *Carve Out Notice*.  For purposes of the foregoing, "**Carve Out Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, Weil, Gotshal & Manges LLP, the U.S. Trustee, the PTL Group Advisors, and Kelley Drye & Warren LLP, lead counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP Credit Agreement or the occurrence of the Termination Date, stating that the Post-Carve Out Caps have been invoked.  On the day on which a Carve Out Notice is received by the Debtors (such date, the "**Carve Out Trigger Date**"), the Carve Out Notice shall constitute a demand to the Debtors to utilize all cash on hand to transfer to the Professional Fees Account (as defined herein) cash in an amount equal to all obligations benefiting from the Carve Out as more fully set forth below.

(c)     *Professional Fees Account*.

(i)     On (and to the extent necessary after) the Carve Out Trigger Date, the DIP Agent or Debtors shall deposit into a segregated account of the Debtors not subject to the control of the DIP Agent, any DIP Lender or any Prepetition Term Loan Lender (the "**Professional Fees Account**") any cash swept or foreclosed after delivery of the Carve Out Notice (including cash received as a result of the sale or other disposition of any assets) until the Professional Fees Account has been fully funded in an amount equal to all obligations benefiting from the Carve Out; provided that when all Professional Fees have been paid in full, any funds remaining in the Professional Fees Account shall be paid directly to the DIP Agent for the benefit of the DIP

Lenders, unless (a) the DIP Obligations have been indefeasibly paid in full, in cash and (b) any unused revolving commitments under the DIP Facility terminated, in which case any such excess shall be paid to the Prepetition Term Loan Agents in accordance with the relative priorities in **Exhibit 1** hereto and otherwise in accordance with the Term Intercreditor Agreement. Notwithstanding anything to the contrary herein or in the DIP Loan Documents, following delivery of a Carve Out Notice, the DIP Agent, the DIP Lenders and the Prepetition Term Loan Lenders shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fees Account has been fully funded in an amount equal to all obligations benefiting from the Carve Out.

(ii)     For the avoidance of doubt, to the extent that Professional Fees of Professional Persons have been incurred by the Debtors or the Committee at any time before or on the first calendar day after delivery by the DIP Agent of a Carve Out Notice, but have not yet been allowed, such Professional Fees of the Professional Persons shall constitute Allowed Professional Fees benefiting from the Carve Out upon their allowance, whether by interim or final compensation order and whether before or after delivery of the Carve Out Notice, and the Debtors shall fund the Professional Fees Account inclusive of the amount of such professional fees and expenses.

(iii)     For the avoidance of doubt and notwithstanding any other provision of this Final Order or any other order entered by this Court to the contrary, no portion of the Carve Out, DIP Loans, Letters of Credit, DIP Collateral, or Term Loan Priority Collateral (including Cash Collateral) may be used directly or indirectly in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, motions, adversary proceedings or other litigation, (i) against any of the DIP Lenders, the DIP Agent, or the Prepetition PTL Lenders (whether in

such capacity or otherwise), or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Loan Documents or in connection with the Prepetition PTL Facility, including, in each case without limitation, for lender liability or pursuant to Sections 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders or the DIP Agent with respect to the DIP Facility or the Prepetition PTL Lenders or the Prepetition PTL Agent with respect to the Prepetition PTL Facility; (c) any motion to reconsider or appeal of any order with respect to the DIP Facility; (d) attempts to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's assertion, enforcement or realization upon any DIP Collateral in accordance with the DIP Loan Documents and this Final Order once an Event of Default has occurred and any applicable remedy notice period expired; provided, however, that the Debtors shall not be precluded from using Cash Collateral (but not proceeds from DIP Loans) to contest whether an Event of Default has occurred and is continuing and neither the Debtors nor the Committee shall be precluded from using Cash Collateral (but not proceeds from DIP Loans) to prepare for and participate at any hearing held by the Bankruptcy Court regarding any exercise of rights or remedies under the DIP Loan Documents; or (e) objecting or challenging or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of any of the obligations under or in respect of (i) the DIP Facility, (ii) the DIP Liens or the Prepetition PTL Liens or (iii) any other rights or interest of any of the DIP Agent, the DIP Lenders, or the Prepetition PTL Lenders following the occurrence of an Event of Default ((a) through (e), collectively, a "**Challenge**"); provided that no more than $350,000 of the proceeds of the DIP Loans, or DIP Collateral (including Cash Collateral), in the aggregate, may be used solely

by the Committee solely to investigate, prior to the Challenge Deadline (as defined below) a
Challenge.  For the avoidance of doubt, nothing herein shall prohibit (a) the Debtors from utilizing
Cash Collateral to pursue the Adversary Proceeding with respect to the Term Loan Priority
Collateral, the Prepetition PTL Facility, the Intercreditor Agreements, or the Prepetition Non-PTL
Term Loan, or (b) the Committee from utilizing Cash Collateral solely to (i) monitor and advise
the Committee regarding the status of the Adversary Proceeding; or (ii) engage in such further role
in the Adversary Proceeding as agreed to by the Debtors and the Prepetition PTL Lenders or
otherwise ordered by the Court <u>provided</u> that the Committee or its advisors shall not take any
action in such proceeding that would constitute a Challenge.  For the avoidance of doubt, nothing
in this Final Order shall be construed as, nor is, an admission, recognition, or granting of any
standing, or entitlement for the Committee to intervene or participate in the Adversary Proceeding,
commence a Challenge, or otherwise.

      (iv)    Further, notwithstanding anything to the contrary herein, (a) the failure of
the Professional Fees Account to be funded in an amount equal to the full amount of the
Professional Fees benefiting from the Carve Out shall not affect the priority of the Carve Out set
forth above and (b) in no way shall the Carve Out, Professional Fees Account or the Approved
Budget or any testing or reporting relating thereto (or any good faith estimate of Professional Fees)
be construed as a cap or limitation on the amount of the Professional Fees or the Statutory Fees
due and payable by the Debtors or that may be allowed at any time (whether by interim order, final
order, or otherwise).

      (v)    The Debtors shall establish the Professional Fees Account.  On the Closing
Date, the Professional Fees Account shall be funded in an amount equal to the Post-Carve Out

Caps and upon funding of such amounts the Carve Out shall be deemed satisfied solely with respect to Professional Fees incurred after the Carve Out Trigger Date.

(d)      *Delivery of Weekly Fee Estimates*.

(i)      Not later than 7:00 p.m. central time on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors, DIP Agent, and the PTL Group Advisors a statement (each such statement, a "**Weekly Statement**") setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "**Calculation Date**"), along with a good-faith estimate of the cumulative total amount of unpaid fees and expenses incurred from the Petition Date through the applicable Calculation Date (collectively, "**Estimated Fees and Expenses**") and a statement of the amount of such fees and expenses that have been paid to date by the Debtors from the Petition Date through the applicable Calculation Date.  No later than one business day after the delivery of a Carve Out Notice, each Professional Person shall deliver one additional statement (the "**Final Statement**") to the Debtors setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has already been delivered and concluding on the date of the Carve Out Notice.

(ii)      Solely with respect to the priorities set forth herein with respect to the ABL Priority Collateral, if any Professional Person fails to deliver a Weekly Statement as and when due (such Professional Person, a "**Defaulting Professional Person**"), such Professional Person's entitlement (if any) to any amount of the Carve-Out with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable periods for which such Professional Person failed to deliver a Weekly Statement shall be limited to the aggregate unpaid amount of Allowed

Professional Fees for such Professional Person included in the Approved Budget, provided that such Defaulting Professional Person may cure its failure to provide a Weekly Statement by delivery of a Weekly Statement as soon as reasonably practicable after the applicable deadline to deliver such Weekly Statement so long as a Carve Out Notice has not been delivered.

(e)  *Carve-Out Reserve*.  The DIP Agent shall be entitled to maintain at all times a reserve (the "**Carve-Out Reserve**") in an amount (the "**Carve-Out Reserve Amount**") equal to the sum of the following:  (i) estimated amounts for U.S. Trustee Fees and the Chapter 7 Trustee Fee Cap, plus (ii) to the extent not funded into the Professional Fees Account an amount equal to the Post-Carve Out Caps, plus (iii) the aggregate amount of Allowed Professional Fees in the Approved Budget remaining unpaid through the most recent Calculation Date or, if greater, the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors and reported to the DIP Agent, plus (iv) an amount equal to the Allowed Professional Fees set forth in the Approved Budget for the two-week period occurring after the most recent Calculation Date.  Not later than 7:00 p.m. central time on the fourth business day of each week starting with the first full calendar week following the Petition Date, the Debtors shall deliver to the DIP Agent and the PTL Group Advisors a report setting forth the Carve-Out Reserve Amount as of such time, and, in setting the Carve-Out Reserve, the DIP Agent shall be entitled to, but shall not be required to, rely upon such reports in determining the Carve-Out Reserve.

(f)  *No Direct Obligation to Pay Professional Fees*. Other than funding the DIP Carve Out as and when required in paragraph 30(a)(i), none of the DIP Credit Parties shall be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any Successor Cases.  Nothing

in this Final Order or otherwise shall be construed to obligate the DIP Credit Parties or the Prepetition Secured Creditors in any way to pay compensation to or to reimburse expenses of any Professional Person, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Notwithstanding anything to the contrary contained in this Final Order, the Approved Budget or the DIP Loan Documents, none of the DIP Credit Parties or the Prepetition Secured Creditors shall be responsible for funding any "success," "restructuring," "transaction" or similar fee payable to the Debtors' investment banker or financial advisor, and in no event shall any such amounts be paid out of the DIP Carve Out other than after the repayment in full in cash of the DIP Obligations (or, with the consent of the DIP Agent, the DIP Obligations are converted into the Exit Facility pursuant to the Exit Commitment Letter) in connection with or as a result of a transaction pursuant to section 363 of the Bankruptcy Code. At any time there are any outstanding DIP Obligations, Allowed Professional Fees of any Professional Person shall be paid solely from the DIP Carve Out and any retainer, as applicable.

(g)     *Payment of DIP Carve Out*. The funding of the DIP Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

31.    <u>Payment of Compensation</u>.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the DIP Credit Parties or the Prepetition Secured Creditors to object to the allowance and payment of such fees and expenses.

32.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

33.     <u>Release</u>.  Subject to paragraphs 30 and 43 hereof, and the challenge rights granted thereunder, each of the Released Parties was, by the Interim Order, and hereby is released as provided in paragraph F(xi) hereof.

34.     <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or Successor Cases at any time shall be charged against the DIP Credit Parties or the DIP Collateral or the Prepetition Secured Creditors or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise and all rights to surcharge the DIP Credit Parties or the DIP Collateral or the Prepetition Secured Creditors or the Prepetition Collateral under section 105 or 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in any Successor Cases.

35.     <u>No Marshaling/Applications of Proceeds</u>.  None of the DIP Credit Parties or the Prepetition Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral.

36.     <u>Section 552(b)</u>.  The DIP Agent and the other DIP Credit Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Credit Parties or the Prepetition Secured Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or DIP Collateral.

37.     <u>Limits on Lender Liability</u>.  Nothing in this Final Order, any of the DIP Loan Documents, the Prepetition Credit Documents, or any other documents relate thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition PTL Agent or the Prepetition PTL Lenders of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases.  The DIP Agent, the DIP Lenders and the Prepetition PTL Lenders shall not, solely by reason of having made loans under the DIP Facility or permitting the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Final Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition PTL Lenders of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

38.     <u>Joint and Several Liability</u>.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Loan Documents.

39.     <u>No Superior Rights of Reclamation</u>.  Based on the findings and rulings herein concerning the integrated nature of the DIP Facility and the Prepetition ABL Documents and the relation back of the DIP Liens, in no event shall any alleged right of reclamation or return (whether

asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

40.  <u>Discharge Waiver</u>.  The DIP Obligations, the DIP Superpriority Claim, the DIP Liens, and the obligations of the Debtors with respect to adequate protection hereunder, including granting the Adequate Protection Liens and the Adequate Protection Superpriority Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (or, with respect to the DIP Obligations, with the consent of the DIP Agent, have been converted into the Exit Facility pursuant to the Exit Commitment Letter) and all Letters of Credit cancelled (or otherwise terminated), on or before the effective date of such confirmed plan of reorganization, or each of the DIP Credit Parties or the Prepetition PTL Lenders, as applicable, has otherwise agreed in writing.  None of the Debtors shall propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon either the payment in full in cash or, with the consent of the DIP Agent, conversion into the Exit Facility pursuant to the Exit Commitment Letter of the DIP Obligations on the effective date of such plan, the payment in full in cash of the Adequate Protection Superpriority Claims (with respect to such claims of the Prepetition PTL Lenders, subject in all respects to the RSA) and, if applicable, the payment in full in cash of any outstanding obligations under the Prepetition ABL Documents.

41.  <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Credit Parties' or the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the Debtors (including, the right to seek additional or different

adequate protection); (b) the rights of any of the Prepetition PTL Lenders to seek the payment by the Debtors of postpetition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) the rights of the Prepetition ABL Agent or the Prepetition ABL Lenders to seek payment by the Debtors or the Postpetition ABL Fees or to seek payment for any fees incurred on a postpetition basis in connection with the Prepetition ABL Documents, the Debtors, or the Chapter 11 Cases, in each case limited and subject to the Prepetition ABL Documents and the Prepetition ABL Payoff Letter; or (d) any of the rights of the DIP Credit Parties or the Prepetition Secured Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek an injunction, (iv) oppose any request for use of Cash Collateral, (v) object to any sale of assets, or (vi) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; _provided_, that the rights of the DIP Credit Parties and the Prepetition Secured Creditors with respect to sections (a)–(d) of this paragraph 41 shall be subject to the Intercreditor Agreements.  Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Credit Parties and the Prepetition Secured Creditors are preserved.

42.     No Waiver by Failure to Seek Relief.  The failure of the DIP Credit Parties to seek relief or otherwise exercise rights and remedies under this Final Order, the DIP Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Credit Parties.

43.     <u>Binding Effect of Final Order</u>.    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the stipulations (including the Debtors' Stipulations), terms and provisions of the Interim Order and, such stipulations, terms and provisions being ratified by this Final Order (including, without limitation, the Adequate Protection Liens, Adequate Protection Payments and the Adequate Protection Superpriority Claims) became valid and binding upon and inured to the benefit of the Debtors, the DIP Credit Parties, the Prepetition Secured Creditors, all other creditors of any of the Debtors, the Committee and all other parties in interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case, unless, and solely to the extent that, (a) a party in interest that has sought and obtained standing and the requisite authority to commence a Challenge (other than the Debtors, as to which any Challenge is hereby irrevocably waived and relinquished) and has timely commenced a Challenge by the earlier of (i) the date of entry of an order confirming a plan of reorganization and (ii) April 10, 2023 (the earlier to occur of clause (i) and (ii), the "**Challenge Deadline**"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Documents), the Prepetition PTL Agent (with respect to the Prepetition PTL Documents) and the Debtors, or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, <u>provided</u> that if the Committee or the Prepetition Non-PTL Lenders file a motion for standing (which motion shall request a hearing on an expedited basis in consultation with the Debtors and the Prepetition Secured Creditors) with a draft complaint identifying and describing all Challenge(s) consistent with applicable law and rules of procedure prior to the Challenge Deadline, the Challenge Deadline

will be tolled for the Committee or the Prepetition Non-PTL Lenders, as applicable, until five (5) business days from the date of the hearing on the motion for standing, but in no event shall the hearing on the motion for standing take place after or the Challenge Deadline toll beyond the Confirmation Hearing; provided, further that if the Chapter 11 Cases are converted to chapter 7 or a chapter 7 or chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Deadline, any such estate representative or trustee shall receive the full benefit of any remaining time before expiration of the Challenge Deadline, which, solely if not yet expired, shall be extended for a period of sixty (60) calendar days and (b) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.  Notwithstanding the Challenge Deadline set forth in this paragraph and the terms of the Interim Order and this Final Order, the Committee and the Prepetition Non-PTL Lenders shall have the right to seek by motion an extension of the Challenge Deadline (a "**Challenge Extension Motion**") solely to the extent the ruling of this Court on the motions for summary judgment in the Adversary Proceeding materially modifies the rights and obligations of the Prepetition PTL Lenders under the Prepetition Credit Documents (but only with respect to such rights, claims, or interests addressed by the Adversary Proceeding), provided that such Challenge Extension must be filed within ten (10) days from the date of such ruling of the Court, with the rights of the Debtors, the Prepetition ABL Agent (with respect to the Prepetition ABL Documents) and the Prepetition PTL Agent (with respect to the Prepetition PTL Documents) to contest any such extension preserved, but in no event shall the Challenge Deadline be extended beyond, or any hearing in relation to a Challenge take place after, the date of the Confirmation Hearing.  Within three (3) business days of the Court's ruling on the motions for summary judgment in the Adversary Proceeding, the Committee or the Prepetition

Non-PTL Lenders (as applicable) shall advise the Debtors and the Prepetition PTL Lenders regarding whether the Committee or the Prepetition Non-PTL Lenders (as applicable) are considering seeking to extend the Challenge Deadline and shall meet and confer with such parties regarding any such request.

44.     Any order dismissing one or more of the Chapter 11 Cases or Successor Cases under section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with Bankruptcy Code sections 105 and 349) that (a) the DIP Liens, Prepetition Liens and Adequate Protection Liens shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations, Remaining Prepetition ABL Obligations, Prepetition Secured Obligations and/or Adequate Protection Superpriority Claims (as applicable) are indefeasibly paid and satisfied in full and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim, DIP Liens, DIP Carve Out, Adequate Protection Superpriority Claims, Adequate Protection Liens and the Prepetition Liens.

45.     <u>Replacement Agent</u>.  The Debtors are authorized but not directed to execute and deliver any agreement or other documentation in connection with the replacement of the Prepetition PTL Agent and/or the Prepetition Non-PTL Agent with replacement agents pursuant to the Prepetition PTL Documents and the Prepetition Non-PTL Documents, as applicable, and shall be permitted to pay any necessary or appropriate fees or expenses in connection therewith. The Debtors and any such replacement agent shall be permitted to execute and/or file any necessary or appropriate documentation to substitute such replacement agent for the applicable existing Prepetition PTL Agent or Prepetition Non-PTL Agent.  For the avoidance of doubt, nothing in the foregoing shall require the Debtors to make any payments.

46.     <u>No Modification of Final Order</u>.  Until and unless the DIP Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) or, with the consent of the DIP Agent, the conversion of the DIP Obligations into the Exit Facility pursuant to the Exit Commitment Letter, and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent (i) any reversal, modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the DIP Superpriority Claim or the Adequate Protection Superpriority Claims, other than the Carve Out; (b) any order, other than this Final Order, allowing use of Cash Collateral resulting from DIP Collateral; and (c) except as set forth in this Final Order, any lien on any of the DIP Collateral or Prepetition Collateral with priority equal or superior to the DIP Liens or the Prepetition Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent (and with respect to the Prepetition ABL Obligations and the Remaining Prepetition ABL Obligations, the prior written consent of the Prepetition ABL Agent) and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition ABL Agent, as applicable.

47.     <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Final Order, the provisions of this Final Order shall govern and control.

48.     <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this Final Order, including, without limitation, the claims, liens, security interests and other protections granted to the DIP Credit Parties and Prepetition Secured Creditors pursuant to this Final Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until (i) all DIP Obligations have been indefeasibly paid in full in cash and all commitments to extend credit under the DIP Facility are terminated, (ii) all Prepetition Secured Obligations have been indefeasibly paid in full in cash or, with the consent of the DIP Agent, converted into the Exit Facility pursuant to the Exit Commitment Letter, and (iii) all Letters of Credit have been cancelled or otherwise terminated.  The terms and provisions in this Final Order concerning indemnification shall continue in the Chapter 11 Cases and in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Loan Documents and/or the repayment of the DIP Obligations.

49.     <u>Notice of Entry of Final Order</u>.  The Debtors shall promptly serve copies of this Final Order to the parties having been noticed of the Final Hearing and to any party that has filed a request for notices with this Court.

50.     <u>Effectiveness</u>.  This Final Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding anything to the contrary proscribed by applicable law, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

51.     <u>Specified Taxing Authorities' Reservation of Rights</u>. Notwithstanding any other provisions included in the Interim Order or this Final Order, or any agreement of any Debtor expressly approved hereby, any statutory liens of any Specified Taxing Authority (as defined below) with respect to unpaid business personal property taxes or unpaid ad valorem taxes (such liens, collectively, the "**Tax Liens**") shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable as of the Petition Date; provided that all parties in interests' rights to object to and contest the priority, validity, amount, and extent of the claims and liens asserted by any of the Specified Taxing Authorities are fully preserved. For purposes of this Paragraph, "Specified Taxing Authorities" means (a) the Maricopa County Treasurer in the State of Arizona, and (b) each of the following political jurisdictions in the State of Texas: Cypress-Fairbanks Independent School District, Dallas County and Harris County.

52.     <u>Interim Order</u>.  Except as specifically amended or otherwise modified hereby, all of the provisions of the Interim Order and any actions taken by the Debtors, the DIP Credit Parties, or the Prepetition PTL Lenders in accordance therewith shall remain in effect are hereby ratified by this Final Order.

53.     <u>Retention of Jurisdiction</u>.  This Court has and will retain jurisdiction to enforce this Final Order according to its terms and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

**Signed:  March 03, 2023.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## **Exhibit 1**

**Relative Priorities**

| ABL Priority Collateral | Term Loan Priority Collateral |
|---|---|
| DIP Carve Out | Carve Out |
| Prepetition Permitted Liens | Prepetition Permitted Liens |
| DIP Liens<br>DIP Superpriority Claim | Prepetition Term Loan Liens<br>Prepetition Term Loan Obligations |
| Carve Out | DIP Liens<br>DIP Superpriority Claim |
| Adequate Protection Liens<br>Adequate Protection Superpriority Claims | Adequate Protection Liens<br>Adequate Protection Superpriority Claims |
| Prepetition Term Loan Liens<br>Prepetition Term Loan Obligations | |