## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **SERTA SIMMONS BEDDING, LLC,** | § | Case No. 23-90020 (DRJ) |
| *et al.,* | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

## SECOND AMENDED JOINT CHAPTER 11 PLAN
## OF SERTA SIMMONS BEDDING, LLC AND ITS AFFILIATED DEBTORS

| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP** | **WEIL, GOTSHAL & MANGES LLP** |
| Gabriel A. Morgan (24125891) | Ray C. Schrock (admitted *pro hac vice*) |
| Stephanie N. Morrison (24126930) | Alexander W. Welch (admitted *pro hac vice*) |
| 700 Louisiana Street, Suite 1700 | 767 Fifth Avenue |
| Houston, Texas 77002 | New York, New York 10153 |
| Telephone: (713) 546-5000 | Telephone: (212) 310-8000 |
| Facsimile: (713) 224-9511 | Facsimile: (212) 310-8007 |

*Attorneys for the Debtors*
*and Debtors in Possession*

Dated:  May 23, 2023
          Houston, Texas

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

Table of Contents

Page

**ARTICLE I.** DEFINITIONS AND INTERPRETATION. ..................................................... 1
A. **Definitions.** ....................................................................................................... 1
B. **Interpretation; Application of Definitions and Rules of Construction.** .................. 18
C. **Computation of Time.** .......................................................................................... 19
D. **Reference to Monetary Figures.** ........................................................................... 19
E. **Controlling Document.** ......................................................................................... 19
F. **Consultation, Information, Notice, and Consent Rights.** ....................................... 19

**ARTICLE II.** ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS,
DIP CLAIMS, AND PRIORITY TAX CLAIMS ................................................ 19
2.1. *Administrative Expense Claims.* .................................................................... 19
2.2. *Professional Fee Claims.* ............................................................................... 20
2.3. *Priority Tax Claims.* ...................................................................................... 20
2.4. *DIP Claims.* .................................................................................................. 20
2.5. *Restructuring Fees and Expenses.* ................................................................. 20
2.6. *Professional Fee Escrow.* .............................................................................. 21

**ARTICLE III.** CLASSIFICATION OF CLAIMS AND INTERESTS. ................................. 21
3.1. *Classification in General.* ............................................................................. 21
3.2. *Formation of Debtor Groups for Convenience Only.* ..................................... 21
3.3. *Summary of Classification.* ........................................................................... 22
3.4. *Special Provision Governing Unimpaired Claims.* ......................................... 22
3.5. *Elimination of Vacant Classes.* ..................................................................... 22
3.6. *No Waiver.* ................................................................................................... 22

**ARTICLE IV.** TREATMENT OF CLAIMS AND INTERESTS. .......................................... 23
4.1. *Other Secured Claims (Class 1).* ................................................................... 23
4.2. *Priority Non-Tax Claims (Class 2).* ............................................................... 23
4.3. *FLFO Claims (Class 3).* ................................................................................ 23
4.4. *FLSO Claims (Class 4).* ................................................................................ 24
4.5. *Non-PTL Claims (Class 5).* ........................................................................... 24
4.6. *Ongoing General Unsecured Claims (Class 6A).* ........................................... 24
4.7. *Other General Unsecured Claims (Class 6B).* ................................................ 25
4.8. *Intercompany Claims (Class 7).* .................................................................... 25
4.9. *Intercompany Interests (Class 8).* ................................................................. 25
4.10. *Other Intercompany Interests (Class 9).* ....................................................... 26
4.11. *Intermediate Equity Interests (Class 10).* ...................................................... 26

**ARTICLE V.** MEANS FOR IMPLEMENTATION. ........................................................... 26
5.1. *Compromise and Settlement of Claims, Interests, and Controversies.* ............ 26
5.2. *Intercreditor Agreements.* ............................................................................. 28
5.3. *Continued Corporate Existence; Effectuating Documents; Corporate Action;
Restructuring Transactions.* ........................................................................... 28
5.4. *Intercompany Interests; Corporate Reorganization.* ...................................... 29
5.5. *New Term Loan.* ............................................................................................ 29
5.6. *Exit ABL Facility.* ......................................................................................... 30
5.7. *New Intercreditor Agreement.* ....................................................................... 31
5.8. *Section 1145 Exemption.* ............................................................................... 31
5.9. *Cancellation of Existing Securities and Agreements.* ..................................... 31
5.10. *Cancellation of Liens.* ................................................................................... 32

i

Table of Contents
(continued)

Page

| | | |
|---|---|---|
| 5.11. | *Officers and Boards of Directors* | 32 |
| 5.12. | *Management Incentive Plan* | 33 |
| 5.13. | *Authorization, Issuance, and Delivery of New Common Interests.* | 33 |
| 5.14. | *Pension Plans.* | 34 |
| 5.15. | *Collective Bargaining Agreements.* | 34 |
| 5.16. | *Nonconsensual Confirmation* | 34 |
| 5.17. | *Closing of the Chapter 11 Cases* | 34 |
| 5.18. | *Notice of Effective Date.* | 34 |
| 5.19. | *Separate Plans.* | 34 |
| 5.20. | *Class 6B Trust.* | 35 |

**ARTICLE VI.** DISTRIBUTIONS. .......... 38

| | | |
|---|---|---|
| 6.1. | *Distributions Generally.* | 38 |
| 6.2. | *Distributions Subject to Intercreditor Agreements.* | 38 |
| 6.3. | *Distribution Record Date.* | 38 |
| 6.4. | *Date of Distributions.* | 39 |
| 6.5. | *Disbursing Agent.* | 39 |
| 6.6. | *Rights and Powers of Disbursing Agent.* | 39 |
| 6.7. | *Expenses of Disbursing Agent.* | 40 |
| 6.8. | *No Postpetition Interest on Claims.* | 40 |
| 6.9. | *Delivery of Distributions.* | 40 |
| 6.10. | *Distributions after Effective Date.* | 40 |
| 6.11. | *Unclaimed Property.* | 40 |
| 6.12. | *Time Bar to Cash Payments.* | 41 |
| 6.13. | *Manner of Payment under Plan.* | 41 |
| 6.14. | *Satisfaction of Claims.* | 41 |
| 6.15. | *Fractional Stock.* | 41 |
| 6.16. | *Minimum Cash Distributions.* | 41 |
| 6.17. | *Setoffs.* | 41 |
| 6.18. | *Allocation of Distributions between Principal and Interest.* | 42 |
| 6.19. | *No Distribution in Excess of Amount of Allowed Claim.* | 42 |
| 6.20. | *Withholding and Reporting Requirements.* | 42 |

**ARTICLE VII.** PROCEDURES FOR DISPUTED CLAIMS. .......... 43

| | | |
|---|---|---|
| 7.1. | *Disputed Claims Generally.* | 43 |
| 7.2. | *Objections to Claims.* | 43 |
| 7.3. | *Estimation of Claims.* | 43 |
| 7.4. | *Adjustment to Claims Register Without Objection.* | 44 |
| 7.5. | *Disallowance of Claims.* | 44 |
| 7.6. | *No Distributions Pending Allowance.* | 44 |
| 7.7. | *Distributions after Allowance.* | 44 |
| 7.8. | *Claim Resolution Procedures Cumulative.* | 44 |

**ARTICLE VIII.** EXECUTORY CONTRACTS AND UNEXPIRED LEASES. .......... 44

| | | |
|---|---|---|
| 8.1. | *General Treatment.* | 44 |
| 8.2. | *Determination of Cure Disputes and Deemed Consent.* | 45 |
| 8.3. | *Payments Related to Assumption or Assignment of Contracts and Leases.* | 46 |
| 8.4. | *Rejection Claims.* | 46 |

Table of Contents
(continued)

| | | |
|---|---|---|
| 8.5. | *Survival of the Debtors' Indemnification Obligations.* | 46 |
| 8.6. | *Employee Arrangements.* | 47 |
| 8.7. | *Insurance Policies.* | 47 |
| 8.8. | *Intellectual Property Licenses and Agreements.* | 48 |
| 8.9. | *Assignment.* | 49 |
| 8.10. | *Modifications, Amendments, Supplements, Restatements, or Other Agreements.* | 49 |
| 8.11. | *Reservation of Rights.* | 49 |

**ARTICLE IX.** CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE. ... 50
| 9.1. | *Conditions Precedent to the Effective Date.* | 50 |
| 9.2. | *Timing of Conditions Precedent.* | 51 |
| 9.3. | *Waiver of Conditions Precedent.* | 51 |
| 9.4. | *Effect of Failure of a Condition.* | 51 |

**ARTICLE X.** EFFECT OF CONFIRMATION OF PLAN. ... 52
| 10.1. | *Vesting of Assets in the Reorganized Debtors.* | 52 |
| 10.2. | *Binding Effect.* | 52 |
| 10.3. | *Discharge of Claims and Termination of Interests.* | 52 |
| 10.4. | *Term of Injunctions or Stays.* | 53 |
| 10.5. | *Injunction.* | 53 |
| 10.6. | *Releases.* | 54 |
| 10.7. | *Exculpation.* | 56 |
| 10.8. | *Retention of Causes of Action/Reservation of Rights.* | 57 |
| 10.9. | *Ipso Facto and Similar Provisions Ineffective.* | 57 |
| 10.10. | *Solicitation of Plan.* | 57 |
| 10.11. | *Corporate and Limited Liability Company Action.* | 57 |

**ARTICLE XI.** RETENTION OF JURISDICTION. ... 58
| 11.1. | *Retention of Jurisdiction.* | 58 |
| 11.2. | *Courts of Competent Jurisdiction.* | 59 |

**ARTICLE XII.** MISCELLANEOUS PROVISIONS. ... 60
| 12.1. | *Payment of Statutory Fees.* | 60 |
| 12.2. | *Substantial Consummation of the Plan.* | 60 |
| 12.3. | *Request for Expedited Determination of Taxes.* | 60 |
| 12.4. | *Exemption from Certain Transfer Taxes.* | 60 |
| 12.5. | *Amendments.* | 61 |
| 12.6. | *Effectuating Documents and Further Transactions.* | 61 |
| 12.7. | *Revocation or Withdrawal of the Plan.* | 61 |
| 12.8. | *Severability of Plan Provisions.* | 61 |
| 12.9. | *Governing Law.* | 62 |
| 12.10. | *Time.* | 62 |
| 12.11. | *Dates of Actions to Implement the Plan.* | 62 |
| 12.12. | *Immediate Binding Effect.* | 62 |
| 12.13. | *Deemed Acts.* | 62 |
| 12.14. | *Successor and Assigns.* | 62 |

<u>Table of Contents</u>
(continued)

<u>Page</u>

12.15. ***Entire Agreement***. ......................................................................................... 62
12.16. ***Exhibits to Plan.*** ......................................................................................... 63
12.17. ***Dissolution of Creditors' Committee***. ............................................... 63
12.18. ***Notices***. ......................................................................................... 63

Each of Serta Simmons Bedding, LLC ("**Serta Simmons Bedding**"); Dawn Intermediate, LLC ("**Dawn Intermediate**"); Serta International Holdco, LLC; National Bedding Company L.L.C.; SSB Manufacturing Company; The Simmons Manufacturing Co., LLC; Dreamwell, Ltd.; SSB Hospitality, LLC; SSB Logistics, LLC; Simmons Bedding Company, LLC; Tuft & Needle, LLC; Tomorrow Sleep LLC; SSB Retail, LLC; and World of Sleep Outlets, LLC (each, a "**Debtor**" and, collectively, the "**Debtors**") propose the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan, the settlements and transactions contemplated thereby, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.       DEFINITIONS AND INTERPRETATION**.

A.      **Definitions.**  The following terms shall have the respective meanings specified below:

*1.1*     "**2020 Transaction**" means the issuance of the FLFO Term Loans and exchange of outstanding first lien and second lien term loans for FLSO Term Loans that closed on June 22, 2020.

*1.2*     "**6A Trade Agreement**" means a trade agreement providing for the continuation of goods or services on the same or better terms as existed as most favorable terms provided to the Debtors in the six (6) months prior to the Petition Date (the form of which is attached to the Disclosure Statement Approval Order as Schedule 9).

*1.3*     "**ABL Intercreditor Agreement**" means that certain *ABL Intercreditor Agreement*, dated November 8, 2016 (as amended, restated, amended and restated, supplemented and otherwise modified from time to time), by and among, *inter alios*, the PTL Agent, Prepetition ABL Agent, the Non-PTL Agent, and acknowledged and agreed to by Dawn Intermediate, Serta Simmons Bedding, a Delaware limited liability company, the other borrowers party thereto and each of the other obligors party thereto.

*1.4*     "**Administrative Expense Claim**" means any Claim for a cost or expense of administration incurred during the Chapter 11 Cases pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for good and other services and leased premises) and (b) Professional Fee Claims.

*1.5*     "**Adversary Complaint**" means the complaint filed by the Debtor and certain of the PTL Lenders commencing an adversary proceeding against certain of the Non-PTL Lenders seeking a declaratory judgment to resolve the claims arising from any pending or future litigation related to the 2020 Transaction.

*1.6*      "**Adversary Proceeding**" means the proceeding commenced by the Adversary Complaint.

*1.7*     "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.8 "***Allowed***" means, with reference to any Claim or Interest, (a) any Claim or Interest arising on or before the Effective Date (i) as to which no objection to allowance, priority, or secured status, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed prior to the Claim Objection Deadline, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Interest that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors, Reorganized Debtors, or Class 6B Trust, as applicable, (c) any Claim or Interest as to which the liability of the Debtors or Reorganized Debtors, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (d) any Claim or Interest expressly allowed hereunder; *provided*, *however*, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan, and (z) the Class 6B Trust shall be transferred and retain all Claims and defenses with respect to Other General Unsecured Claims except for the Excluded Class 6B Claims or as otherwise provided in this Plan.

1.9 "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.10 "***Bankruptcy Court***" means the United States Bankruptcy Court for the Southern District of Texas Houston Division having jurisdiction over the Chapter 11 Cases, and to the extent of any reference made under section 157 of title 28 of the United States Code or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.11 "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.12 "***Business Day***" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.13 "***Cash***" means legal tender of the United States of America.

1.14 "***Causes of Action***" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws).  Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

*1.15*    "***Chapter 11 Cases***" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court in which this Plan was filed.

*1.16*    "***Claim***" has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

*1.17*    "***Claim Objection Deadline***" means the deadline for objecting to filed Proofs of Claim or scheduled claims, which shall be, unless otherwise extended pursuant to the Plan (a) the one hundred eightieth (180th) day following the later of (i) the Effective Date and (ii) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim; or (b) such later date as may be fixed by the Bankruptcy Court.

*1.18*    "***Class***" means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

*1.19*    "***Class 6B Cash Contribution***" means $5,750,000 in Cash to be transferred by the Debtors or Reorganized Debtors to the Class 6B Trust on the Effective Date and administered by the Class 6B Trustee for purposes of (i) satisfying the obligations of the Class 6B Trust, including the Class 6B Trust Expenses, and (ii) making distributions to holders of Allowed Other General Unsecured Claims in Class 6B, in accordance with Section 4.7.

*1.20*    "***Class 6B Cash Contribution Allocation***" means the initial allocation of the Class 6B Cash Contribution across the Debtors, determined by the Debtors in consultation with the Requisite Consenting Creditors and the Creditors' Committee, in the manner set out in the GUC Recovery Allocation Table; *provided, however,* that this initial allocation may be reallocated by the Class 6B Trust, acting by and through the Class 6B Trustee, with the consent of the Reorganized Debtors, in their reasonable business judgment, and the reasonable consent of the Requisite Consenting Creditors (if such reallocation occurs prior to the Effective Date) or upon further order of the Bankruptcy Court, to recalibrate for, among other things, (i) the amount of Allowed Other General Unsecured Claims against each Debtor as determined in accordance with the reconciliation and objection process provided for in this Plan, (ii) the amount and purpose of Class 6B Trust Expenses, and (iii) any recoveries by the Class 6B Trust on account of Class 6B Causes of Action.

*1.21*    "***Class 6B Causes of Action***" means all avoidance actions, preferences or other causes of action pursuant to chapter 5 of the Bankruptcy Code solely against holders of Other General Unsecured Claims in Class 6B, except the Excluded Causes of Action.

*1.22*    "***Class 6B Tax Disclosures***" means the memorandum setting out certain important tax information for holders of Other General Unsecured Claims in Class 6B, substantially in the form included in the Plan Supplement.

*1.23*    "***Class 6B Trust***" means that certain trust to be established on the Effective Date, in accordance with the Class 6B Trust Agreement and Section 5.20 of the Plan, to, as applicable, administer, process, settle, resolve, liquidate, satisfy, and pay holders of Allowed Other General Unsecured Claims.

*1.24*    "***Class 6B Trust Agreement***" means the agreement that establishes the Class 6B Trust and governs the powers, duties and responsibilities of the Class 6B Trustee, by and among the Reorganized Debtors and the Class 6B Trustee, substantially in the form included in the Plan Supplement and consistent with Section 5.20 of the Plan, provided, that the Class 6B Trust Agreement shall be in form and substance reasonably acceptable to the Creditors' Committee, the Debtors, and the Requisite Consenting Creditors.

1.25   "**Class 6B Trust Assets**" means: (i) the Class 6B Cash Contribution and (ii) the Class 6B Causes of Action.

1.26   "**Class 6B Trust Beneficiaries**" means holders of Allowed Other General Unsecured Claims in Class 6B.

1.27   "**Class 6B Trust Expenses**" means all reasonable and documented fees, expenses, and costs incurred by the Class 6B Trust in connection with carrying out the duties and obligations of the Class 6B Trust and otherwise in accordance with the Class 6B Trust Agreement, including all costs related to the maintenance or distribution of the Class 6B Trust Assets, bonding, insurance, storage, as well as indemnity reserves, all of the Class 6B Trustee's fees and expenses (acting in the capacity as the Class 6B Trustee, or as a professional representing the Class 6B Trust), including, without limitation, attorneys' fees, and the fees of other professionals and other Persons retained by the Class 6B Trustee and the Class 6B Trust, and any taxes imposed on the Class 6B Trust or in respect of the Class 6B Trust Assets.

1.28   "**Class 6B Trust Indemnified Parties**" means the Class 6B Trustee, and its consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, independent contractors, managers, members, partners and other representatives, each in their respective capacity as such, and any of such Entity's predecessors, successors and assigns.

1.29   "**Class 6B Trust Interests**" means the non-certificated and non-transferable beneficial interests in the Class 6B Trust granted to each Class 6B Trust Beneficiary, which shall entitle such holder to their Pro Rata Share of net proceeds of Class 6B Trust Assets in accordance with the GUC Recovery Allocation Table.

1.30   "**Class 6B Trustee**" means UMB Bank, N.A., or any successor trustee appointed in accordance with the Class 6B Trust Agreement, to serve as the trustee of the Class 6B Trust in accordance with the Class 6B Trust Agreement for the purposes of, among other things, liquidating the Class 6B Trust Assets following the Effective Date and effectuating distributions to Holders of Allowed Other General Unsecured Claims.

1.31   "**Collective Bargaining Agreements**" means the five (5) collective bargaining agreements between SSB Manufacturing Company and each of (i) Teamsters (IBT) Local 986, (ii) USW Local 675, (iii) USW Local Union 156-U-07 "Driver Unit", (iv) USW Local 156, and (v) Hawaii Teamsters and Allied Workers Local 996.

1.32   "**Commitment Letter**" means that certain Commitment Letter dated as of May 15, 2023 by the Exit ABL Facility Agent committing to provide the Exit ABL Commitment subject to the conditions contained therein.

1.33   "**Company**" means, collectively, the Debtors and their non-Debtor Affiliates.

1.34   "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order.

1.35   "**Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.36   "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance (i) acceptable to the Requisite Consenting Creditors and the Company, (ii) reasonably acceptable to the DIP Agent and Exit ABL Facility

Agent (as to this clause (ii), solely as related to or in connection with the DIP Facility, the Exit ABL Facility, the Exit ABL Facility Agent, the Exit ABL Facility Lenders, the DIP Agent, and the DIP Lenders), and (iii) reasonably acceptable to the Creditors' Committee with respect to the Creditors' Committee Global Settlement, and otherwise subject to the applicable consent rights set forth in the Restructuring Support Agreement.

1.37    "**Consenting Creditor Consent Rights**" means any applicable consent, approval, and/or consultation right of the Requisite Consenting Creditors as set forth in the Restructuring Support Agreement.

1.38    "**Consenting Creditors**" means the PTL Lenders that are party to the Restructuring Support Agreement, together with their respective successors and permitted assigns and any subsequent lender that becomes party to the Restructuring Support Agreement in accordance with the terms of the Restructuring Support Agreement.

1.39    "**Consenting Equity Holder Fees and Expenses**" means the reasonable and documented fees, costs and expenses of Ropes & Gray LLP, as counsel to certain of the Consenting Equity Holders, in connection with the negotiation, formulation, preparation, execution, delivery, implementation, consummation and/or enforcement of the Restructuring Support Agreement, this Plan, and/or any of the other Definitive Documents, and/or the transactions contemplated hereby or thereby, and/or any amendments, waivers, consents, supplements or other modifications to any of the foregoing, in an amount not to exceed $200,000.

1.40    "**Consenting Equity Holders**" means Dawn Holdings, Inc., as the sole member, and holder of interests in, Dawn Intermediate; and funds managed by Advent International Corporation, as holder of interests in Dawn Holdings, Inc.

1.41    "**Consenting Parties**" means, collectively, the Consenting Creditors and the Consenting Equity Holders.

1.42    "**Creditors' Committee**" means the official committee of unsecured creditors of the Debtors, appointed by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code on February 9, 2023 (Docket No. 274) and reconstituted on February 14, 2023 (Docket No. 321), the membership of which may be further reconstituted from time to time.

1.43    "**Creditors' Committee Global Settlement**" means the settlement of all Claims, Interests, and controversies among the Debtors, the Requisite Consenting Creditors, and the Creditors' Committee and the consideration given or received, as applicable, by each as set forth in the Plan and as summarized in Section 5.1.

1.44    "**Cure**" means the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (b) permit the Debtors to assume such executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.45    "**Cure Dispute**" means a pending objection relating to assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.46    "**Cure Notice**" means a notice to parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and

assign the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure amount (if any).

*1.47*   "***CV Trade Agreement***" means a trade agreement executed by the Debtors pursuant to the Vendor Order.

*1.48*   "***D&O Policy***" means any insurance policy, including tail insurance policies, for directors', members', trustees', and officers' liability maintained by the Debtors and in effect or purchased as of the Petition Date.

*1.49*   "***Debtor or Debtors***" has the meaning set forth in the introductory paragraph of the Plan.

*1.50*   "***Debtors in Possession***" means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

*1.51*   "***Definitive Documents***" has the meaning set forth in the Restructuring Support Agreement.  Each Definitive Document shall be consistent with the Restructuring Support Agreement and, in each case, subject to the Consenting Creditor Consent Rights.

*1.52*   "***DIP Agent***" means Eclipse Business Capital, LLC, solely in its capacity as administrative agent and collateral trustee under the DIP Credit Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the DIP Credit Agreement.

*1.53*   "***DIP Claims***" means all Claims held by the DIP Lenders or the DIP Agent on account of, arising under, or relating to the DIP Credit Agreement, the DIP Facility, or the DIP Order, including Claims for all principal amounts outstanding, and any and all fees, interest, expenses, indemnification obligations, reimbursement obligations, and other amounts due under the DIP Loan Documents, which, for the avoidance of doubt, shall include all "DIP Obligations" as such term is defined in the DIP Order.

*1.54*   "***DIP Commitment***" means the commitment to provide the amounts contemplated under the DIP Facility.

*1.55*   "***DIP Credit Agreement***" means that certain *Senior Secured Super-Priority Debtor-in-Possession ABL Credit Agreement*, dated as of January, 23, 2023, by and among Serta Simmons Bedding, as top borrower, the other borrowers party thereto, the DIP Agent, and the DIP Lenders, as approved by the DIP Order, as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with its terms which, for the avoidance of doubt, shall be in form and substance reasonably acceptable to the Requisite Consenting Creditors.

*1.56*   "***DIP Facility***" means an asset-based revolving credit facility with aggregate DIP Commitment of $125,000,000, including a letter of credit sub-facility in an aggregate amount of up to $10,000,000 to issue new letters of credit, as approved by the DIP Order.

*1.57*   "***DIP Lenders***" means the lenders and, if applicable, the issuing lenders from time to time party to the DIP Credit Agreements.

*1.58*   "***DIP Loan Documents***" has the meaning set forth in the DIP Order. Each DIP Loan Document shall be consistent with the Restructuring Support Agreement and, in each case, subject to the Consenting Creditor Consent Rights.

1.59    "**DIP Order**" means, as applicable, the *Amended Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Certain Prepetition Lenders, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* (Docket No. 406) or the *Amended Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Certain Prepetition Lenders, (III) Modifying Automatic Stay, (IV) Scheduling A Final Hearing and (V) Granting Related Relief* (Docket No. 109), authorizing the Debtors to enter into the DIP Credit Agreement and access the DIP Facility, as may be amended, supplemented or modified from time to time.

1.60    "**Disallowed**" means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.61    "**Disbursing Agent**" means (i) in the case of distributions to the Holders of Allowed Other General Unsecured Claims, the Class 6B Trust or such other Entity retained by the Class 6B Trust to administer such distributions in accordance with Article VI of this Plan, and (ii) in the case of all other distributions to be made to holders of Allowed Claims other than the Other General Unsecured Claims in Class 6B under the Plan, any Entity (including any applicable Debtor or Reorganized Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI of the Plan.

1.62    "**Disclosure Statement**" means the disclosure statement for the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.63    "**Disclosure Statement Approval Order**" means the *Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (IV) Approving Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* (Docket No. 540).

1.64    "**Disputed**" means with respect to a Claim, (a) any Claim, which Claim is disputed under Section 7.1 of the Plan or as to which the Debtors or the Class 6B Trust, as applicable, have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a Proof of Claim was not timely or properly filed by the applicable claims bar date; (c) any Claim that is listed in the Schedules as unliquidated, contingent, or disputed, and as to which no request for payment or Proof of Claim has been filed by the applicable claims bar date; or (d) any Claim that is otherwise disputed by any of the Debtors, the Reorganized Debtors or the Class 6B Trust, as applicable, in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order.  To the extent the Debtors or the Class 6B Trust dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors or the Class 6B Trust, as applicable, do not dispute, if any, and Disputed as to the balance of such Claim.

1.65    "**Distribution Record Date**" means (i) with respect to all Claims other than Other General Unsecured Claims, the Effective Date, or such other time as agreed between the Debtors and the Requisite Consenting Creditors, and (ii) with respect to Other General Unsecured Claims, the Effective Date, or such other time as agreed between the Debtors, the Requisite Consenting Creditors, and the Creditors' Committee.

1.66    "***Effective Date***" means the date determined by the Debtors, in consultation with the Requisite Consenting Creditors and the Creditors' Committee, and on which all conditions to the effectiveness of the Plan set forth in Article IX hereof have been satisfied or waived in accordance with the terms of the Plan.

1.67    "***Employee Arrangements***" means all employment or employee-related arrangements, agreements, programs, and policies, and all compensation and benefits plans, policies, award letters, key employee retention agreements, and programs of the Debtors applicable to their respective employees, retirees, consultants, contractors, and non-employee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (including equity and equity-based plans), welfare benefits plans, and life and accidental death and dismemberment insurance plans.

1.68    "***Entity***" means an individual, corporation, partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or other entity.

1.69    "***Equipment Lease***" means the long-term lease between SSB Manufacturing Company, as lessee, and SSB Equipment Company, Inc., as lessor, substantially in the form included in the Plan Supplement.

1.70    "***Estate or Estates***" means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.71    "***Exchange Agreement***" means that certain *Open Market and Cashless Exchange Agreement*, dated as of June 22, 2020, by and among Dawn Intermediate, Serta Simmons Bedding LLC, National Bedding Company, L.L.C., SSB Manufacturing Company and each of the institutions party thereto as lenders.

1.72    "***Excluded Causes of Action***" means any Claims, causes of action, avoidance actions, preferences, or any other actions (i) relating to, or in connection with, the 2020 Transaction and/or the PTL Credit Agreement or any related actions, agreements, and/or documents to any of the foregoing, (ii) the Debtors' claims and causes of action against the Minority Licensees, and (iii) such other causes of action to be agreed upon by the Debtors, the Requisite Consenting Creditors, and the Creditors' Committee or the Class 6B Trustee, as applicable.

1.73    "***Excluded Class 6B Claims***" means (i) any Other General Unsecured Claims in Class 6B filed or asserted by the Minority Licensees and (ii) any Insured Litigation Claim solely to the extent required under any applicable insurance policy or program; *provided, that,* the Claims set forth in (i) – (ii) may not be Allowed without (a) the consent of the Creditors' Committee or the Class 6B Trust, as applicable, or (b) further order of the Bankruptcy Court; *provided further*, in the event the Excluded Class 6B Claims set forth in (i) – (ii) have not been fully reconciled within 180 days of the Effective Date, then the Class 6B Trust shall have the right to either object to, or seek estimation of, such unresolved Excluded Class 6B Claims pursuant to Section 7.3 of the Plan.

1.74    "***Exculpated Parties***" means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors, (ii) Harvey Tepner and Joan Hilson, each in their capacity as independent director of the Debtors, and (iii) the Creditors' Committee and each of its members, solely in their capacity as such.

1.75    "***Exit ABL Commitment***" means the commitment to provide the amounts contemplated under the Exit ABL Facility, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.76    "***Exit ABL Facility***" means a $100,000,000 asset-based revolving credit facility, with a letter of credit sub-facility in an aggregate amount of up to $30,000,000.00 to be provided by the Exit ABL Facility Lenders to the Reorganized Debtors upon the Effective Date.

1.77    "***Exit ABL Facility Agent***" means Wells Fargo Bank, National Association or another agent reasonably acceptable to the Requisite Consenting Creditors, in its capacity as administrative agent under the Exit ABL Facility Credit Agreement.

1.78    "***Exit ABL Facility Credit Agreement***" means that certain credit or loan agreement, in form and substance acceptable to the Exit ABL Facility Agent and Exit ABL Facility Lenders, pursuant to which the Exit ABL Facility shall be provided, to be dated as of the Effective Date, by and among *inter alios* the Reorganized Debtors, as borrower and/or guarantor (as applicable), certain other subsidiaries as guarantors thereto, the Exit ABL Facility Agent and each Exit ABL Facility Lender, consistent with the Commitment Letter and the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.79    "***Exit ABL Facility Lenders***" means the lenders from time to time party to the Exit ABL Facility Credit Agreement or any other lenders reasonably acceptable to the Requisite Consenting Creditors.

1.80    "***Exit ABL Facility Loans***" means the revolving loans to be issued under the Exit ABL Facility.

1.81    "***Final Order***" means as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment was appealed or from which certiorari could be sought, or any request for new trial, reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.82    "***First Lien Intercreditor Agreement***" means that certain *First Lien Intercreditor Agreement*, dated June 22, 2020, by and among, *inter alios*, the PTL Agent, the Non-PTL Agent, and acknowledged and agreed to by Dawn Intermediate, Serta Simmons Bedding, the other borrowers party thereto and each of the other obligors party thereto.

1.83    "***FLFO Claim***" means any Claim arising from, derived from, or in connection to first lien first out term loans held under the PTL Credit Agreement, including any accrued and unpaid interest (whether accruing pre- or postpetition), fees, and other amounts arising and payable with respect thereto, and all Claims or Causes of Action relating thereto.

1.84     "**FLFO Term Loans**" means the new "first lien first out" term loan in the aggregate principal amount of $200 million under the PTL Credit Agreement.

1.85     "**FLSO Claim**" means any Claim arising from, derived from, or in connection to first lien second out term loans under the PTL Credit Agreement, including any accrued and unpaid interest, fees, and other amounts arising and payable with respect thereto, and all Claims or Causes of Action relating thereto.

1.86     "**FLSO Term Loans**" means the "first lien second out" term loans under the PTL Credit Agreement.

1.87     "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.88     "**GUC Recovery Allocation Table**" means the table attached hereto as **Exhibit A**.

1.89     "**Impaired**" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.90     "**Indemnification Obligation**" means any existing or future obligation of any Debtor to indemnify (i) current directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date or (ii) the PTL Lenders and the PTL Agent under the PTL Credit Agreement.

1.91     "**Intercompany Claim**" means any Claim against a Debtor held by another Debtor.

1.92     "**Intercompany Interest**" means an Interest in a Debtor held by another Debtor, other than an Interest in Dawn Intermediate or Serta Simmons Bedding.

1.93     "**Intercreditor Agreements**" means, collectively, the First Lien Intercreditor Agreement and the ABL Intercreditor Agreement.

1.94     "**Insured Litigation Claims**" means insured personal injury and employment practice litigation claims or such other insured claims constituting Other General Unsecured Claims in Class 6B.

1.95     "**Interests**" means any equity in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instruments evidencing an ownership interest, or equity security (as defined in section 101(16) of the Bankruptcy Code) in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, including, without limitation, equity-based employee incentives, grants, stock options, stock appreciation rights, restricted stock, restricted stock units, performance shares/units, incentive awards, or other instruments issued to employees of the Debtors, to acquire any such interests in a Debtor that existed immediately before the Effective Date (in each case whether or not arising under or in connection with any employment agreement; provided, that the foregoing shall not apply to any entitlement to participate in or receive any Interests of the Reorganized Debtors).

1.96     "**Intermediate Equity Interests**" means any outstanding Interests in Dawn Intermediate that existed immediately prior to the Effective Date.

*1.97*   "***Lien***" has the meaning set forth in section 101(37) of the Bankruptcy Code.

*1.98*   "***Local Bankruptcy Rules***" means the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas.

*1.99*   "***Management Incentive Plan***" means a post-emergence equity-based management incentive plan under which eight percent (8%) of the New Common Interests outstanding on a fully diluted basis issued on the Effective Date shall be set aside and may be issued to members of the Reorganized Debtors' management on the terms described in Section 5.12 of the Plan.

*1.100*   "***Minority Licensees***" has the meaning set forth in the *Minority Licensees' Motion for Relief from the Automatic Stay to Allow Arbitration to Proceed* (Docket No. 405).

*1.101*   "***New Board***" means the board of directors or managers of Reorganized Parent.

*1.102*   "***New Common Interests***" means the new common equity of Reorganized Parent to be issued (a) on the Effective Date or (b) as otherwise permitted pursuant to the Plan and the New Corporate Governance Documents.

*1.103*   "***New Corporate Governance Documents***" means the certificate of incorporation, certificate of formation, bylaws, limited liability company agreements, shareholder agreement (if any), operating agreement or other similar organizational or formation documents, as applicable, of the Reorganized Debtors, in each case, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

*1.104*   "***New Intercreditor Agreement***" means that certain intercreditor agreement, to be entered into on the Effective Date, in form and substance acceptable to the Exit ABL Facility Agent and Exit ABL Facility Lenders, by and between the New Term Loan Agent and the Exit ABL Facility Agent, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

*1.105*   "***New Term Loan***" means new first lien term loans in an aggregate principal amount of $315,000,000.00 (including original issue discount, if any) pursuant to the New Term Loan Credit Facility Agreement.

*1.106*   "***New Term Loan Agent***" means an Entity in its capacity as administrative agent under the New Term Loan Credit Facility Agreement the identity of which shall be reasonably acceptable to the Requisite Consenting Creditors.

*1.107*   "***New Term Loan Credit Facility Agreement***" means that certain credit or loan agreement pursuant to which the New Term Loan shall be provided, to be dated as of the Effective Date, by and among *inter alios* the Reorganized Debtors, as borrowers and/or guarantors (as applicable), certain other subsidiaries as guarantors thereto, the New Term Loan Agent and the New Term Loan Lenders, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

*1.108*   "***New Term Loan Lenders***" means the lenders to the New Term Loan.

*1.109*   "***Non-PTL Agent***" means UBS AG, Stamford Branch, solely in its capacities as administrative agent and collateral agent under the Non-PTL Term Loan Agreement.

*1.110* "***Non-PTL Claims***" means any Claim arising from or in connection to principal obligations under the Non-PTL Term Loan Agreement, including all accrued and unpaid interest, fees, and other amounts payable pursuant to, and all claims or Causes of Action arising under or in connection with.

*1.111* "***Non-PTL Lenders***" means the lenders from time to time party to the Non-PTL Term Loan Agreement.

*1.112* "***Non-PTL Term Loan Agreement***" means that certain *First Lien Term Loan Agreement*, dated as of November 8, 2016 (as amended by that certain Amendment No. 1 to First Lien Term Loan Agreement, dated as of June 22, 2020 and as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time), by and among Dawn Intermediate, as holdings, Serta Simmons Bedding, National Bedding Company L.L.C., an Illinois limited liability company, and SSB Manufacturing Company, a Delaware corporation, as borrowers; the Non-PTL Lenders and the Non-PTL Agent.

*1.113* "***Ongoing General Unsecured Claims***" means certain designated Unsecured Claims that are not Other General Unsecured Claims or Intercompany Claims, which are fixed, liquidated, and undisputed payment obligations to a third-party provider of goods or services to the Company that facilitates the Company's operations in the ordinary course of business and will continue to do so after the Effective Date that are neither secured by collateral or entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.

*1.114* "***Other General Unsecured Claim***" means any Unsecured Claim against the Debtors that is not an Ongoing General Unsecured Claim, Intercompany Claim, or Non-PTL Claim.

*1.115* "***Other Intercompany Interests***" means Serta Simmons Bedding Equity Interests and any other Intercompany Interests identified as such in the Restructuring Transactions Exhibit filed with the Plan Supplement.

*1.116* "***Other Secured Claim***" means a Secured Claim, other than an Administrative Expense Claim, a Priority Tax Claim, a FLFO Claim, or a FLSO Claim.  For the avoidance of doubt, Non-PTL Claims are not Other Secured Claims.

*1.117* "***Pension Plans***" means, collectively, the Steelworkers Pension Trust, Teamsters National 401(k) Savings Plan, and Western Conference of Teamsters Pension Trust.

*1.118* "***Person***" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other Entity.

*1.119* "***Petition Date***" means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

*1.120* "***Plan***" means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights and any other applicable consent rights set forth in the Restructuring Support Agreement.

*1.121* "**Plan Supplement**" means a supplemental appendix to the Plan containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and Bankruptcy Rules, which shall include, but not be limited to: (a) the New Corporate Governance Documents; (b) the New Term Loan Credit Facility Agreement; (c) the New Intercreditor Agreement; (d) the Exit ABL Facility Agreement; (e) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (f) the Restructuring Transactions Exhibit; (g) the Schedule of Retained Causes of Action, (h) the Schedule of Rejected Contracts, (i) the Schedule of Assumed Contracts, (j) the Tax Matters Agreement, (k) the Class 6B Trust Agreement, (l) Equipment Lease, (m) Class 6B Tax Disclosures, and (n) any Management Incentive Plan allocation and related documents, if applicable, solely to the extent agreed by the Company and the Requisite Consenting Creditors by the Plan Supplement Date; *provided,* that the foregoing shall be consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights and any other applicable consent rights set forth in the Restructuring Support Agreement; *provided further,* that through the Effective Date, the Debtors shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan and the Restructuring Support Agreement, in each case, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

*1.122* "**Plan Supplement Date**" means the Business Day that is at least 10 days before the Voting Deadline or such other later date determined by the Debtors (in consultation with the Consenting Creditors).

*1.123* "**Prepetition ABL Agent**" means UBS AG, Stamford Branch, in its capacities as administrative agent and collateral agent under the Prepetition ABL Agreement.

*1.124* "**Prepetition ABL Agreement**" means that certain ABL Credit Agreement, dated as of November 8, 2016 (as amended by that certain Amendment No. 1 to ABL Credit Agreement, dated as of June 30, 2020 and as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time), by and among Dawn Intermediate, as holdings, Serta Simmons Bedding, National Bedding Company L.L.C., an Illinois limited liability company, and SSB Manufacturing Company, a Delaware corporation, as borrowers; the Prepetition ABL Lenders and the Prepetition ABL Agent.

*1.125* "**Prepetition ABL Lenders**" means the several banks and other financial institutions from time to time party to the Prepetition ABL Agreement.

*1.126* "**Prepetition Adversary**" means that certain action commenced by AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., AG SF Master (L), L.P., et al. in the Supreme Court of the State of New York, County of New York, Index No. 654181/2022.

*1.127* "**Prepetition Adversary Actions**" means collectively, the Prepetition Adversary and the Prepetition LCM Adversary.

*1.128* "**Prepetition LCM Adversary**" means that certain action commenced by LCM XXII LTD., LCM XXIII LTD., et al. in the United States District Court for the Southern District of New York, Civil Action No. 1:21-cv-03987.

*1.129* "**Prerequisite Condition**" shall have the meaning ascribed to such term in Section 9.2 of the Plan.

1.130    "**Priority Non-Tax Claim**" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.131    "**Priority Tax Claim**" means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.132    "**Professional**" means an Entity (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code that are not Restructuring Fees and Expenses.

1.133    "**Professional Fee Claims**" means all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

1.134    "**Professional Fee Escrow**" means an escrow account established and funded pursuant to Section 2.6 of the Plan.

1.135    "**Pro Rata Share**" means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interest in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.136    "**PTL Agent**" means UBS AG, Stamford Branch, solely in its capacities as administrative agent and collateral agent under the PTL Credit Agreement and Wilmington Savings Society, FSB solely in its capacities as successor administrative agent and collateral agent under the PTL Credit Agreement.

1.137    "**PTL Credit Agreement**" means that certain *Super-Priority Term Loan Agreement*, dated as of June 22, 2020 (as amended by that certain Amendment No. 1 to Super-Priority Term Loan Agreement, dated as of October 19, 2020 and by that certain Amendment No. 2 to Super-Priority Term Loan Agreement, dated as of November 12, 2020, and as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time), by and among Dawn Intermediate, as holdings, Serta Simmons Bedding, National Bedding Company L.L.C., an Illinois limited liability company, and SSB Manufacturing Company, a Delaware corporation, as borrowers; the PTL Lenders, and the PTL Agent.

1.138    "**PTL Group**" means that certain ad hoc group of PTL Lenders represented by the PTL Group Advisors.

1.139    "**PTL Group Counsel**" means Gibson, Dunn & Crutcher LLP, as legal advisors to the PTL Group, and one local counsel to the PTL Group in each relevant jurisdiction, solely to the extent each local counsel has been approved in advance by the Company Parties.

1.140    "**PTL Group Advisors**" means, collectively, (i) the PTL Group Counsel, (ii) Centerview Partners LLC, (iii) one local counsel to the PTL Group in each relevant jurisdiction, and (iv) any other professionals, advisors, consultants, testifying witnesses, and/or experts retained by the PTL Group solely to the extent approved in advance by the Company Parties.

1.141   "**PTL Lenders**" means the several banks and other financial institutions from time to time party to the PTL Credit Agreement holding PTL Obligations.

1.142   "**PTL Obligations**" means the Obligations, as defined in the PTL Credit Agreement.

1.143   "**Proof of Claim**" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.144   "**Reinstate, Reinstated, or Reinstatement**" means leaving a Claim Unimpaired under the Plan.

1.145   "**Related Parties**" means with respect to a Person, that Person's predecessors, successors, assigns, subsidiaries, Affiliates, managed accounts or funds, current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, investment advisors, sub-advisors, collateral managers, and such Persons respective heirs, executors, estates, and nominees, in each case in their capacity as such.

1.146   "**Released Parties**" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the PTL Agent; (d) the Consenting Creditors; (e) the DIP Agent; (f) the DIP Lenders; (g) the Consenting Equity Holders; (h) the Creditors' Committee and each of its members, solely in their capacity as such; and (i) with respect to each of the foregoing Persons in clauses (a) through (h), all current and former Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in Section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

1.147   "**Releasing Parties**" means collectively, and in each case solely in their capacity as such, (a) the Debtors; (b) the Reorganized Debtors; (c) the PTL Agent; (d) the Consenting Creditors; (e) the DIP Agent; (f) the DIP Lenders; (g) the Consenting Equity Holders; (h) the Creditors' Committee and each of its members, solely in their capacity as such; and (i) with respect to each of the foregoing Persons in clauses (a) through (h), all Related Parties; (j) the holders of all Claims or Interests that vote to accept the Plan; (k) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein; (l) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth herein; *provided*, that any holder of an Ongoing General Unsecured Claim that subsequently is deemed to be a holder of an Other General Unsecured Claim, but opts into the releases set forth in the Plan shall be a Releasing Party; (m) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (n) any other Released Party, even if such Released Party purports to opt out of the releases set forth herein.

1.148   "**Reorganized Debtors**" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date, including Reorganized Parent.

1.149   "**Reorganized Parent**" means, from and after the Effective Date, the Entity or Entities serving as the parent or parents of the Reorganized Debtors, identified in and consistent with the Restructuring Transactions Exhibit and as reorganized pursuant to the Plan.

1.150    "***Requisite Consenting Creditors***" means, as of the date of determination, Consenting Creditors holding at least a majority in aggregate principal amount outstanding under the PTL Credit Agreement held by all of the Consenting Creditors.

1.151    "***Restructuring Fees and Expenses***" means (i) the Consenting Equity Holder Fees and Expenses; and (ii) all reasonable and documented fees, costs and expenses of each of the PTL Group Advisors and the PTL Agent, in each case, (i) in connection with the negotiation, formulation, preparation, execution, delivery, implementation, consummation and/or enforcement of the Restructuring Support Agreement, this Plan, and/or any of the other Definitive Documents, and/or the transactions contemplated hereby or thereby, and/or any amendments, waivers, consents, supplements or other modifications to any of the foregoing and, to the extent applicable, (ii)(A) consistent with any engagement letters or fee reimbursement letters entered into between the Company, on the one hand, and the applicable PTL Group Advisors, on the other hand (as supplemented and/or modified by this Agreement), or (B) as provided in the DIP Order and/or the Confirmation Order.

1.152    "***Restructuring Support Agreement***" means that certain Restructuring Support Agreement, dated as of January 23, 2023, by and among the Debtors, the Consenting Creditors, and the Consenting Equity Holders, including any exhibits attached thereto (as may be amended, supplemented or modified from time to time in accordance with the terms thereof).

1.153    "***Restructuring Transactions***" means one or more transactions premised on a debt-for-equity exchange to occur on the Plan Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, in each case, subject to the applicable Consenting Creditor Consent Rights, including: (i) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Persons may agree, including the documents comprising the Plan Supplement; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, amalgamation, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) such other transactions that are required to effectuate the Restructuring Transactions Exhibit in the most tax efficient manner for the Debtors and Reorganized Debtors, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (v) the execution, delivery, and filing, if applicable, of the Definitive Documents; (vi) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order or rule; (vii) pursuing, litigating, adjudicating, diligently prosecuting, resolving, and taking all other necessary actions with respect to the Adversary Proceeding and the Prepetition Adversary Actions consistent with the Plan and this Agreement; and (viii) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

1.154    "***Restructuring Transactions Exhibit***" means a memorandum setting forth the transactions that are required to effectuate the Restructuring Transactions contemplated by the Plan and included in the Plan Supplement, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights, and solely with respect to the Redemption Transaction (as defined in the Restructuring Support Agreement), acceptable to the Consenting Equity Holders.

1.155    "**Serta Simmons Bedding Equity Interests**" means any outstanding Interests in Serta Simmons Bedding that existed immediately prior to the Effective Date.

1.156    "**Schedule of Assumed Contracts**" means the schedule of executory contracts and unexpired leases to be assumed by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.157    "**Schedule of Rejected Contracts**" means the schedule of executory contracts and unexpired leases to be rejected by the Debtors pursuant to the Plan, if any, as the same may be amended, modified, or supplemented from time to time, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.158    "**Schedule of Retained Causes of Action**" means a schedule of Causes of Action to be retained by the Reorganized Debtors a set forth in the Plan Supplement, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights.

1.159    "**Schedules**" means any schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy code.

1.160    "**Secured Claim**" means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code exceeds the value of the Claim, or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.  For the avoidance of doubt, the Non-PTL Claims are not Secured Claims.

1.161    "**Security**" means any Security, as such term is defined in section 101(49) of the Bankruptcy Code.

1.162    "**SIR**" means self-insured retention, retained limit, deductible, or similar provision in any applicable insurance policy.

1.163    "**Solicitation Materials**" means materials used in connection with the solicitation of votes on the Plan, including the Disclosure Statement, the Disclosure Statement Approval Order, and any procedures established by the Bankruptcy Court with respect to solicitation of votes on the Plan, consistent with the Restructuring Support Agreement and, in each case, subject to the Consenting Creditor Consent Rights.

1.164    "**Steelworkers Pension Trust**" means the pension trust, in which eligible employees in the Debtors' Monroe, Ohio, and Moreno Valley, California plants participate.

1.165    "**Subsequent Condition**" shall have the meaning ascribed to such term in Section 9.2 of the Plan.

1.166    "**Tax Code**" means the Internal Revenue Code of 1986, as amended from time to time.

1.167    "**Tax Matters Agreement**" means the agreement between Dawn Holdings, Inc., Serta Simmons Bedding, LLC, SSB Manufacturing Company, Serta, Inc., and SSH Canada Holding Co., substantially in the form included in the Plan Supplement.

1.168    "***Teamsters National 401(k) Savings Plan***" means the savings plan in which eligible employees in Hawaii participate.

1.169    "***Trading Order***" means the order entered by the Bankruptcy Court, related to, among other things, certain transfers and rights to purchase or sell Interests in the Debtors.

1.170    "***U.S. Trustee***" means the United States Trustee for Region 7.

1.171    "***Unimpaired***" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.172    "***Unsecured Claim***" means all Claims that are not a Secured Claim, Other Secured Claims, Priority Tax Claim, Priority Non-Tax Claim, Professional Fee Claim, DIP Claim, or an Administrative Expense Claim. For the avoidance of doubt, deficiency claims in respect of the FLSO Claims are not Unsecured Claims.

1.173    "***Vendor Order***" means, as applicable, the *Final Order (I) Authorizing Debtors to Pay (A) Critical Vendor Claims, (B) Lien Claims, (C) 503(b)(9) Claims, and (D) Certain Royalties; and (II) Granting Related Relief* (Docket No. 369) or the *Interim Order (I) Authorizing Debtors to Pay (A) Critical Vendor Claims, (B) Lien Claims, (C) 503(b)(9) Claims, and (D) Certain Royalties; and (II) Granting Related Relief* (Docket No. 106).

1.174    "***Voting Deadline***" means the date and time as may be set by the Bankruptcy Court pursuant to the Solicitation Materials.

1.175    "***Western Conference of Teamsters Pension Trust***" means the pension trust in which eligible employees in the Debtors' Moreno Valley, California truck drivers participate.

1.176    "***Workers' Compensation Programs***" has the meaning as set forth in the *Final Order (I) Authorizing Debtors to (A) Continue Insurance Programs and Surety Bond Program, (B) Pay All Obligations with Respect Thereto, and (C) Modify Automatic Stay to Permit Employees to Proceed with Workers' Compensation Claims; and (II) Granting Related Relief* (Docket No. 93), including such Workers' Compensation Programs identified on Exhibit A annexed thereto.

B.    **Interpretation; Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in the Plan," "of the Plan," "to the Plan," and "under the Plan," respectively. The words "includes" and "including" are not limiting. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein

that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

        C.      **Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

        D.      **Reference to Monetary Figures**.

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

        E.      **Controlling Document**.

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document).  In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *that*, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan.

        F.      **Consultation, Information, Notice, and Consent Rights**.

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties to the Restructuring Support Agreement set forth in the Restructuring Support Agreement (without enhancement or expansion thereof), including any Consenting Creditor Consent Rights, with respect to the form and substance of the Plan, all exhibits to the Plan, the Plan Supplement, the Disclosure Statement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein.  In case of a conflict between the consent rights of the Consenting Creditors or other applicable parties that are set forth in the Restructuring Support Agreement with those parties' consent rights that are set forth in the Plan or the Plan Supplement, unless otherwise set forth in this Plan, the consent rights in the Restructuring Support Agreement shall control.  Any and all consent rights of the Requisite Consenting Creditors referenced in the Plan or the Restructuring Support Agreement, to the extent given, not given, or otherwise withheld, may be communicated by email transmission by counsel.

**ARTICLE II.**      **ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS.**

        2.1.      ***Administrative Expense Claims***.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to different treatment, each holder of an Allowed Administrative Expense Claim (other than a Professional

Fee Claim) shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on the Effective Date or as soon as practicable thereafter or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided*, *however*, Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders, course of dealing or agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2.     *Professional Fee Claims*.

(a)     All Professionals seeking approval by the Bankruptcy Court of Professional Fee Claims shall (i) file, on or before the date that is forty-five (45) days after the Effective Date (unless extended by the Reorganized Debtors), their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claims.

(b)     The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3.     *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Debtor or the Reorganized Debtors, as applicable, in consultation with the Requisite Consenting Creditors, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course; *provided that*, the Debtors and the Reorganized Debtors, as applicable, reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

2.4.     *DIP Claims*.

Subject to the DIP Order, on the Effective Date, each DIP Claim will be indefeasibly paid in full in Cash upon the Effective Date, and all letters of credit issued under the DIP Credit Agreement shall be cash collateralized in accordance with the terms of the DIP Credit Agreement, unless otherwise agreed to by the Debtors, DIP Agent, and DIP Lenders.

2.5.     *Restructuring Fees and Expenses*.

The Restructuring Fees and Expenses incurred, or estimated to be incurred, up to and including the Effective Date (or, with respect to necessary post-Effective Date activities, after the Effective Date, including, without limitation, in connection with or related to the Adversary Proceeding, the Prepetition Adversary Actions, and/or any other claims, proceedings, actions, or causes of action in connection with or related to the PTL Credit Agreement, the Exchange Agreement, the Intercreditor Agreements, and/or the 2020 Transaction), shall be paid in full in Cash on the Effective Date or as soon as

reasonably practicable thereafter (to the extent not previously paid or satisfied during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms of the Restructuring Support Agreement, without any requirement to file a fee application with the Bankruptcy Court or without any requirement for Bankruptcy Court review or approval.  All Restructuring Fees and Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided*, *however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Fees and Expenses.  On the Effective Date, or as soon as practicable thereafter, final invoices for all Restructuring Fees and Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.

2.6.      ***Professional Fee Escrow***.

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow in any way (whether on account of the New Reorganized Debt, or otherwise).  The Professional Fee Escrow (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Debtors or the Reorganized Debtors and (ii) shall be held in trust for the Professionals; *provided that* funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Reorganized Debtors.  Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; *provided that* the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.

If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the Professional Fee Escrow from the Debtors' Estates without any further action or order of the Bankruptcy Court.

**ARTICLE III.        CLASSIFICATION OF CLAIMS AND INTERESTS**.

3.1.      ***Classification in General***.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2.      ***Formation of Debtor Groups for Convenience Only***.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and making distributions in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets; and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

3.3.     *Summary of Classification*.

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.  The classification of Claims and Interests set forth herein shall apply separately to each Debtor.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 3 | FLFO Claims | Impaired | Yes |
| 4 | FLSO Claims | Impaired | Yes |
| 5 | Non-PTL Claims | Impaired | Yes |
| 6A | Ongoing General Unsecured Claims | Impaired | Yes |
| 6B | Other General Unsecured Claims | Impaired | Yes |
| 7 | Intercompany Claims | Unimpaired/Impaired | No (Presumed to Accept/Deemed to Reject) |
| 8 | Intercompany Interests | Unimpaired/Impaired | No (Presumed to Accept/Deemed to Reject) |
| 9 | Other Intercompany Interests | Impaired | No (Deemed to Reject) |
| 10 | Intermediate Equity Interests | Impaired | No (Deemed to Reject) |

3.4.     *Special Provision Governing Unimpaired Claims*.

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Reorganized Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5.     *Elimination of Vacant Classes*.

Any Class of Claims against or Interests in a Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of such Debtor for purposes of voting to accept or reject such Debtor's Plan, and disregarded for purposes of determining whether such Debtor's Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.6.     *No Waiver*.

Nothing contained in the Plan shall be construed to waive a Debtor's or other Person's right to object on any basis to any Disputed Claim.

**ARTICLE IV.       TREATMENT OF CLAIMS AND INTERESTS.**

4.1.       *Other Secured Claims (Class 1)*.

(a)       *Classification*:  Class 1 consists of the Other Secured Claims.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 1 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

(b)       *Treatment*:  The legal, equitable, and contractual rights of the holders of Other Secured Claims are unaltered by the Plan.  Except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Reorganized Debtors, in consultation with the Requisite Consenting Creditors, (i) each such holder shall receive payment in Cash in an *amount* equal to such Claim, (ii) such holder's Allowed Other Secured Claim shall be Reinstated, or (iii) such holder shall receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)       *Impairment and Voting*:  Class 1 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

4.2.       *Priority Non-Tax Claims (Class 2)*.

(a)       *Classification*:  Class 2 consists of Priority Non-Tax Claims.

(b)       *Treatment*:  The legal, equitable, and contractual rights of the holders of Other Secured Claims are unaltered by the Plan.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Priority Non-Tax Claim, at the option of the Debtors or the Reorganized Debtors, in consultation with the Requisite Consenting Creditors, (i) each such holder shall receive payment in Cash in an amount equal to such Claim, (ii) such holder's Allowed Priority Non-Tax Claim shall be Reinstated, or (iii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)       *Impairment and Voting*:  Class 2 is Unimpaired, and the holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Priority Non-*Tax* Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

4.3.       FLFO Claim*s (Class 3)*.

(a)       *Classification*:  Class 3 consists of FLFO Claims.

(b)       *Allowance*:  The FLFO Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code in the aggregate amount of no less than $197,658,283.32.  Holders of FLFO Claims and the PTL Agent shall not be required to file proofs of Claim on account of their FLFO Claims.

(c)     *Treatment*:  Except to the extent that a holder of an Allowed FLFO Claim agrees to a less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim and in accordance with Section 5.5 of the Plan, on the Effective Date or as soon as reasonably practicable thereafter, such holder's Pro Rata share of New Term Loans equal in amount to the aggregate amount of their Allowed FLFO Claims.

(d)     *Impairment and Voting*:  Class 3 is Impaired, and the holders of FLFO Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.4.     ***FLSO Claims (Class 4)***.

(a)     *Classification*:  *Class* 4 consists of FLSO Claims.

(b)     *Allowance*:  The FLSO Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code in the aggregate amount of no less than $832,012,999.  Holders of FLSO Claims and the PTL Agent shall not be required to file proofs of Claim on account of their FLSO Claims.

(c)     *Treatment*:  Except to the extent that a holder of an Allowed FLSO Claim agrees to a less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim and in accordance with Section 5.5 of the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, such holder's Pro Rata Share of (i) one hundred percent (100%) of the New Common Interests issued on the Effective Date*, less* any New Common Interests distributed to holders of Class 5 Non-PTL Claims under the Plan and subject to dilution by the New Common Interests distributed pursuant to the Management Incentive Plan, and (ii) the aggregate amount of New Term Loans less amounts distributed on account of Class 3.  Receipt of such consideration shall be effected as described in the Restructuring Transactions Exhibit.

(d)     *Impairment and Voting*:  Class 4 is Impaired, and the holders of FLSO Claims in Class 4 are entitled to vote to accept or reject the Plan.

4.5.     ***Non-PTL Claims (Class 5)***.

(a)     Classification: Class 5 consists of Non-PTL Claims.

(b)     *Treatment*: On the Effective Date, all Non-PTL Claims will be cancelled, released, and extinguished and will be of no further force and effect.  Each holder of such Allowed Non-PTL Claims will receive, with a carve out from the collateral (or the value of such collateral) securing the FLSO Claims, its Pro Rata Share of 1% of New Common Interests issued on the Effective Date, subject to dilution by any New Common Interests distributed pursuant to the Management Incentive Plan.

(c)     *Impairment and Voting*:  Class 5 is Impaired, and the holders of Non-PTL Claims in Class 5 are entitled to vote to accept or reject the Plan.

4.6.     ***Ongoing General Unsecured Claims (Class 6A)***.

(a)     *Classification*:  Class 6A consists of Ongoing General Unsecured Claims.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed Ongoing General Unsecured Claim agrees to less favorable treatment, if a holder of an Allowed Ongoing General Unsecured Claim executes a 6A Trade Agreement or a CV Trade Agreement (provided that such CV

Trade Agreement is in effect as of the Effective Date), each holder of an Allowed Ongoing General Unsecured Claim shall receive, with a carve out from the collateral (or the value of such collateral) securing the FLSO Claims, full payment in the Allowed amount of such Ongoing General Unsecured Claim no later than the date that is 60 days from the later of the Effective Date and the execution of the 6A Trade Agreement, notwithstanding any distribution schedule agreed to in a 6A Trade Agreement or CV Trade Agreement.  For the avoidance of doubt, any counterparty to an executory contract or unexpired lease assumed pursuant to Article VIII of the Plan shall not be required to execute a 6A Trade Agreement.

(c)     *Impairment and Voting.*  Class 6A is Impaired, and the holders of Ongoing General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.7.     ***Other General Unsecured Claims (Class 6B).***

(a)     *Classification*:  Class 6B consists of Other General Unsecured Claims.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed Other General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed Other General Unsecured Claim shall receive, in full and final satisfaction of such Claim, with a carve out from the collateral (or the value of such collateral) securing the FLSO Claims, its Pro Rata Share of the Class 6B Trust Interests, as set forth in the GUC Recovery Allocation Table.

(c)     *Impairment and Voting*:  Class 6B is Impaired, and the holders of Other General Unsecured Claims in Class 6B are entitled to vote to accept or reject the Plan.

4.8.     ***Intercompany Claims (Class 7)***.

(a)     *Classification*:  Class 7 consists of Intercompany Claims.

(b)     *Treatment*:  Except as provided for in Section 5.2 of this Plan, on the Effective Date, or as soon as practicable thereafter, all Intercompany Claims shall be adjusted, Reinstated, or discharged (each without any distribution) to the extent reasonably determined to be appropriate by the Debtors or Reorganized Debtors and the Requisite Consenting Creditors, as applicable.

(c)     *Impairment and Voting*:  Holders of Class 7 Claims are either (i) Unimpaired and such holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or (ii) Impaired and such holders are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

4.9.     ***Intercompany Interests (Class 8)***.

(a)     *Classification*:  Class 8 consists of Intercompany Interests.

(b)     *Treatment*:  Except as provided for in Section 5.2 of this Plan, on the Effective Date, and without the need for any further corporate or limited liability company action or approval of any board of directors, management, or shareholders of any Debtor or Reorganized Debtor, as applicable, all Intercompany Interests shall be unaffected by the Plan and continue in place following the Effective Date, solely for the administrative convenience of maintaining the existing corporate structure of the Debtors.

(c)      *Impairment and Voting*:  Class 8 are either (i) Unimpaired and such holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) Impaired, and such holders are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Interests.

4.10.     ***Other Intercompany Interests (Class 9)***.

(a)      *Classification*:  Class 9 consists of Other Intercompany Interests.

(b)      *Treatment*:  On the Effective Date, Other Intercompany Interests shall receive the treatment afforded in the Restructuring Transactions Exhibit.

(c)      *Impairment and Voting*:   Other Intercompany Interests are Impaired.   In accordance with section 1126(g) of the Bankruptcy Code, holders of Other Intercompany Interests are conclusively deemed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to Other Intercompany Interests.

4.11.     ***Intermediate Equity Interests (Class 10)***.

(a)      Classification:  Class 10 consists of Intermediate Equity Interests.

(b)      *Treatment*:  On the Effective Date, Intermediate Equity Interests shall receive the treatment afforded in the Restructuring Transactions Exhibit.

(c)      *Impairment and Voting*:  Intermediate Equity Interests are Impaired, subject solely to the Restructuring Transactions Exhibit.  In accordance with section 1126(g) of the Bankruptcy Code, holders of Intermediate Equity Interests are conclusively deemed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to Intermediate Equity Interests.

**ARTICLE V.      MEANS FOR IMPLEMENTATION.**

5.1.     ***Compromise and Settlement of Claims, Interests, and Controversies.***

(a)      Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan, including the settlement of all Claims, Interests, and controversies among the Debtor and the Consenting Parties given in consideration of the value provided to the Estates by the Consenting Parties, the terms of which are set out in the Restructuring Support Agreement and incorporated by reference herein, shall constitute an integrated and global good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest, including pursuant to the transactions set forth in the Restructuring Transactions Exhibit.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's integrated and global approval of the compromise or settlement of all such Allowed Claims, Allowed Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise, settlement, and transactions are in the best interests of the Debtors, their Estates, and holders of Allowed Claims, Allowed Interests, and is fair, equitable, and is within the range of

reasonableness.  Subject to the provisions of this Plan governing distributions, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

(b)      *Creditors' Committee Global Settlement.*  The treatment provided for hereunder to Allowed Ongoing General Unsecured Claims and Allowed Other General Unsecured Claims under the Plan, together with the other terms and conditions set forth in the Plan and the Confirmation Order, incorporates and reflects a proposed integrated compromise and settlement by and among the Debtors, the Creditors' Committee, and the Requisite Consenting Creditors, pursuant to the Creditors' Committee Global Settlement, including all disputes raised or asserted by the Creditors' Committee including, but not limited to those set forth in the letter dated April 4, 2023.  The Creditors' Committee Global Settlement reflects a proposed compromise and settlement pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code of the Ongoing General Unsecured Claims and Other General Unsecured Claims.  The following constitutes the integrated provisions and conditions of the Creditors' Committee Global Settlement:

(i)      Holders of Ongoing General Unsecured Claims and Other General Unsecured Claims shall receive the treatment set forth in Section 4.6(b) and 4.7(b), respectively.

(ii)      The Creditors' Committee shall (a) withdraw any objection to any motion, application or filing of the Debtors or the PTL Group where such motion, application or filing is not inconsistent with Creditors' Committee Global Settlement, (b) not make or file any objection contrary to or against the relief sought by the Debtors or the PTL Group in relation to the Plan where such relief is not inconsistent with the Creditors' Committee Global Settlement, (c) support the Plan, and (d) withdraw all document production requests and deposition notices and limit all participation in any depositions to only observance.

(iii)      The Class 6B Trust shall have the authority to reconcile all Other General Unsecured Claims other than the Excluded Class 6B Claims, *provided that*, the Debtors, the Requisite Consenting Creditors, and the Creditors' Committee shall, by the Effective Date or as soon as reasonably practicable thereafter, agree on a written protocol acceptable to each to address the reconciliation of the Excluded Class 6B Claims.  The Debtors and the Reorganized Debtors, as applicable, shall retain exclusive authority to reconcile and settle the Excluded Class 6B Claims in accordance with the terms of this Plan, but, for the avoidance of doubt, all distributions under this Plan on account of Allowed Excluded Class 6B Claims shall be made by the Class 6B Trust.

(iv)      In accordance with Section 8.7 of this Plan, the Debtors and their Estates shall only be liable on, and the Class 6B Trust shall only be responsible for distributions to, Allowed Insured Litigation Claims up to the amount of any applicable SIR, and the distributions provided for pursuant to Section 4.7 of the Plan on account of such SIR shall satisfy any requirement for such amounts to be paid under the applicable insurance policies and any amount of the Allowed Insured Litigation Claims in excess of an such self-insured retention or similar deductible shall be satisfied by the insurer pursuant to the applicable insurance policy.

(v)      Upon the Effective Date, the Debtors shall transfer, or cause to be transferred, the Class 6B Trust Assets to the Class 6B Trust.

(vi)      The Reorganized Debtors shall provide the Class 6B Trust reasonable consultation and access to the Debtors' books and records, including access to insurance

policies related to the Insured Litigation Claims, to enable reconciliation of the Other General Unsecured Claims and the pursuit of Class 6B Causes of Action, as set forth in the Class 6B Trust Agreement.

(vii)    The Challenge Deadline, as defined in the DIP Order and as previously extended for the Creditors' Committee, shall be further extended, solely for the Creditors' Committee, until the earlier of (a) confirmation of the Plan, and (b) the withdrawal of the Plan or the filing of an amended Plan that is inconsistent with the terms of the Creditors' Committee Global Settlement (the date upon which the earlier of (a) or (b) occurs, "Extended Challenge Deadline").  Prior to the Extended Challenge Deadline, the Creditors' Committee shall not pursue a Challenge, as defined in the DIP Order; *provided, however*, if the Extended Challenge Deadline occurs before the Confirmation Date solely (x) pursuant to (b) above and (y) the Creditors' Committee is not in breach of the terms of the Creditors' Committee Global Settlement, the Creditors' Committee Challenge Deadline shall be tolled for an additional two (2) business days, during which time the Creditors' Committee may initiate a Challenge solely pursuant to, and consistent with, paragraph 43 of the DIP Order.

(viii)    The Requisite Consenting Creditors shall waive any potential Other General Unsecured Claims solely to the extent such potential Other General Unsecured Claims would be Claims in Class 6B, including without limitation claims relating to the 2020 Transaction or the PTL Credit Agreement, in all cases, solely as such Claims relate to Class 6B and not in any other capacity.

(ix)    The Creditors' Committee agrees to become a Releasing Party.

5.2.    ***Intercreditor Agreements***.

Except as expressly provided in the Plan, all rights, entitlements, and distributions shall be subject to the Intercreditor Agreements, the priorities and payment waterfalls of which shall be incorporated, preserved, and enforced by the Plan, the Debtors, the Consenting Creditors, and, as applicable, the Reorganized Debtors, pursuant to section 510 of the Bankruptcy Code.

5.3.    ***Continued Corporate Existence; Effectuating Documents; Corporate Action; Restructuring Transactions***.

(a)    Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as Reorganized Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the New Corporate Governance Documents or other applicable corporate governance documents.

(b)    Notwithstanding anything herein to the contrary, on or about the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall take all actions set forth in and contemplated by the Restructuring Transactions Exhibit, and enter into any transaction and may take all actions as may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plan, including the Restructuring Transactions.

(c)    Upon the Effective Date, subject to the Consenting Creditor Consent Rights, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) the assumption of executory contracts and unexpired leases as provided herein, (ii) the selection of

the managers, directors, or officers for the Reorganized Debtors, (iii) the distribution of the New Common Interests, (iv) the entry into or execution of the Exit ABL Facility Credit Agreement and the New Term Loan Credit Facility Agreement, in each case, including definitive documentation related thereto, (v) any necessary action with respect to the Management Incentive Plan in accordance with Section 5.12 hereof, and (vi) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof.

(d)     The Confirmation Order shall and shall be deemed to, pursuant to sections 363, 1123, and 1142 of the Bankruptcy Code, authorize and direct parties, as applicable, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions and implement the Creditors' Committee Global Settlement.

(e)     Each officer, member of the board of directors, or manager of the Debtors is (and each officer, member of the board of directors, or manager of the Reorganized Debtors shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders or directors or managers of the Debtors or the Reorganized Debtors) except for those expressly required pursuant to the Plan.

(f)     All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors or by any other stakeholder, and with like effect as though such action had been taken unanimously by the stockholders, directors, managers, or officers, as applicable, of the Debtors or Reorganized Debtors.

5.4.     ***Intercompany Interests; Corporate Reorganization.***

To the extent Reinstated under the Plan, on the Effective Date, the Intercompany Interests (a) shall be Reinstated for the ultimate benefit of the holders of Claims that receive New Common Interests under the Plan, and shall receive no recovery or distribution, and (b) without the need for any further corporate action or approval of any board of directors, board of managers, managers, management, or stockholders of any Debtor or Reorganized Debtor, as applicable, the certificates and all other documents representing the Intercompany Interests shall be deemed to be in full force and effect.

5.5.     ***New Term Loan***.

(a)     On the Effective Date, in accordance with, and subject to, the terms and conditions of the New Term Loan Credit Facility Agreement, the Debtors will enter into the New Term Loan Credit Facility Agreement.  All Liens and security interests granted pursuant to the New Term Loan Credit Facility Agreement shall be (i) valid, binding, perfected, and enforceable Liens and security interests in the personal and real property described in and subject to such document, with the priorities established in respect thereof under applicable non-bankruptcy law and as provided for in the New Intercreditor Agreement, and (ii) not subject to avoidance, recharacterization, or subordination under any applicable law, the Plan or the Confirmation Order.

(b)     On or before (as applicable) the Effective Date, the Debtors shall be authorized to execute, deliver, and enter into and perform under the New Term Loan Credit Facility Agreement without further (a) notice to or order or other approval of the Bankruptcy Court, (b) act or omission under applicable law, regulation, order, or rule, (c) vote, consent, authorization, or approval of any Person, or (d) action by the holders of Claims or Interests.  The New Term Loan Credit Facility Agreement shall constitute legal, valid, binding and authorized joint and several obligations of the applicable Reorganized Debtors, enforceable in accordance with its terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan or the Confirmation Order.  The New Term Loan Facility Agreement (and other definitive documentation related thereto) are reasonable and are being entered into in good faith.

(c)     The Reorganized Debtors and the Persons granted Liens and security interests under the New Term Loan are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

5.6.     *Exit ABL Facility*.

(a)     On the Effective Date, the Reorganized Debtors shall be authorized to execute, deliver, and enter into the Exit ABL Facility Agreement without further (a) notice to or order or other approval of the Bankruptcy Court, (b) act or omission under applicable law, regulation, order, or rule, (c) vote, consent, authorization, or approval of any Person, or (d) action by the holders of Claims or Interests.  The Exit ABL Facility Agreement shall constitute legal, valid, binding and authorized joint and several obligations of the applicable Reorganized Debtors, enforceable in accordance with its terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan or the Confirmation Order.  The financial accommodations to be extended pursuant to the Exit ABL Facility Agreement (and other definitive documentation related thereto) are reasonable and are being extended, and shall be deemed to have been extended, in good faith and for legitimate business purposes.

(b)     On the Effective Date, subject in all respects to the terms of the Commitment Letter, (a) all letters of credit issued under the DIP Credit Agreement, shall be either (i) cash collateralized, or (ii) with the consent of the DIP Agent and DIP Lenders, deemed issued under the Exit ABL Facility Agreement in accordance with the terms and conditions of the Exit ABL Facility Agreement, and (b) all Liens and security interests granted pursuant to the Exit ABL Facility Agreement shall be (i) valid, binding, perfected, and enforceable Liens and security interests in the personal and real property described in and subject to such document, with the priorities established in respect thereof under applicable non-bankruptcy law and as provided for in the New Intercreditor Agreement and (ii) not subject to avoidance, recharacterization, or subordination under any applicable law, the Plan, or the Confirmation Order.

(c)     The Reorganized Debtors and the Persons granted Liens and security interests under the Exit ABL Facility are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether

domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

5.7.     *New Intercreditor Agreement*.

On the Effective Date, the New Term Loan Agent and the Exit ABL Facility Agent shall enter into the New Intercreditor Agreement.  Each lender under the New Term Loan Credit Facility Agreement and the Exit ABL Facility Credit Agreement shall be deemed to have directed the New Term Loan Agent or the Exit ABL Facility Agent, as applicable, to execute the New Intercreditor Agreement and shall be bound to the terms of the New Intercreditor Agreement from and after the Effective Date as if it were a signatory thereto.

5.8.     *Section 1145 Exemption*.

(a)     The offer, issuance, and distribution of the New Common Interests hereunder shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from registration under (i) the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of Securities.

(b)     The New Common Interests may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, subject to: (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933; (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; and (iii) applicable regulatory approval.

5.9.     *Cancellation of Existing Securities and Agreements*.

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Reorganized Debtors, on the Effective Date, all agreements, instruments, notes, certificates, mortgages, security documents, and any other instruments or documents evidencing any Claim or Interest (other than Intercompany Interests that are not modified by the Plan) and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.  Notwithstanding such cancellation and discharge, (a) the PTL Credit Agreement and Intercreditor Agreements shall continue in effect solely (i) to the extent necessary to allow the holders of Allowed FLFO Claims and Allowed FLSO Claims to receive distributions under the Plan, (ii) to the extent necessary to allow the Debtors, Reorganized Debtors, and/or PTL Agent to make post-Effective Date distributions or take such other action pursuant to the Plan on account of Allowed FLFO Claims and Allowed FLSO Claims and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims, and (iii) to appear in the Chapter 11 Cases; and (b) the Non-PTL Term Loan Agreement shall continue in effect (i) to the extent necessary to allow the holders of Allowed Non-PTL Claims to receive distributions under the Plan, (ii) to the extent necessary to allow the Debtors, Reorganized Debtors, and/or Non-PTL Agent to make post-Effective Date distributions or take such other action pursuant to the Plan on account of Allowed Non-PTL Claims and to otherwise exercise their rights and discharge their obligations relating to the

interests of the holders of such Claims, and (iii) to appear in the Chapter 11 Cases, *provided*, *however*, that nothing in the foregoing shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any liability or expense to the Reorganized Debtors or the Class 6B Trust.  Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors or their interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this section shall be deemed null and void and shall be of no force and effect, and the Debtors shall be entitled to continue to use (in accordance with the remaining provisions of such document, instrument, lease, or other agreement) any land, facilities, improvements, or equipment financed with the proceeds of the PTL Credit Agreement and/or the Non-PTL Term Loan Agreement, as applicable.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any executory contract or lease to the extent such executory contract or lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

5.10.    *Cancellation of Liens*.

(a)    Except as otherwise specifically provided herein, including pursuant to Section 5.5(a) of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Intermediate Equity Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable holders on account of their Claims and Interests.

(b)    Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or the Reorganized Debtors, as applicable, any collateral or other property of a Debtor held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

(c)    After the Effective Date, the distributions to holders on account of Allowed FLFO Claims and Allowed FLSO Claims, and the payment of the Restructuring Fees and Expenses (including, without limitation, attorneys' and financial advisors' reasonable and documented fees and expenses), the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the FLFO Claims and FLSO Claims, including, without limitation, the preparation and filing, in form, substance, and content acceptable to the Requisite Consenting Creditors, as applicable, of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the PTL Agent and/or PTL Lenders, including, without limitation, UCC-3 termination statements.

5.11.    *Officers and Boards of Directors*.

(a)    On or after the Effective Date, subject to the Consenting Creditor Consent Rights, the members of the New Board shall be appointed to serve pursuant to the terms of the applicable New Corporate Governance Documents.  The current chief executive officer of Serta Simmons Bedding shall serve as a member of the New Board.  The composition of each board of directors or managers of a Reorganized Debtor, as applicable, and, to the extent applicable, the officers of each Reorganized

Debtor, shall be disclosed prior to the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code.

(b)     The selection of the initial members of the board of directors or managers of the Reorganized Debtors, as applicable, shall be provided for and subject to the New Corporate Governance Documents, subject to the express provisions of the Plan and the Consenting Creditor Consent Rights.  The initial New Board will be comprised of (i) the current chief executive officer of Serta Simmons Bedding, and (ii) additional members the number and identity of whom will be selected by the Requisite Consenting Creditors in consultation with the Company.

(c)     The officers of the respective Debtors immediately before the Effective Date, as applicable, shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date and in accordance with any employment agreement with the Reorganized Debtors and applicable non-bankruptcy law. After the Effective Date, the selection of officers of the Reorganized Debtors shall be as provided by their respective organizational documents.

(d)     Except to the extent that a member of the board of directors or a manager, as applicable, of a Debtor continues to serve as a director or manager of such Debtor on and after the Effective Date, the members of the board of directors or managers of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director or manager will be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date. Commencing on the Effective Date, each of the directors and managers of each of the Reorganized Debtors shall be elected and serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents.

5.12.     *Management Incentive Plan*.

No later than 120 days following the Effective Date, the New Board, subject to its fiduciary duties, shall adopt the Management Incentive Plan.  The New Board shall determine allocations under the Management Incentive Plan, up to, in the aggregate, 8% of the New Common Interests set aside pursuant to the Management Incentive Plan, distributed on a fully diluted basis (including shares issuable under any employee incentive plan).

5.13.     *Authorization, Issuance, and Delivery of New Common Interests.*

On the Effective Date, Reorganized Parent is authorized to issue or cause to be issued and shall issue the New Common Interests for distribution in accordance with the terms of the Plan without the need for any further board, stockholder or other corporate action.  All of the New Common Interests issuable under the Plan, when so issued, shall be duly authorized and validly issued.  Reorganized Parent shall issue or reserve for issuance a sufficient number of common equity issuances to effectuate all issuances of New Common Interests contemplated by the Plan, including the Management Incentive Plan.   Each holder of New Common Interests shall be deemed, without further notice or action, to have agreed to be bound by the New Corporate Governance Documents, as the same may be amended form time to time following the Effective Date in accordance with their terms.  The New Corporate Governance Documents shall be binding on all Entities receiving New Common Interests (and their respective successors and assigns), whether received pursuant to the Plan or otherwise and regardless of whether such Entity executes or delivers a signature page to any New Corporate Governance Document.

5.14.    ***Pension Plans***.

From and after the Effective Date, the Pension Plans shall be Reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the applicable Reorganized Debtors pursuant to section 365 of the Bankruptcy Code and Article VIII of the Plan.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the Pension Plans.  The obligations under the Pension Plans will continue in the same manner and according to the same terms and practices applicable to the Debtors, as existed prior to the Effective Date.

5.15.    ***Collective Bargaining Agreements***.

The Collective Bargaining Agreements shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under Article VIII of the Plan.  Each of the Collective Bargaining Agreements with the respective unions shall remain in full force and effect on and after the Effective Date, subject to the respective terms thereof.  Notwithstanding any other provisions of the Plan, including the Cure amount listed in the Schedule of Assumed Contracts in relation to the Collective Bargaining Agreements, Cure obligations, if any, related to the assumption of Collective Bargaining Agreements shall be satisfied in full by payment, in the ordinary course, of all undisputed obligations arising under the Collective Bargaining Agreements, including but not limited to grievances, grievance and other settlements, and arbitration awards, unless otherwise agreed between the Debtors or the Reorganized Debtors, as applicable, and the applicable counterparty to the Collective Bargaining Agreement.  Any Proofs of Claim or administrative claims filed or to be filed by any labor union, or any of its members, for amounts due under a Collective Bargaining Agreement are deemed to be satisfied by the assumption of the Collective Bargaining Agreements as set forth herein and shall be deemed administered, adjudicated, and if applicable, paid under such Collective Bargaining Agreement.  For the avoidance of doubt, the Debtors' or the Reorganized Debtors', as applicable, rights, defenses, claims and counterclaims with respect to any such obligations are expressly preserved.

5.16.    ***Nonconsensual Confirmation***.

The Debtors intend to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

5.17.    ***Closing of the Chapter 11 Cases***.

After an Estate has been fully administered, the Reorganized Debtors, in consultation with the Class 6B Trust, shall promptly seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules.

5.18.    ***Notice of Effective Date***.

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

5.19.    ***Separate Plans***.

Notwithstanding the combination of separate plans of reorganization for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more

Debtors, it may still confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

5.20.     *Class 6B Trust.*

(a)     *Creation and Governance of the Class 6B Trust.*  On or before the Effective Date, the Debtors shall irrevocably transfer all of their rights, title, and interest in and to the Class 6B Trust Assets to the Class 6B Trust, which Class 6B Trust Assets, or interests in the Class 6B Trust Assets, shall vest or shall be deemed to vest in the Class 6B Trust as of the Effective Date, and the Debtors and the Class 6B Trustee shall execute the Class 6B Trust Agreement and shall take all steps necessary to establish the Class 6B Trust in accordance with the Plan and the beneficial interests therein.  In the event of any conflict between the terms of the Plan and the terms of the Class 6B Trust Agreement, the terms of the Plan shall govern.  The Class 6B Trust Assets shall automatically vest in the Class 6B Trust as provided herein, without further action by any Person, free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.  The Class 6B Trust, acting by and through the Class 6B Trustee, shall be the exclusive administrator of the Class 6B Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as a representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the Class 6B Trustee's duties under the Class 6B Trust Agreement.  The Class 6B Trust shall be governed by the Class 6B Trust Agreement and administered by the Class 6B Trustee.  The powers, rights, and responsibilities of the Class 6B Trust and the Class 6B Trustee shall be specified in the Class 6B Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this Section 5.20.  The Class 6B Trust shall hold and distribute the Class 6B Trust Assets to all holders of Allowed Other General Unsecured Claims in accordance with the provisions of the Plan and the Class 6B Trust Agreement.  Other rights and duties of the Class 6B Trust and the Class 6B Trustee shall be as set forth in the Class 6B Trust Agreement.  After the Effective Date, the Debtors and the Reorganized Debtors shall have no interest in the Class 6B Trust Assets except as set forth in the Class 6B Trust Agreement.

(b)     *Class 6B Trust Agreement.*  The Class 6B Trust Agreement, substantially in the form included in the Plan Supplement, will provide for, among other things:  (i) the transfer of the Class 6B Trust Assets to the Class 6B Trust; (ii) the payment of Class 6B Trust Expenses; (iii) litigation of any Class 6B Trust Causes of Action, which may include the prosecution, settlement, abandonment or dismissal of any such Causes of Action; (iv) distributions to holders of Allowed Other General Unsecured Claims as provided herein and in the Class 6B Trust Agreement; (v) maintaining and administering a disputed claims reserve, if applicable; and (vi) the Class 6B Trust's reasonable access to the Debtors' books and records, including access to insurance policies related to the Insured Litigation Claims, and reasonable access to current employees or professionals of the Debtors or Reorganized Debtors, as applicable, with knowledge regarding the Class 6B Causes of Action or Other General Unsecured Claims.  The Class 6B Trust Agreement will also include reasonable and customary provisions that allow for the limitation of liability and indemnification of the Class 6B Trustee and the Class 6B Indemnified Parties by the Class 6B Trust.  Any such indemnification shall be the sole responsibility of the Class 6B Trust and payable solely from the Class 6B Trust Assets. The Class 6B Trustee shall be responsible for all decisions and duties with respect to the Class 6B Trust and the Class 6B Trust Assets, except as otherwise provided in the Class 6B Trust Agreement.

(c)     *Identification of Class 6A Ongoing General Unsecured Claims and Class 6B Other General Unsecured Claims.*  The Debtors and/or Reorganized Debtors, as applicable, the Requisite Consenting Creditors, and the Creditors' Committee shall work cooperatively to create a list of all Scheduled and filed Unsecured Claims which list shall identify whether the Debtors consider such

claims to constitute Ongoing General Unsecured Claims or Other General Unsecured Claims. The Debtors or the Reorganized Debtors, as applicable, shall provide the Creditors' Committee or Class 6B Trust, as applicable, updates to such list as reasonable, but in no event later than 180 days following the Effective Date.

(d)     *Preservation of Privilege*.  The Debtors and the Class 6B Trust shall enter into a common interest agreement whereby the Debtors and Reorganized Debtors will be able to share documents, information or communications (whether written or oral) reasonably relating to the Class 6B Trust Assets.  The Class 6B Trust shall seek to preserve and protect all applicable privileges attaching to any such documents, information, or communications.  The Class 6B Trust's receipt of such documents, information or communications shall not constitute a waiver of any privilege.  All privileges shall remain in the control of the Debtors or the Reorganized Debtors, as applicable, and the Debtors or the Reorganized Debtors, as applicable, retain the sole right to waive their own privileges.

(e)     *Class 6B Trust Causes of Action*.  The Class 6B Trust shall have the exclusive right in respect of all Class 6B Trust Causes of Action to institute, file, prosecute, enforce, settle, compromise, release, abandon, or withdraw any and all Class 6B Trust Causes of Action without any further order of the Bankruptcy Court or consent of any other party, except as otherwise provided herein or in the Class 6B Trust Agreement.  From and after the Effective Date, the Class 6B Trustee, in accordance with section 1123(b)(3) of the Bankruptcy Code, and on behalf of the Class 6B Trust, shall serve as a representative of the Estates, solely for purposes of carrying out the Class 6B Trustee's duties under the Class 6B Trust Agreement.   All costs and expenses of investigating, pursuing, prosecuting and/or compromising Class 6B Trust Causes of Action shall be satisfied from the proceeds of the Class 6B Trust Causes of Action before any proceeds remaining after the satisfaction of such costs and expenses are paid to Class 6B Trust Beneficiaries as provided in this Plan.  To the extent of any costs or expenses advanced by the Class 6B Trust or Class 6B Trustee prior to receipt of any proceeds of Class 6B Trust Causes of Action, the Cash Class 6B Trust Assets shall be replenished as and when proceeds of Class 6B Trust Causes of Action are received.  For the avoidance of doubt, the Class 6B Trustee may expend such portion of the Class 6B Trust Assets as the Class 6B Trustee deems necessary to investigate, pursue, prosecute and/or compromise Class 6B Trust Causes of Action.

(f)     *Class 6B Trust Fees and Expenses*.  From and after the Effective Date, the Class 6B Trustee, on behalf of the Class 6B Trust, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the Class 6B Trust Expenses from the Class 6B Trust Assets, except as otherwise provided in the Class 6B Trust Agreement.  The Reorganized Debtors, or any of their Affiliates (or anyone acting on their behalf) shall not be responsible for any Class 6B Trust Expenses.

(g)     *Tax Treatment*.  In furtherance of this <u>Section 5.20</u> of the Plan, (i) the Class 6B Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the holders of Other General Unsecured Claims, consistent with the terms of the Plan, and accordingly, all assets held by the Class 6B Trust are intended to be treated for U.S. federal income tax purposes as distributed by the Debtors or the Reorganized Debtors, as applicable, to the holders of Allowed Other General Unsecured Claims (other than any portion allocable to a "disputed ownership fund" or other separate entity as described below), and then contributed by such holders to the Class 6B Trust in exchange for their applicable Class 6B Trust Interests; (ii) the sole purpose of the Class 6B Trust shall be the liquidation and distribution of the Class 6B Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of Other General Unsecured Claims in accordance

with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iii) all parties (including the Debtors, holders of Other General Unsecured Claims, and the Class 6B Trustee) shall report consistently with such treatment (including the deemed receipt of the underlying assets, subject to applicable liabilities and obligations, by the holders of Other General Unsecured Claims, as applicable, followed by the deemed contribution of such assets to the Class 6B Trust); (iv) all parties shall report consistently with the valuation of the Class 6B Trust Assets transferred to the Class 6B Trust as determined by the Class 6B Trustee (or its designee); (v) the Class 6B Trustee shall be responsible for filing returns for the Class 6B Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (vi) the Class 6B Trustee shall annually send to each holder of an interest in the Class 6B Trust a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Class 6B Trustee of a private letter ruling if the Class 6B Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Class 6B Trustee), the Class 6B Trustee may (x) determine, in the Class 6B Trustee's sole discretion, the best way to report for tax purposes with respect to any Disputed Other General Unsecured Claims, including filing a tax election to treat any assets allocable to Disputed Other General Unsecured Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) or electing to report as a separate trust or sub-trust or other entity, (y) file such tax returns (including but not limited to the filing of a separate federal tax return for the "disputed ownership fund" or other separate entity) and pay such taxes as may be required consistent with such treatment and (z) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including the Debtors, holders of Other General Unsecured Claims, and the Class 6B Trustee) shall report for United States federal, state, and local income tax purposes consistently with the foregoing.  Any taxes (including with respect to earned interest, if any) imposed on the Class 6B Trust as a result of this treatment (including as a result of any deemed transfer of the assets out of a disputed ownership fund or other separate entity upon resolution of any Claim) shall be paid by the Class 6B Trustee out of Class 6B Trust Assets (and reductions shall be made to amounts disbursed from the trust to account for the need to pay such taxes or any other costs or expenses).  For the avoidance of doubt, the Class 6B Trustee shall be permitted to sell any assets of a disputed ownership fund or other separate entity to the extent necessary to satisfy such tax liability (including any tax liability arising in connection with such sale).  The Class 6B Trustee may request an expedited determination of taxes of the Class 6B Trust, including any disputed ownership fund or other separate entity, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Class 6B Trust for all taxable periods through the dissolution of the Class 6B Trust.

(h)     *Non-Transferability of Class 6B Trust Interests*.  The Class 6B Trust Interests, and any right to receive a distribution from the Class 6B Trust, shall not be evidenced by any certificate, security, receipt, or any other form or manner whatsoever, except as maintained on the books and records of the Class 6B Trust by the Class 6B Trustee.  Any and all Class 6B Trust Interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law.  In addition, any and all Class 6B Trust Interests will not constitute "securities" and will not be registered pursuant to the Securities Act or any applicable state or local securities law.  However, if it should be determined that any such interests constitute "securities," the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer, issuance, and distribution under the Plan of the Class 6B Trust Interests will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

(i)     *Dissolution of the Class 6B Trust*.  The Class 6B Trustee and the Class 6B Trust shall be discharged or dissolved, as the case may be, at such time as (i) the Class 6B Trustee determines

that the pursuit of additional Class 6B Trust Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit of such claims and (ii) all distributions required to be made by the Class 6B Trustee under the Plan have been made; provided that in no event shall the Class 6B Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six (6) month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Class 6B Trustee that any further extension would not adversely affect the status of the Class 6B Trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on, liquidation and distribution of, the Class 6B Trust Assets. Upon dissolution of the Class 6B Trust any remaining Class 6B Trust Assets shall be distributed to holders of Allowed Other General Unsecured Claims in accordance with the Plan and the Class 6B Trust Agreement, as appropriate, or, in the event all Allowed Other General Unsecured Claims and obligations of the Class 6B Trust are paid in full, the Class 6B Trustee shall have the right to cause the Class 6B Trust to abandon or otherwise dispose of such property, including, but not limited to, by way of donation to a non-profit 501(c)(3) organization that the Class 6B Trustee may select in its discretion.

(j)       *Single Satisfaction of Allowed Other General Unsecured Claims*.  Notwithstanding anything to the contrary herein, in no event shall holders of Allowed Other General Unsecured Claims recover more than the full amount of their Allowed Other General Unsecured Claims from the Class 6B Trust.

**ARTICLE VI.       DISTRIBUTIONS.**

6.1.       ***Distributions Generally.***

The Disbursing Agents shall make all applicable distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

6.2.       ***Distributions Subject to Intercreditor Agreements.***

Except as expressly provided in Section 4.5 of this Plan, distributions under the Plan to holders of FLFO Claims, FLSO Claims, and Non-PTL Claims shall be made subject to and in accordance with the Intercreditor Agreements.

6.3.       ***Distribution Record Date.***

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests.  The Debtors, the Reorganized Debtors or the Class 6B Trust shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.  In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors, Class 6B Trust nor the applicable Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

6.4.     *Date of Distributions*.

Except as otherwise provided in this Plan (including payments made in the ordinary course of the Debtors' business) or as paid pursuant to a prior Bankruptcy Court order, on the Effective Date or, if a Claim or Interest is not Allowed on the Effective Date, on the date that such Claim or Interest becomes Allowed, or, in each case, as soon as reasonably practicable thereafter, or as otherwise determined in accordance with the Plan and Confirmation Order, including, without limitation, the treatment provisions of Article IV of the Plan, each holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable class provided in the Plan.

6.5.     *Disbursing Agent*.

All distributions under the Plan shall be made by the applicable Reorganized Debtor, the Class 6B Trust, or applicable Disbursing Agent, on or after the Effective Date or as otherwise provided herein. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties, and all reasonable fees and expenses incurred by such Disbursing Agent directly related to distributions hereunder shall be reimbursed by the Reorganized Debtors or the Class 6B Trust, as applicable.

6.6.     *Rights and Powers of Disbursing Agent*.

(a)     From and after the Effective Date, each Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against and Interests in the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent. No holder of a Claim or Interest or other party in interest shall have or pursue any Claim or Cause of Action vested in a Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by such Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)     Powers of Disbursing Agent. Each Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (A) as may be vested in such Disbursing Agent by order of the Bankruptcy Court (including any Final Order issued after the Effective Date) or pursuant to the Plan or (B) as deemed by such Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

(c)     Expenses Incurred on or After the Effective Date. Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Reorganized Debtors or the Class 6B Trust, as applicable, the amount of any reasonable fees and expenses incurred by a Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including for reasonable attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors or the Class 6B Trust as applicable, in the ordinary course of business.

6.7.     ***Expenses of Disbursing Agent***.

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by a Disbursing Agent acting in such capacity (including reasonable and documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Reorganized Debtors or the Class 6B Trust, as applicable, in the ordinary course of business.

6.8.     ***No Postpetition Interest on Claims***.

Except as otherwise specifically provided for in the Plan (including, without limitation, with respect to FLFO Claims), the Confirmation Order, or another order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

6.9.     ***Delivery of Distributions***.

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made to a Disbursing Agent, who shall transmit such distribution to the applicable holders of Allowed Claims.  In the event that any distribution to any holder is returned as undeliverable, no further distributions shall be made to such holder unless and until such Disbursing Agent is notified in writing of such holder's then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Nothing herein shall require any Disbursing Agent to attempt to locate holders of undeliverable distributions and, if located, assist such holders in complying with Section 6.20 of the Plan.

6.10.     ***Distributions after Effective Date***.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.11.     ***Unclaimed Property***.

(a)     One year from the Effective Date, all distributions payable on account of such Claim, other than Other General Unsecured Claims, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Reorganized Debtors or their successors or assigns, and all claims of any other person (including the holder of a Claim in the same Class) to such distribution shall be discharged and forever barred.  The Reorganized Debtors and the Disbursing Agent shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

(b)     Ninety (90) days after the date of first issuance of any distribution to a holder of an Allowed Other General Unsecured Claim, such distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Class 6B Trust, and all claims of such holder of such Allowed Other General Unsecured Claim to such distribution shall be discharged and forever barred.  The Class 6B Trust and any Disbursing Agent shall have no obligation to attempt to locate any holder of an Allowed Other General Unsecured Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

6.12.    ***Time Bar to Cash Payments***.

Checks issued by a Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of first issuance thereof.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtors or the Class 6B Trust as applicable, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Requests for re-issuance of any check shall be made to the applicable Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued, prior to the expiration of the ninety (90) day period.

6.13.    ***Manner of Payment under Plan***.

Except as otherwise specifically provided in the Plan (i) at the option of the Debtors or the Reorganized Debtors, as applicable, any Cash payment to be made hereunder by the Debtors or Reorganized Debtors may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors, and (ii) at the option of the Class 6B Trust, any Cash payment to be made hereunder by the Class 6B Trust, may be made by a check or wire transfer.

6.14.    ***Satisfaction of Claims***.

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

6.15.    ***Fractional Stock***.

No fractional New Common Interests shall be distributed.  If any distributions of New Common Interests pursuant to the Plan would result in the issuance of a fractional share of New Common Interests, then the number of shares of New Common Interests to be issued in respect of such distribution will be calculated to one decimal place and rounded up or down to the closest whole share (with a half share or greater rounded up and less than a half share rounded down).  The total number of shares of New Common Interests to be distributed in connection with the Plan shall be adjusted as necessary to account for the rounding provided for in this Section 6.15.  No consideration shall be provided in lieu of fractional shares that are rounded down.  Neither the Reorganized Debtors nor the Disbursing Agent shall have any obligation to make a distribution that is less than one (1) share of New Common Interests.

6.16.    ***Minimum Cash Distributions***.

A Disbursing Agent shall not be required to make any distribution of Cash less than one hundred dollars ($100) to any holder of an Allowed Claim; *provided*, *however*, that if any distribution is not made pursuant to this Section 6.16, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

6.17.    ***Setoffs***.

The Debtors, the Reorganized Debtors and the Class 6B Trust, as applicable, may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors, the Reorganized Debtors or Class 6B Trust may have against the holder of such Claim pursuant to the Plan, the Bankruptcy Code or applicable nonbankruptcy law; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor, a Reorganized

Debtor, or the Class 6B Trust, or its successor of any claims, rights, or Causes of Action that a Debtor, Reorganized Debtor or Class 6B Trust, or its successor or assign may possess against the holder of such Claim.

> 6.18.    ***Allocation of Distributions between Principal and Interest***.

Except as otherwise required by law (as reasonably determined by the Reorganized Debtors or Class 6B Trust, as applicable), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

> 6.19.    ***No Distribution in Excess of Amount of Allowed Claim***.

Notwithstanding anything in the Plan to the contrary, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

> 6.20.    ***Withholding and Reporting Requirements***.

(a)    *Withholding Rights*.  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan or payment in connection therewith shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  In the case of a non-Cash issuance or distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    *Forms*.  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Disbursing Agent or such other Entity designated by the Reorganized Debtors (which Entity shall subsequently deliver to the applicable Disbursing Agent any applicable Internal Revenue Service ("**IRS**") Form W-8 or Form W-9 received) or the Class 6B Trust, as applicable, an appropriate IRS Form W-9 or (if the payee is a foreign Entity) an appropriate IRS Form W-8 and any other forms or documents reasonably requested by any Reorganized Debtor or the Class 6B Trust, as applicable, to reduce or eliminate any withholding required by any federal, state, or local taxing authority.  If such request is made by the Reorganized Debtors, the Disbursing Agent, the Class 6B Trust or such other Entity designated by the Reorganized Debtors, the Class 6B Trust or a Disbursing Agent and such party fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the applicable Reorganized Debtor or the Class 6B Trust, as applicable, and any Claim in respect of such distribution shall be discharged and forever barred from assertion against such Reorganized Debtor or the Class 6B Trust, as applicable, or their respective property.

**ARTICLE VII.      PROCEDURES FOR DISPUTED CLAIMS**.

> 7.1.      *Disputed Claims Generally*.

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or Final Order, including the Confirmation Order (when it becomes a Final Order) Allowing such Claim. Except insofar as a Claim is Allowed under the Plan or was Allowed prior to the Effective Date, the Debtors, Reorganized Debtors, or Class 6B Trust, as applicable, shall have and retain any and all rights and defenses such Debtor has with respect to any Disputed Claim, including the Causes of Action retained or transferred pursuant to Section 10.8. Any objections to Claims shall be served and filed on or before the later of: (a) the Claim Objection Deadline; and (b) such later date as may be fixed by the Bankruptcy Court. All Disputed Claims not objected to by the end of such period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

> 7.2.      *Objections to Claims*.

Except insofar as a Claim is Allowed under the Plan, the Debtors, Reorganized Debtors, or Class 6B Trust, as applicable, shall be entitled to object to Claims. Except as otherwise expressly provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors or Class 6B Trust, as applicable shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Debtors' claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. In the event any Excluded Class 6B Claims has not been fully reconciled within one-hundred and eighty (180) days of the Effective Date, the Class 6B Trust shall have the right to (i) seek an extension of the Claim Objection Deadline with respect to such Excluded Class 6B Claim; and (ii) either object pursuant to Section 7.2 of the Plan, or seek estimation of pursuant to Section 7.3 of the Plan, such unresolved Excluded Class 6B Claims.

> 7.3.      *Estimation of Claims*.

The Debtors, Reorganized Debtors, or Class 6B Trust, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, Reorganized Debtors, or Class 6B Trust, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated.

7.4.    *Adjustment to Claims Register Without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors, Reorganized Debtors, or Class 6B Trust, as applicable, upon stipulation between the parties in interest without a Claims objection having to be filed and without any further notice or action, order, or approval of the Bankruptcy Court.

7.5.    *Disallowance of Claims.*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors, Reorganized Debtors, or Class 6B Trust, as applicable.

7.6.    *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

7.7.    *Distributions after Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan, including the treatment provisions provided in Article IV of the Plan.

7.8.    *Claim Resolution Procedures Cumulative.*

All of the Claims, objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

**ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

8.1.    *General Treatment.*

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure amount, and subject to Section 8.6 of the Plan, consistent with the Restructuring Support Agreement and subject to the Consenting Creditor Consent Rights and any other applicable consent rights set forth in the Restructuring Support Agreement, all executory contracts and unexpired leases to which any of the Debtors are parties, and which have not expired by their own terms on or prior to the Confirmation Date shall be deemed assumed except for any executory contract or unexpired lease that (a) with the reasonable consent of the Requisite Consenting Creditors, previously has been assumed, assumed or assigned, or rejected pursuant to a Final Order of the Bankruptcy Court, (b) with the reasonable consent of the Requisite Consenting Creditors, is the subject of a separate (i) assumption motion filed by the Debtors, or (ii) rejection

motion filed by the Debtors under section 365 of the Bankruptcy Code before the Confirmation Date, (c) with the reasonable consent of the Requisite Consenting Creditors, is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts, or (d) is the subject of a pending Cure Dispute.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor or assignee in accordance with its terms, except as modified by the provision of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

8.2.    ***Determination of Cure Disputes and Deemed Consent***.

(a)    Subject to the Consenting Creditor Consent Rights, the Debtors shall file, as part of the Plan Supplement, the Schedule of Rejected Contracts and the Schedule of Assumed Contracts.

(b)    The Debtors shall serve an initial Cure Notice on parties to executory contracts and unexpired leases to be assumed or assumed and assigned no later than April 14, 2023.  If a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign is not listed on such a notice, the proposed Cure amount for such executory contract or unexpired lease shall be deemed to be Zero Dollars ($0).

(c)    If there is a Cure Dispute pertaining to assumption or assumption and assignment of an executory contract or unexpired lease, such dispute shall be heard by the Bankruptcy Court prior to such assumption or assumption and assignment, as applicable, being effective, *provided*, *however*, on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as the parties to such executory contract or unexpired lease may otherwise agree, the Debtors or the Reorganized Debtors, as applicable (with the reasonable consent of the Requisite Consenting Creditors), may settle any dispute regarding the Cure amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)    Any counterparty to an executory contract or unexpired lease that fails to object timely to the notice of the proposed assumption or assumption and assignment, as applicable, of such executory contract or unexpired lease or the relevant Cure amount within fifteen (15) days of the service of the applicable Cure Notice, (i) shall be deemed to have assented to (A) such Cure amount and the nature thereof, (B) assumption or assumption and assignment, as applicable, of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease, or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or terminating or modifying such contract or lease on account of transactions contemplated by the Plan, and (ii) shall be forever barred, estopped, and enjoined from

challenging the validity of such assumption or assumption and assignment, as applicable, or the Allowed amount of such Cure amount thereafter.

8.3. ***Payments Related to Assumption or Assignment of Contracts and Leases***.

Subject to resolution of any Cure Dispute, all Cure amounts shall be satisfied promptly, or otherwise as soon as practicable, by the Debtors or Reorganized Debtors, as the case may be, upon assumption or assumption and assignment, as applicable, of the underlying contracts and unexpired leases. Assumption or assumption and assignment, as applicable, of any executory contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption or assumption and assignment, as applicable. Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court or any other Entity, upon the deemed assumption of such contract or unexpired lease.

8.4. ***Rejection Claims***.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Reorganized Debtors no later than thirty (30) days after the later of (i) the Effective Date or (ii) the effective date of rejection of such executory contract or unexpired lease. Any such Claims, to the extent Allowed, shall be classified in Class 6B (Other General Unsecured Claims).

8.5. ***Survival of the Debtors' Indemnification Obligations***.

(a)    Notwithstanding anything in the Plan (including Section 10.3 of the Plan), any Indemnification Obligation to indemnify current officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, members, managers, agents, or employees based upon any act or omission for or on behalf of the Debtors shall (a) remain in full force and effect, (b) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order, (c) not be limited, reduced or terminated after the Effective Date, and (d) survive unimpaired and unaffected irrespective of whether such Indemnification Obligation is owed for an act or event occurring before, on or after the Petition Date, *provided*, that the Reorganized Debtors shall not indemnify officers, directors, members, or managers, as applicable, of the Debtors for any claims or Causes of Action that are not indemnified by such Indemnification Obligation. All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors. Any claim based on the Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code. Any obligation to indemnify former officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, members, managers, agents, or employees based upon any act or omission for or on behalf of the Debtors shall be discharged and all such

obligations shall be deemed and treated as executory contracts to be rejected by the Debtors under the Plan.

(b)    Following the Effective Date, holders of FLFO Claims in Class 3 and holders of FLSO Claims in Class 4 as of the Effective Date shall be indemnified by the Reorganized Debtors with respect to all present and future actions, suits, and proceedings against such holders of FLFO Claims in Class 3 and holders of FLSO Claims in Class 4 or their respective Related Parties in connection with or related to the Adversary Proceeding, the Prepetition Adversary Actions, and/or any other claims, proceedings, actions, or causes of action in connection with or related to the PTL Credit Agreement, the Exchange Agreement, the Intercreditor Agreements, and/or the 2020 Transaction on the same terms and limitations as afforded under the PTL Credit Agreement and New Term Loan Credit Facility.

8.6.    ***Employee Arrangements***.

(a)    Notwithstanding anything to the contrary herein, on the Effective Date, Employee Arrangements in effect as of the Petition Date shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the Plan; *provided* that if an Employee Arrangement (other than key employee retention agreements) provides in part for a payment, premium, or other award upon the occurrence of a change of control, change in control, or other similar event, then such Employee Arrangement shall only be assumed to the extent that the restructuring, including consummation of the Plan, shall not be treated as a change of control, change in control, or other similar event under such Employee Arrangement.

(b)    Any Interest (or right to obtain or receive any Interest) granted to a current or former employee, officer, director or contractor under an Employee Arrangement or otherwise, shall be deemed cancelled on the Effective Date.  For the avoidance of doubt, if an Employee Arrangement provides in part for an award or potential award of Interests or consideration based on the value of Interests that have not vested as of the Petition Date, such Employee Arrangement shall be assumed in all respects other than the provisions of such agreement relating to Interest awards.  For the avoidance of doubt, any provision that guarantees or provides for an employee's right to participate in the Management Incentive Plan of the Reorganized Debtors shall not be cancelled.

(c)    As of the Effective Date, the Debtors and the Reorganized Debtors shall continue to honor their obligations under all applicable Workers' Compensation Programs and in accordance with all applicable workers' compensation Laws in states in which the Reorganized Debtors operate. Any Claims arising under Workers' Compensation Programs shall be deemed withdrawn once satisfied without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that nothing in this Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable Law, including non-bankruptcy Law, with respect to any such Workers' Compensation Programs; *provided, further,* that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state Law.

8.7.    ***Insurance Policies/Claims Payable By Third Parties***.

(a)    All insurance policies to which any Debtor is a party as of the Effective Date, including any D&O Policy, shall be deemed to be and treated as executory contracts and shall be assumed by the applicable Debtors or the Reorganized Debtors and shall continue in full force and effect thereafter in accordance with their respective terms, and all such insurance policies shall vest in

the Reorganized Debtors. Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in any D&O Policy.

(b)     In addition, after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in such policies.

(c)     In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date, and any current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date to the extent set forth in such policies.

(d)     No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court. If an applicable insurance policy has a SIR, the Holder of an Insured Litigation Claim shall have an Allowed Other General Unsecured Claim against the applicable Debtor's Estate solely up to the amount of the SIR that may be established upon the liquidation of the Insured Litigation Claim, and such Holder's recovery from the Class 6B Trust shall be solely in the form of its distribution on account of such Allowed Other General Unsecured Claim in Class 6B under the Plan. Such SIR shall be considered satisfied pursuant to the Plan through allowance of the Other General Unsecured Claim solely in the amount of the applicable SIR, if any; *provided, however* that nothing herein obligates the Debtors, the Reorganized Debtors, or the Class 6B Trust to otherwise satisfy any SIR under any insurance policy. Any recovery on account of the Insured Litigation Claim in excess of the SIR established upon the liquidation of the Claim shall be recovered solely from the Debtors' insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof. Nothing in this Plan shall be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy. Nothing herein relieves any Entity from the requirement to timely file a Proof of Claim by the applicable claims bar date.

8.8.     ***Intellectual Property Licenses and Agreements***.

All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the respective Debtors and Reorganized Debtors and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors (with the reasonable consent of the Requisite Consenting Creditors) in accordance with the Plan. Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

8.9.    *Assignment*.

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including, without limitation, those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

8.10.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*.

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

8.11.    *Reservation of Rights*.

(a)    Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtors or the Reorganized Debtors or their respective Affiliates has any liability thereunder.

(b)    Except as otherwise provided in the Plan, nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, Class 6B Causes of Action, or other rights of the Debtors and the Reorganized Debtors and the Class 6B Trust under any executory or non-executory contract or any unexpired or expired lease.

(c)    Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors under any executory or non-executory contract or any unexpired or expired lease.

(d)    If there is a Cure Dispute or a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtors or Reorganized Debtors, as applicable, shall have sixty (60) days following entry of a Final Order resolving such Cure Dispute to alter their treatment of such contract or lease by filing a notice indicating such altered treatment.

**ARTICLE IX.     CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE**.

9.1.     ***Conditions Precedent to the Effective Date***.

The following are conditions precedent to the Effective Date of the Plan:

(a)     each document or agreement constituting the applicable Definitive Documents shall have been executed and/or effectuated and remain in full force and effect, shall be in form and substance acceptable or reasonably acceptable (as applicable, as set forth in the Restructuring Support Agreement) to the Debtors and the Requisite Consenting Creditors and consistent with the Restructuring Support Agreement, and any conditions precedent related thereto or contained therein shall have been satisfied prior to or contemporaneously with the occurrence of the Effective Date or otherwise waived;

(b)     the Class 6B Trust Agreement shall have been executed in substantially the form submitted as part of the Plan Supplement;

(c)     all conditions precedent to the effectiveness of the Exit ABL Facility Credit Agreement shall have been satisfied or waived in accordance with the terms thereof, and the Exit ABL Facility Credit Agreement shall be in full force and effect and binding on all parties thereto;

(d)     all conditions precedent to the effectiveness of the New Term Loan Credit Facility Agreement shall have been satisfied or waived in accordance with the terms thereof, and the New Term Loan Credit Facility Agreement shall be in full force and effect and binding on all parties thereto;

(e)     the New Common Interests shall have been issued by the Reorganized Parent;

(f)     the Bankruptcy Court shall have entered an order granting the relief sought by the Debtors in the Adversary Proceeding;

(g)     the Professional Fee Escrow shall have been established and funded in Cash;

(h)     the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Requisite Consenting Creditors, and such order shall not have been reversed, stayed, amended, modified, dismissed, vacated or reconsidered;

(i)     no court of competent jurisdiction (including the Bankruptcy Court) or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, limiting, preventing, prohibiting, or materially affecting the consummation of any of the Restructuring Transactions, including, without limitation, any order, judgment, ruling, finding or other determination denying, dismissing, or otherwise adverse to the relief sought in the Adversary Proceeding or adverse to the defendants in the Prepetition Adversary Actions;

(j)     the Restructuring Support Agreement shall be in full force and effect, no termination event or event that would give rise to a termination event under the Restructuring Support Agreement upon the expiration of the applicable grace period shall have occurred, and the Restructuring Support Agreement shall not have been validly terminated prior to the Effective Date;

(k)     the Restructuring Fees and Expenses shall have been paid in full;

(l)      the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all respects with the Plan and the Restructuring Support Agreement;

(m)      all governmental and third-party approvals and consents necessary, if any, in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions; and

(n)      the Bankruptcy Court shall have approved the Creditors' Committee Global Settlement.

### 9.2.      *Timing of Conditions Precedent.*

Notwithstanding when a condition precedent to the Effective Date occurs, unless otherwise specified in the Plan or any Plan Supplement document, for the purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the completion of the applicable conditions precedent to the Effective Date; *provided that* to the extent a condition precedent (the "**Prerequisite Condition**") may be required to occur prior to another condition precedent (a "**Subsequent Condition**") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the applicable Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

### 9.3.      *Waiver of Conditions Precedent.*

(a)      Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Each of the conditions precedent of the Plan may be waived in writing by the Debtors with the prior written consent of (i) the Requisite Consenting Creditors, (ii) solely with respect to the condition set forth in Sections 9.1(b) and 9.1(n), the Creditors' Committee, and (iii) solely with respect to the condition set forth in Section 9.1(c), the DIP Agent.  If the Plan is confirmed for fewer than all of the Debtors as provided for in Section 5.19 of the Plan, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur.

(b)      The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 9.4.      *Effect of Failure of a Condition*.

If the conditions listed in Section 9.1 of the Plan are not satisfied or waived in accordance with Section 9.2 of the Plan on or before the first Business Day that is more than sixty (60) days after the date on which the Confirmation Order is entered or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtors, (b) prejudice in any manner the rights of any Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any of the Consenting Creditors, the PTL Agent, or any other Entity.

**ARTICLE X.       EFFECT OF CONFIRMATION OF PLAN**.

10.1.       *Vesting of Assets in the Reorganized Debtors*.

Except as otherwise provided herein, including, without limitation with regards to the Class 6B Trust Assets, which shall not vest in the Reorganized Debtors, or in any agreement, instrument, or other documents incorporated into the Plan (including with respect to the transactions contemplated by the Restructuring Transactions Exhibit), on the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or Confirmation Order.  In addition, all rights, benefits, and protections provided to any of the Creditors' Committee, Debtors or their Estates pursuant to the Plan, the Plan Supplement, or the Confirmation Order including, but not limited to, the release, exculpation, and injunction provisions provided in Article X of the Plan, shall vest in each respective Reorganized Debtor unless expressly provided otherwise by the Plan or the Confirmation Order.  On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, Causes of Action (except for Class 6B Causes of Action) without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

10.2.       *Binding Effect*.

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders were (a) Impaired or Unimpaired under the Plan, (b) deemed to accept or reject the Plan, (c) failed to vote to accept or reject the Plan, or (d) voted to reject the Plan.

10.3.       *Discharge of Claims and Termination of Interests*.

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Definitive Documents, the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of such a Claim or Interest has voted to accept the Plan.  Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

10.4.    *Term of Injunctions or Stays*.

Unless otherwise provided herein or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.  For the avoidance of doubt, the Trading Order shall remain enforceable beyond the Effective Date. The Trading Order has no applicability or effect with respect to the trading of New Common Interests.

10.5.    *Injunction*.

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 10.6(a) or Section 10.6(b), shall be discharged pursuant to Section 10.3 of the Plan, or are subject to exculpation pursuant to Section 10.7, and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 10.7 with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a filed Proof of Claim, or in another document filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or (i) an executory contract or (ii) an unexpired lease, in the case of (i) and (ii), that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan; provided that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.**

**Subject in all respects to Section 11.1, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Restructuring Support Agreement, the Definitive Documents, the Non-PTL Term Loan Agreement, the PTL Credit Agreement, the Intercreditor Agreements, the Exchange Agreement, the 2020 Transaction, and any and all related agreements, instruments, and/or other documents (including, without limitation, any and all related agreements, instruments, and/or other documents to the 2020 Transaction), the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, the Adversary**

Proceeding, the Prepetition Adversary Actions, or any Restructuring Transaction, Credtiors' Committee Global Settlement, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Exit ABL Facility, the New Term Loan, Creditors' Committee Global Settlement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a claim of willful misconduct, fraud or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.1, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

10.6.     *Releases*.

(a)     **Releases by the Debtors**.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Restructuring Support Agreement, the Definitive Documents, the Non-PTL Term Loan Agreement, the PTL Credit Agreement, the Intercreditor Agreements, the Exchange Agreement, the 2020 Transaction, and any and all related agreements, instruments, and/or other documents (including, without limitation, any and all related agreements, instruments, and/or other documents to the 2020 Transaction), the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, the Adversary Proceeding, the Prepetition Adversary Actions, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on

the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Exit ABL Facility, the New Term Loan, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 10.6(a) (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

(b)     **Releases by Holders of Claims and Interests**.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date or (ii) as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Restructuring Support Agreement, the Definitive Documents, the Non-PTL Term Loan Agreement, the PTL Credit Agreement, the Intercreditor Agreements, the Exchange Agreement, the 2020 Transaction, and any and all related agreements, instruments, and/or other documents (including, without limitation, any and all related agreements, instruments, and/or other documents to the 2020 Transaction), the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, the Adversary Proceeding, the Prepetition Adversary Actions, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Exit ABL Facility, the New Term Loan, the

Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 10.6(b) (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

10.7.    *Exculpation*.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Restructuring Support Agreement, the Definitive Documents, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, the Adversary Proceeding, the Prepetition Adversary Actions, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement, the Exit ABL Facility, the New Term Loan, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this Section 10.7 (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable

transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

10.8.　　*Retention of Causes of Action/Transfer of Causes of Action and Reservation of Rights*.

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to this Article X, the Reorganized Debtors or the Class 6B Trust (in connection with the pursuit of Class 6B Causes of Action transferred to the Class 6B Trust pursuant to this Plan or objections to Other General Unsecured Claims), as applicable, shall have, retain, reserve and be entitled to assert, and may enforce all rights to commence and pursue, as appropriate, any and all claims or Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  **The Debtors, the Reorganized Debtors or the Class 6B Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity not released pursuant to the Plan.**

10.9.　　*Ipso Facto and Similar Provisions Ineffective.*

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any entity based on any of the following: (a) the insolvency or financial condition of a Debtor; (b) the commencement of the Chapter 11 Cases; (c) the confirmation or consummation of the Plan, including any change of control that shall occur as a result of such consummation; or (d) the restructuring.

10.10.　　*Solicitation of Plan*.

As of and subject to the occurrence of the Confirmation Date:  (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors and each of their respective directors, officers, employees, Affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

10.11.　　*Corporate and Limited Liability Company Action*.

Upon the Effective Date, all actions contemplated by the Plan, subject to the applicable Consenting Creditor Consent Rights, shall be deemed authorized and approved in all respects, including (a) the assumption of all employee compensation and Employee Arrangements of the Debtors as provided herein, (b) the selection of the managers, directors, and officers for the Reorganized Debtors, (c) the distribution of the New Common Interests, (d) the entry into the Exit ABL Facility Credit Agreement, Class 6B Trust Agreement, and the New Term Loan Credit Facility Agreement, (e) the approval of the

Restructuring Support Agreement, and (f) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof and the Restructuring Support Agreement.  All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including, but not limited to, (w) the New Corporate Governance Documents, (x) the Exit ABL Facility Credit Agreement, (y) the New Term Loan Credit Facility Agreement, and (z) any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Section 10.11 shall be effective notwithstanding any requirements under non-bankruptcy law.

**ARTICLE XI.     RETENTION OF JURISDICTION**.

11.1.     *Retention of Jurisdiction*.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     to hear and determine motions and/or applications for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, including Cure Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)     to determine any motion, adversary proceeding (including, without limitation, in connection with or related to the Adversary Proceeding and/or the Prepetition Adversary Actions), proceeding, application, contested matter, and/or other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding, application, contested matter, and/or other litigated matter related to or in connection with the Adversary Proceeding, the Prepetition Adversary Actions, the PTL Credit Agreement, the Exchange Agreement, the Intercreditor Agreements, and/or the 2020 Transaction or the res judicata, estoppel, preclusive, or other similar effect on any claims of any nature in connection with or related to the Adversary Proceeding, the Prepetition Adversary Actions, the PTL Credit Agreement, the Exchange Agreement, the Intercreditor Agreements, and/or the 2020 Transaction, including, without limitation, any action intended to provide declaratory or other relief as to the application (including as an affirmative defense) of res judicata, estoppel, any preclusion doctrine, or any other similar doctrine as to any matters in connection with or related to the Adversary Proceeding, the Prepetition Adversary Actions, the PTL Credit Agreement, the Exchange Agreement, the Intercreditor Agreements, and/or the 2020 Transaction;

(c)     to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(d)     to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)      to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)      to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)      to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)      to hear and determine all Professional Fee Claims;

(i)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)      to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(k)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(m)      to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(n)      to resolve disputes concerning Disputed Claims or the administration thereof;

(o)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)      to enter a final decree closing the Chapter 11 Cases;

(q)      to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

(r)      to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors or Class 6B Trust pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

### 11.2.    *Courts of Competent Jurisdiction*.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of

jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII.      MISCELLANEOUS PROVISIONS.

### 12.1.      *Payment of Statutory Fees*.

All fees due and payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date, which shall include any fees payable on account of the transfer of the Class 6B Trust Assets to the Class 6B Trust.  The Debtors shall file all monthly operating reports through the Effective Date.  On and after the Effective Date, the Reorganized Debtors or any Disbursing Agent shall pay any and all such fees in full in Cash when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to file a Proof of Claim or any other request for payment of quarterly fees.

### 12.2.      *Substantial Consummation of the Plan*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3.      *Request for Expedited Determination of Taxes*.

The Debtors and the Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

### 12.4.      *Exemption from Certain Transfer Taxes*.

Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation, filing or recording of any Lien, mortgage, deed of trust, or other security interest, (c) the making, assignment, filing or recording of any lease or sublease or the making or delivery of any deed, bill of sale, assignment or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan and Restructuring Transactions Exhibit (whether to one or more of the Reorganized Debtors or otherwise), (d) the grant of collateral under the New Term Loan Credit Facility Agreement, and (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code and shall not be subject to or taxed under any law imposing any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

12.5.    *Amendments*.

(a)    *Plan Modifications*.  Subject to the applicable consent rights of the Requisite Consenting Creditors and the Consenting Equity Holders as set forth in the Restructuring Support Agreement, and in consultation with the Creditors' Committee, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code; provided, that any modifications or amendments to this Plan that materially adversely affect the treatment of the DIP Agent, DIP Lenders, Exit ABL Facility Agent, and/or Exit ABL Facility Lenders shall require the consent of the DIP Agent, DIP Lenders, Exit ABL Facility Agent, and/or Exit ABL Facility Lenders, as applicable.

(b)    *Other Amendments*.  Subject to the consent rights of the Requisite Consenting Creditors and the Consenting Equity Holders as set forth in the Restructuring Support Agreement, and in consultation with the Creditors' Committee, before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

12.6.    ***Effectuating Documents and Further Transactions***.

Each of the officers of the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors or managers, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.7.    ***Revocation or Withdrawal of the Plan***.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors with the consent of the Requisite Consenting Creditors; *provided, however*, that the Debtors may revoke or withdraw the Plan without such consent in the exercise of the Debtors' fiduciary duty or as otherwise permitted under the Restructuring Support Agreement.  If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of such Debtor or any other Entity; or (iii) constitute an admission of any sort by any Debtor, any of the Consenting Creditors, the PTL Agent, or any other Entity.

12.8.    ***Severability of Plan Provisions***.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by

such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Reorganized Debtors (as the case may be), and (c) nonseverable and mutually dependent.

12.9.      ***Governing Law***.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

12.10.      ***Time***.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.11.      ***Dates of Actions to Implement the Plan***.

In the event that any payment or act under the Plan is required to be made or performed on a date that is on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.12.      ***Immediate Binding Effect***.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns, including, without limitation, the Reorganized Debtors.

12.13.      ***Deemed Acts***.

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

12.14.      ***Successor and Assigns***.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.15.      ***Entire Agreement***.

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements,

understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 12.16.    *Exhibits to Plan.*

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

### 12.17.    *Dissolution of Creditors' Committee*.

On the Effective Date, any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, shall dissolve; underlined provided that following the Effective Date, any such committees, including the Creditors' Committee, shall continue in existence solely for the purposes of (i) filing and prosecuting applications for allowance of Professional Fee Claims and (ii) seeking removal of the committee as a party in interest in any proceeding on appeal.  Upon the dissolution of any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, such committee members and their respective Professionals shall cease to have any duty, obligation, or role arising from or related to the Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; provided, that for the avoidance of doubt, any Claims or Causes of Action asserted by the Creditors' Committee, whether direct or derivative (including any Claims seeking declaratory judgments) shall be withdrawn with prejudice and/or vest in the Debtors' Estates, to be immediately fully and indefensibly released in accordance with Section 10.6 of the Plan.

### 12.18.    *Notices*.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or addressed as follows:

(a)      if to the Debtors or the Reorganized Debtors:

Dawn Intermediate, LLC
2451 Industry Avenue
Doraville, GA 30360
Attn:   Kristen McGuffey
Email: SSBLegalDept@sertasimmons.com

- and -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:   Ray C. Schrock
        Alexander W. Welch
Telephone:  (212) 310-8000
Email:  ray.schrock@weil.com
        alexander.welch@weil.com

- and -

700 Louisiana Street, Suite 1700
Houston, Texas 77002
Attn:    Gabriel A. Morgan
         Stephanie N. Morrison
Telephone: (713) 546-5000
Email:  gabriel.morgan@weil.com
         stephanie.morrison@weil.com

(b)    if to the Consenting Creditors:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Attn:    Scott J. Greenberg, Esq.
         Michael Cohen, Esq.
         Jason Zachary Goldstein, Esq.
Telephone:  (212) 403-1000
Email:  SGreenberg@gibsondunn.com
         MCohen@gibsondunn.com
         JGoldstein@gibsondunn.com

(c)    if to the Consenting Equity Holders:

Advent International Corporation
Prudential Tower
800 Boylston Street, Suite 3300
Boston, MA 02199
Attn:   Jefferson Case
        Amanda McGrady Morrison

        - and -

Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
Attn:    Gregg M. Galardi
         Jeramy D. Webb
         Amanda C. Glaubach
Email:  Gregg.Galardi@ropesgray.com
         Jeramy.Webb@ropesgray.com
         Amanda.Glaubach@ropesgray.com

(d)    if to the Creditors' Committee

Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Attn:    Eric R. Wilson
         Jason R. Adams
         Connie Choe

64

Email:  ewilson@kelleydrye.com
        jadams@kelleydrye.com
        cchoe@kelleydrye.com

(e)    if to the Class 6B Trust

       Kelley Drye & Warren LLP
       3 World Trade Center
       175 Greenwich Street
       New York, New York 10007
       Attn:   Eric R. Wilson
               Jason R. Adams
               Philip A. Weintraub
       Email:  ewilson@kelleydrye.com
               jadams@kelleydrye.com
               pweintraub@kelleydrye.com

(f)    if to the DIP Agent:

       Eclipse Business Capital LLC
       333 W. Wacker Drive, Suite 950
       Chicago, Illinois 60606
       Attn:   Jim Gurgone
       Email:  jgurgone@eclipsebuscap.com

               - and -

       Choate, Hall & Stewart LLP
       Two International Place, 34th Floor
       Boston, Massachusetts 02110
       Attn:   Kevin Simard
               Seth Mennillo
       Email:  ksimard@choate.com
               smennillo@choate.com

    After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

*[Remainder of page intentionally left blank]*

Dated:  May 23, 2023
        Houston, Texas

                        Respectfully submitted,


                        By:    /s/    *John Linker*
                               Name: John Linker
                               Title:  Chief Financial Officer, Treasurer and
                                       Assistant Secretary


                        On behalf of Serta Simmons Bedding, LLC
                        and each of its Debtor affiliates

**EXHIBIT A**

**GUC Recovery Allocation Table**

The following is a preliminary allocation of value amongst Debtor entities, as determined by the Debtors in consultation with the Requisite Consenting Creditors and the Creditors' Committee, with respect to the Class 6B Cash Contribution and is set forth for purposes of disbursements to holders of Allowed Other General Unsecured Claims against the Debtors in accordance with Section 4.7(b) of the Plan and the terms of the Creditors' Committee Global Settlement; *provided that*, such recoveries may be reallocated by the Debtors, in their reasonable business judgement, in consultation with the Requisite Consenting Creditors and the Creditors' Committee, to recalibrate for, among other things, the Claims asserted against the Debtors' Estates after the occurrence of the General Bar Date (as defined in Docket No. 104) and changes to Claim amounts through the Claims reconciliation process pursuant to Section 8.2 of the Plan. This allocation may be reallocated by the Class 6B Trust, acting by and through the Class 6B Trustee, with the consent of the Reorganized Debtors, in their reasonable business judgment, and the reasonable consent of the Requisite Consenting Creditors (if such reallocation occurs prior to the Effective Date), or upon further order of the Bankruptcy Court, to recalibrate for, among other things, (i) the amount of Allowed Other General Unsecured Claims against each Debtor as determined in accordance with the reconciliation and objection process provided for in the Plan, (ii) the amount and purpose of Class 6B Trust Expenses, and (iii) any recoveries by the Class 6B Trust on account of Class 6B Causes of Action.

| Debtor | Class 6B Cash Contribution Allocation |
|---|---|
| Dawn Intermediate, LLC (6123) | $0 |
| Serta Simmons Bedding, LLC (1874) | $3,104,959 |
| Serta International Holdco, LLC (6101) | $0 |
| National Bedding Company L.L.C. (0695) | $1,978,080 |
| SSB Manufacturing Company (5743) | $492,157 |
| The Simmons Manufacturing Co., LLC (0960) | $8,309 |
| Dreamwell, Ltd. (2419) | $0 |
| SSB Hospitality, LLC (2016) | $0 |
| SSB Logistics, LLC (6691) | $1,017 |
| Simmons Bedding Company, LLC (2552) | $20,306 |
| Tuft & Needle, LLC (6215) | $145,172 |
| Tomorrow Sleep LLC (0678) | $0 |
| SSB Retail, LLC (9245) | $0 |
| World of Sleep Outlets, LLC (0957) | $0 |
| **Total** | **$5,750,000** |