## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| SERTA SIMMONS BEDDING, LLC, *et al.*, | § § § | Case No. 23-90020 (DRJ) |
| Debtors.[1] | § § § | Jointly Administered |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND AMENDED JOINT CHAPTER 11 PLAN OF SERTA SIMMONS BEDDING, LLC AND ITS AFFILIATED DEBTORS[2]

Serta Simmons Bedding, LLC ("**Serta Simmons Bedding**"), and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**") having:

a. commenced, on January 23, 2023 (the "**Petition Date**"), these chapter 11 cases by filing voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**");

b. obtained, on January 24, 2023, entry of the *Order Directing Joint Administration of Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1* (Docket No. 46);

c. proposed and filed the *Second Amended Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors*, dated May 23, 2023 (Docket No. 977) (including any exhibits and schedules thereto and as may be modified, amended, or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

[2] The proposed findings of fact and conclusions of law set forth herein are intended to be in addition to, and not in lieu of, proposed findings of fact and conclusions of law to be submitted by the Debtors at the conclusion of any final proceedings related to the Plan.

supplemented from time to time, the "**Plan**")[3] and filed the *Disclosure Statement for Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors*, dated March 23, 2023 (Docket No. 545) (including any exhibits and schedules thereto and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**");

d.  obtained, on February 8, 2023, after notice and hearing, entry of the *Order (I) Scheduling Certain Hearing Dates and Deadlines, (II) Establishing Certain Protocols in Connection with Such Hearings, and (III) Granting Related Relief* (Docket No. 267), which, among other things, set the deadline for filing objections to confirmation of the Plan and scheduled a hearing to consider confirmation of the Plan (the "**Confirmation Hearing**");

e.  obtained, on March 23, 2023, after notice and hearing, entry of the *Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (IV) Approving Notice Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* (Docket No. 540) (the "**Disclosure Statement Order**"), which, among other things, (i) approved the Disclosure Statement and (ii) approved solicitation procedures related to the Disclosure Statement;

f.  served, through their claims, noticing, and solicitation agent, Epiq Corporate Restructuring, LLC ("**Epiq**"), the Disclosure Statement, the Plan, and related solicitation materials, including the ballots (the "**Ballots**"), notice of non-voting status, and notice of the Confirmation Hearing (collectively, the "**Solicitation Materials**") to holders of Claims and Interests in accordance with the Disclosure Statement Order, as described in the *Certificate of Service of Solicitation Materials* (Docket No. 758) filed on May 2, 2023 (the "**Solicitation Affidavit**") and the *Declaration of Emily Young of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and its Affiliated Debtors* (Docket No. 779), filed on May 4, 2023 (the "**Solicitation Declaration**");

g.  caused to be published in USA Today, on April 3, 2023, notice of the Confirmation Hearing as set forth in the *Verification of Publication*, filed by Epiq on April 3, 2023 (Docket No. 603) (the "**Certificate of Publication**");

h.  served, through Epiq, the *Notice of Adjournment of Hearing on Debtors' Request for Confirmation of Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. 703), that provides notice of (i) the reset of the deadline for filing objections to confirmation of the Plan to May 11, 2023 at 12:00 p.m. (Central Time) and (ii) the adjournment of the commencement of the Confirmation Hearing to

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.  The rules of interpretation set forth in <u>Article I</u> of the Plan and the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Confirmation Order.

May 15, 2023 at 9:30 a.m. (Central Time), as set forth in the *Certificate of Service*, filed on May 1, 2023 (Docket No. 738);

i.  caused, through Epiq, (i) the *Notice of (I) Assumption of Executory Contracts and Unexpired Leases, and (II) Cure Claims Related Thereto In Connection with Confirmation of Plan* (Docket No. 668) on April 14, 2023, (ii) the *Amended Notice of (I) Assumption of Executory Contracts and Unexpired Leases, and (II) Cure Claims Related Thereto In Connection with Confirmation of Plan* (Docket No. 720) on April 27, 2023, (iii) the *Second Amended Notice of (I) Assumption of Executory Contracts and Unexpired Leases, and (II) Cure Claims Related Thereto In Connection with Confirmation of Plan* (Docket No. 788) on May 5, 2023, (iv) the *Third Amended Notice of (I) Assumption of Executory Contracts and Unexpired Leases, and (II) Cure Claims Related Thereto In Connection with Confirmation of Plan* (Docket No. 871) on May 13, 2023, and (v) the *Fourth Amended Notice of (I) Assumption of Executory Contracts and Unexpired Leases, and (II) Cure Claims Related Thereto In Connection with Confirmation of Plan* (Docket No. [●]) on May [24], 2023 (collectively, and as may be further amended or supplemented from time to time, the "**Cure Notice**") to be served on the counterparties to such executory contracts and unexpired leases as set forth in (i) the *Certificate of Service*, filed April 26, 2023 (Docket No. 707), (ii) the *Certificate of Service*, filed April 26, 2023 (Docket No. 714), (iii) the *Certificate of Service*, filed May 1, 2023 (Docket No. 731), (iv) the *Certificate of Service*, filed May 2, 2023 (Docket No. 762), (v) the *Certificate of Service*, filed May 8, 2023 (Docket No. 793), and (vi) the *Certificate of Service*, filed May 18, 2023 (Docket No. 942);

j.  filed, (i) on March 29, 2023, the *Notice of Filing of Plan Supplement in Connection with Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. 588), (ii) on April 21, 2023, the *Notice of Filing of Second Amended Plan Supplement in Connection with Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. 692), (iii) on May 13, 2023, the *Notice of Filing of Third Amended Plan Supplement in Connection with Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. 869), (iv) on May 14, 2023, the *Notice of Filing of Fourth Amended Plan Supplement in Connection with Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. 873), and (v) on May [24], 2023, the *Notice of Filing of Fifth Amended Plan Supplement in Connection with Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. [●]) (collectively, and as may be further amended or supplemented from time to time, the "**Plan Supplement**");

k.  filed, on May 14, 2023, the (i) *Debtors' Memorandum of Law in Support of Confirmation of Modified First Amended Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. 879), (ii) *Declaration of Michael J. Talarico in Support of Confirmation of Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. 881) (the "**Talarico Declaration**"), (iii) *Declaration of Roopesh Shah in Support of Confirmation of Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. 882) (the "**Shah Declaration**"), and (iv) *Declaration of John Linker in Support of Confirmation of Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its*

*Affiliated Debtors* (Docket No. 884) (the "**Linker Declaration**" and, together with the Solicitation Declaration, the Talarico Declaration, and the Shah Declaration, the "**Supporting Declarations**");

l.  filed, on May 23, 2023, the *Debtors' Supplemental Memorandum of Law in Support of Confirmation of Second Amended Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. 979); and

m.  filed, in the Adversary Proceeding, (i) on May 14, 2023, the *Serta Simmons Bedding, LLC's Pre-Trial Memorandum of Law* (Adv. Proc. No. 23-09001, Docket No. 242) and (ii) on May [23], 2023, the *Plaintiffs' Findings of Fact and Conclusions of Law* (Adv. Proc. No. 23-09001, Docket No. [●]) (as amended, modified, and entered, the "**Adversary Findings of Fact and Conclusions of Law**").

This Court having:

a.  held the Confirmation Hearing on May 15, 2023 through May 18, 2023 and on May 25, 2023;

b.  heard the arguments and considered the evidence presented, proffered, and adduced at the Confirmation Hearing;

c.  considered the entire record of the Confirmation Hearing and the Adversary Proceeding;

d.  taken judicial notice of the entire record of these chapter 11 cases;

e.  entered, in the Adversary Proceeding, (i) the *Order on Summary Judgment* on April 6, 2023 (Adv. Proc. No. 23-09001, Docket No. 142) and (ii) the [●] on May [●], 2023 (Adv. Proc. No. 23-09001, Docket No. [●]), including incorporating the Adversary Findings of Fact and Conclusions of Law; and

f.  overruled all objections to the Plan and Confirmation and all statements and reservations of rights not consensually resolved or withdrawn, except as expressly provided herein.

NOW, THEREFORE, after due deliberation and sufficient cause appearing therefor, this

Court hereby FINDS, DETERMINES, and CONCLUDES as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

a.  <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth

(i) herein, (ii) in the Adversary Findings of Fact and Conclusions of Law, and (iii) in the record of

the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant

to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  All findings of fact and conclusions of law announced by this Court at the Confirmation Hearing in relation to confirmation of the Plan and the Adversary Proceeding are hereby incorporated into this Confirmation Order and are essential, inextricable, and nonseverable components and terms of this Confirmation Order and the treatment and distributions provided under the Plan.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

b.      <u>Jurisdiction, Venue, Core Proceeding</u>.  This Court has jurisdiction over these chapter 11 cases pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code and are proper plan proponents under section 1121(a) of the Bankruptcy Code.

c.      <u>Chapter 11 Petitions</u>.  On the Petition Date, the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  On January 24, 2023, this Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases in accordance with Bankruptcy Rule 1015(b).  *See* Docket No. 46.

d.      Since the Petition Date, the Debtors have operated their business and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 9, 2023, the U.S. Trustee appointed an official committee of unsecured creditors (the "**Creditors' Committee**") in these chapter 11 cases pursuant to section 1102 of the

Bankruptcy Code (Docket No. 274).  No trustee or examiner has been appointed in these chapter 11 cases.

e.      <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of these chapter 11 cases maintained by the Clerk of this Court, including all pleadings and other documents filed and all orders entered in the main case and any related adversary proceeding, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of these chapter 11 cases.  Any resolution of objections to confirmation of the Plan explained on the record at the Confirmation Hearing is hereby incorporated by reference. Except to the extent set forth herein, all unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan or confirmation of the Plan are overruled on the merits and denied in their entirety.

f.      <u>Burden of Proof</u>.  Based on the record of these chapter 11 cases, each of the Debtors has met the burden of proving by a preponderance of the evidence each applicable element of sections 1129(a) and (b) of the Bankruptcy Code, including all other sections of the Bankruptcy Code referenced therein or implicated thereby.

g.      <u>Principal Purpose</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

h.      <u>Solicitation</u>.  As described in and evidenced by the Solicitation Affidavit and the Solicitation Declaration, transmittal and service of the Solicitation Materials (collectively, the "**Solicitation**") were timely, adequate, appropriate, and sufficient under the circumstances. The Solicitation (i) was conducted in good faith, (ii) complied with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the Disclosure Statement Order, and

all other applicable non-bankruptcy rules, laws, and regulations applicable to the Solicitation, and (iii) was appropriate and satisfactory based upon the circumstances of these chapter 11 cases. The Released Parties, the Exculpated Parties, and the Global Settlement Parties (as defined below) acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including with respect to (1) the solicitation of acceptance or rejection of the Plan and (2) the participation in the offer, issuance, sale, or purchase of a security offered or sold under the Plan, and are entitled to the protections of section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided in the Plan and this Confirmation Order.

i.    Notice. As evidenced by the Solicitation Affidavit, the Certificate of Publication, and the Solicitation Declaration, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, adequate, timely, and sufficient notice of the Confirmation Hearing in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable non-bankruptcy rules, laws, and regulations and such parties had an opportunity to appear and be heard with respect thereto. No other or further notice is required with respect thereto.

j.    Voting Record Date. The Solicitation Materials and the Plan were distributed to holders in the Voting Classes that held a Claim or Interest as of March 20, 2023 (the "**Voting Record Date**"). The establishment and notice of the Voting Record Date were reasonable and sufficient.

k.    Tabulation. As described in the Solicitation Declaration, the holders of Claims in Class 3 (FLFO Claims), Class 4 (FLSO Claims), and Class 6A (Ongoing General Unsecured Claims) are Impaired under the Plan and have voted to accept the Plan in the numbers and amounts

7

required by section 1126 of the Bankruptcy Code.  All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (effective as of January 1, 2023), the Disclosure Statement Order, and all other applicable non-bankruptcy rules, laws, and regulations.  Pursuant to the Disclosure Statement Order, the other Classes of Claims against and Interests in the Debtors are either deemed to reject or presumed to accept the Plan.

l.      <u>Bankruptcy Rule 3016</u>.  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as proponents of the Plan.  The Debtors appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b). The discharge, release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

m.      <u>Cram Down Requirements</u>.  With respect to those classes that rejected or are deemed to reject the Plan, the requirements of section 1129(b) of the Bankruptcy Code have been satisfied and the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. The Plan does not unfairly discriminate between similarly situated Classes of Claims or Interests that rejected or are deemed to reject the Plan.  Furthermore, the Plan is fair and equitable with respect to the Classes of Claims or Interests that rejected or are deemed to reject the Plan, as the Plan provides that no holder of any Claim or Interest that is junior to the Claims or Interests of such Classes will receive or retain any property under the Plan on account of such junior Claim or Interests.

n.      <u>Prepetition ABL Obligations</u>.  Dawn Intermediate, Serta Simmons Bedding, certain of the other Debtors (collectively, with the guarantors of the Prepetition ABL Facility,

the "**Prepetition ABL Obligors**"), and the Prepetition ABL Agent, and the Prepetition ABL Lenders are party to the Prepetition ABL Agreement (collectively, with the Loan Documents (as defined in therein) and the Prepetition ABL Payoff Letter (as defined in the DIP Order), the "**Prepetition ABL Documents**" and the revolving facility thereunder, the "**Prepetition ABL Facility**"). Pursuant to the Prepetition ABL Documents, the Prepetition ABL Lenders provided revolving credit, certain banking products and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Obligors. Under the Prepetition ABL Agreement, the Prepetition ABL Lenders provided the Prepetition ABL Obligors with, among other things, up to $200,000,000 in Revolving Commitments (as defined in the Prepetition ABL Agreement), including a $40,000,000 Letter of Credit Sublimit (as defined in the Prepetition ABL Agreement). As of the Petition Date, there were (i) no outstanding revolving loans, (ii) $28 million in existing letters of credit, and (iii) other outstanding obligations under the Prepetition ABL Documents, including, without limitation, reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, due, owing or chargeable in respect of any of the Prepetition ABL Obligors' obligations pursuant to, or secured by, the Prepetition ABL Documents, in each case payable pursuant to the terms and conditions of the Prepetition ABL Agreement (collectively, the "**Prepetition ABL Obligations**"). The Prepetition ABL Obligations are secured by (a) first priority security interests in and liens on the ABL Priority Collateral (as defined in the ABL Intercreditor Agreement) and (b) second priority

security interests in and liens on the Term Loan Priority Collateral (as defined in the ABL Intercreditor Agreement) (the ABL Priority Collateral and the Term Loan Priority Collateral together, the "**Prepetition Collateral**" and the liens and security interests in clauses (a) and (b), the "**Prepetition ABL Liens**").

        o.    <u>PTL Obligations</u>.  Dawn Intermediate, Serta Simmons Bedding, and certain of the other Debtors as borrowers (together with the guarantors of the PTL Facility, collectively, the "**PTL Obligors**"), the PTL Agent, and the PTL Lenders are party to the PTL Credit Agreement (collectively, with the Loan Documents (as defined therein) the "**PTL Documents**" and the term loan facility thereunder, the "**PTL Facility**").  As of the Petition Date, the PTL Obligors were obligated under the PTL Documents to the PTL Lenders in the aggregate outstanding principal amount of not less than $1.027 billion, on account of Term Loans (as defined in the PTL Credit Agreement) plus all accrued, accruing, and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, due, owing or chargeable in respect of any of the PTL Obligors' obligations pursuant to, or secured by, the PTL Documents, in each case constituting "Obligations" (as defined in the PTL Credit Agreement) and due and payable pursuant to the terms and conditions of the PTL Credit Agreement (the "**PTL Obligations**").  The PTL Obligations are secured by (a) first priority security interests in and liens on the Term Loan Priority Collateral, and (b) second priority security interests in and liens on the ABL Priority Collateral (the liens and security interest in clauses (a) and (b), the "**PTL Liens**").

p.    <u>Non-PTL Obligations</u>.  Dawn Intermediate, Serta Simmons Bedding, and certain of the other Debtors as borrowers (together with the guarantors, collectively, the "**Non-PTL Obligors**"), the Non-PTL Agent (together with the PTL Agent, the "**Prepetition Term Loan Agents**" and, together with the Prepetition ABL Agent, collectively, the "**Prepetition Agents**"), and the Non-PTL Lenders (together with the PTL Lenders, the "**Prepetition Term Loan Lenders**" and, together with the Prepetition ABL Lenders, collectively, the "**Prepetition Secured Creditors**") are party to the Non-PTL Term Loan Agreement (collectively with the Loan Documents (as defined therein), the "**Non-PTL Documents**" and the term loan facility thereunder, the "**Non-PTL Facility**" and together with the Prepetition ABL Facility and the PTL Facility, the "**Prepetition Loan Facilities**" and, the obligations under the Non-PTL Documents, the "**Non-PTL Obligations**" and, together with the PTL Obligations, collectively, the "**Prepetition Term Loan Obligations**" and, together with the Prepetition ABL Obligations, collectively, the "**Prepetition Secured Obligations**").  The Non-PTL Obligations are secured by (a) first priority security interests in and liens on the Term Loan Priority Collateral, and (b) second priority security interests in and liens on the ABL Priority Collateral (the liens and security interest in clauses (a) and (b), the "**Non-PTL Liens**" and, together with the PTL Liens, the "**Prepetition Term Loan Liens**" and, together with the Prepetition ABL Liens, collectively, the "**Prepetition Liens**"), subject in all respects to the Intercreditor Agreements.

q.    <u>Intercreditor Agreements</u>.  Pursuant to the ABL Intercreditor Agreement, the Prepetition Agents have agreed, among other things and as more specifically set forth therein, on the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Creditors with respect to the Prepetition Collateral.

r.        Pursuant to the First Lien Intercreditor Agreement, the Prepetition Term Loan Agents have agreed, among other things and as more specifically set forth therein, on the respective rights, interests, obligations, priority and positions of the Prepetition Term Loan Creditors with respect to the Prepetition Collateral.    The Intercreditor Agreements are "subordination agreements" within the meaning of section 510(a) of the Bankruptcy Code.   The DIP Credit Agreement constitutes a "Refinancing" (as such term is defined in the applicable Intercreditor Agreement).   As a result thereof, the DIP Lenders' interests in the Prepetition Collateral and DIP Collateral (as defined in the DIP Order) shall be the same as the Prepetition ABL Agent's prior to such Refinancing and shall be governed by the Intercreditor Agreements unless otherwise expressly provided by the DIP Order.   The Intercreditor Agreements are, in each case, binding and enforceable against the Prepetition Secured Creditors in accordance with their terms.

s.        <u>Prepetition Secured Obligations</u>.   The Prepetition ABL Obligations and the PTL Obligations owing to the Prepetition ABL Lenders and the PTL Lenders, respectively, constitute legal, valid, and binding obligations of the Debtors and their applicable affiliates, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition ABL Obligations and the PTL Obligations owing to the Prepetition ABL Lenders and the PTL Lenders, respectively, is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

t.        <u>Prepetition Liens</u>.   The Prepetition Liens granted to the Prepetition Secured Creditors constitute legal, valid, binding, enforceable (other than in respect of the stay of

enforcement arising from section 362 of the Bankruptcy Code), and perfected security interests in and liens on the Prepetition Collateral, were granted to, or for the benefit of, the applicable Prepetition Secured Creditors for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

u.      <u>2020 Transaction</u>.  The 2020 Transaction was negotiated in good faith and at arm's length by and among the Debtors and the PTL Lenders and was fair, equitable, and reasonable. The obligations arising pursuant to the 2020 Transaction, including obligations under the PTL Credit Agreement, each of the Loan Documents (as defined in the PTL Credit Agreement), and First Lien Intercreditor Agreement, constitute legal, valid, and binding obligations of the Debtors and their applicable affiliates, enforceable against them in accordance with their respective terms.

v.      <u>Challenge Deadline</u>.  The Challenge Deadline (as defined in the DIP Order) has expired and all findings of fact and stipulations under the DIP Order are binding and effective on all third parties.

w.      <u>Executory Contracts and Unexpired Leases</u>.  The Debtors have exercised reasonable business judgment in determining whether to assume or reject executory contracts and unexpired leases pursuant to <u>Article VIII</u> of the Plan.  Each assumption of an executory contract or unexpired lease pursuant to <u>Article VIII</u> of the Plan shall be legal, valid, and binding upon the Debtors or Reorganized Debtors and their successors and assigns and all non-Debtor parties and their successors and assigns to such executory contract or unexpired lease.  Moreover, the Debtors have cured, or provided adequate assurance that the Debtors or Reorganized Debtors or their successors and assigns, as applicable, will cure, defaults (if any) under or relating to each of the

executory contracts and unexpired leases that are being assumed by the Debtors pursuant to the Plan.

x.      <u>Plan Supplement</u>.  The documents contained in the Plan Supplement comply and are consistent with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement Order, and the facts and circumstances of these chapter 11 cases.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan and the Restructuring Support Agreement, the Debtors, with the consent of the Requisite Consenting Creditors, reserve the right to alter, amend, update, or modify the Plan Supplement at any time before the Effective Date.

y.      <u>Best Interest of Creditors</u>.  The liquidation analysis provided in the Disclosure Statement as <u>Exhibit E</u>, and the other evidence presented, proffered, or adduced at the Confirmation Hearing, including the Talarico Declaration, (i) are persuasive and credible, (ii) have not been controverted by any evidence, and (iii) establish that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

z.      <u>Value</u>.  Based on valuation analysis set forth in <u>Exhibit F</u> to the Disclosure Statement, and the testimony presented, proffered, or adduced at the Confirmation Hearing, including the Shah Declaration, which this Court has determined to be credible, persuasive, and based on appropriate assumptions and valid analysis and methodology, this Court finds that the

valuation implied by the Restructuring, a range for which is set forth in the Disclosure Statement, is a reasonable and appropriate measure of the Reorganized Debtors' enterprise value given the facts and circumstances of these chapter 11 cases.

aa.    <u>Feasibility</u>.    The financial projections provided in the Disclosure Statement as <u>Exhibit H,</u> and the other evidence presented, proffered, or adduced at the Confirmation Hearing, including the Linker Declaration, (i) are persuasive and credible, (ii) have not been controverted by any evidence, and (iii) establish that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization.

bb.    <u>Directors, Officers, and Insiders</u>.    The officers, directors, and managers of the Debtors shall be relieved of any and all duties with respect to the Debtors as of the Effective Date of the Plan.  The identities and affiliations of the persons proposed to serve as the initial managers and officers of the Reorganized Debtors after the Effective Date have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Interests in the Debtors and with public policy.

cc.    <u>Release, Exculpation, and Injunction Provisions</u>.    The injunction, release, and exculpation provisions contained in the Plan for the benefit of the Released Parties and Exculpated Parties, as applicable, are essential components of the Plan.  The releases of non-Debtors contained in the Plan are consensual in that all Releasing Parties were given due and adequate notice thereof and sufficient opportunity and instruction to elect to opt out of such releases.  Good and valid justifications have been demonstrated in support of the releases granted by the Debtors and their Estates and the Reorganized Debtors (the "**Debtor Releases**"), and the Debtors have satisfied the business judgment standard with respect to the Debtor Releases.  The Debtor Releases represent a

valid exercise of the Debtors' business judgment.  Accordingly, as has been established based upon the record in these chapter 11 cases, the Supporting Declarations, and the evidence presented in connection with the Confirmation Hearing, the release provisions contained in <u>Article X</u> of the Plan (i) were an integral part of the Requisite Consenting Creditors' agreement to support the Plan and their entry into the Restructuring Support Agreement, as reflected in the Restructuring Support Agreement, and are essential to the formulation and implementation of the Plan, as required by section 1123 of the Bankruptcy Code, (ii) are consistent with and permissible under applicable law, (iii) were given in exchange for good and valuable consideration provided by the Released Parties, (iv) are in the best interests of the Debtors, their Estates, holders of Claims and Interests, and all other parties in interest, (v) were negotiated in good faith and at arm's length, (vi) confer substantial benefits on the Debtors' estate and their creditors, and (vii) are fair, equitable, and reasonable, and failure to implement the Debtor Releases, injunctions and exculpation provisions set forth in the Plan and approved in this Confirmation Order would seriously impair and jeopardize the Debtors' ability to confirm and implement the Plan, and the compromises and settlements provided therein.

dd.     The process described in the Solicitation Declaration and the Solicitation Affidavit that the Debtors and Epiq followed to identify the relevant parties on which to serve the applicable Ballot or notice containing an opportunity to opt out of the releases (each, a "**Release Opt-Out Form**") and to distribute the Release Opt-Out Forms (i) is consistent with the industry standard, and (ii) was reasonably calculated to ensure that each holder of Claims or Interests in each Class was informed of its ability to opt out of the releases and the consequences for failing to timely do so.  For the avoidance of doubt, any party that validly elected in the Release Opt-Out Form or in the Ballot to opt out of the releases prior to any deadline to submit a Ballot, whether under any

original or extended deadline, shall be neither a Released Party nor a Releasing Party under the Plan.

ee.     The exculpation provisions contained in the Plan are appropriately tailored to the circumstances of these chapter 11 cases and are appropriate under applicable law, including *In re Highland Capital Mgmt., L.P.*, 48 F. 4th 419 (5th Cir. 2022), because they are supported by proper evidence, proposed in good faith, formulated following extensive good faith, arm's-length negotiations with key constituents, and appropriately limited in scope.  The Exculpated Parties reasonably relied upon the exculpation provisions as a material inducement to engage in postpetition negotiations with the Debtors and other key stakeholders that culminated in the Plan, the Creditors' Committee Global Settlement, and all other settlements and compromises therein that maximize value for the Debtors' Estates.  The record in these chapter 11 cases supports the exculpation provisions are appropriately tailored to protect the Exculpated Parties from unnecessary litigation, and contain appropriate carve outs for actions determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.  The record in these chapter 11 cases further supports the inclusion of the Debtors' independent managers (Harvey Tepner and Joan Hilson) as Exculpated Parties because such parties were integral to the restructuring, owed fiduciary duties to the Debtors and the Debtors' Estates, and fulfilled their fiduciary duties at all times throughout these chapter 11 cases.

ff.     The injunction provisions contained in the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the discharge, release, and exculpation provisions of the Plan.  The injunction provisions are appropriately tailored to achieve those purposes.  Subject in all respects to Article XI of the Plan, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party

that arose or arises from, in whole or in part, a Claim or Cause of Action subject to <u>Section 7.3</u>, <u>Section 7.4</u>, or <u>Section 7.5</u> of the Plan, without this Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim for actual fraud, gross negligence, or willful misconduct against such Released Party or Exculpated Party and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against such Released Party or Exculpated Party.

gg.     The Indemnification Obligations contained in the Plan and the New Term Loan Credit Facility Agreement are essential to the Plan and are necessary to implement the Plan.  The Indemnification Obligations represent a valid exercise of the Debtors' business judgment. Accordingly, as has been established based upon the record in these chapter 11 cases, the Supporting Declarations, and the evidence presented in connection with the Confirmation Hearing, the indemnification provisions contained in <u>Section 8.5</u> of the Plan (i) were an integral part of the Requisite Consenting Creditors' agreement to support the Plan and their entry into the Restructuring Support Agreement, as reflected in the Restructuring Support Agreement, and are essential to the formulation and implementation of the Plan, (ii) are consistent with and permissible under applicable law, (iii) were given in exchange for good and valuable consideration provided by the PTL Lenders, (iv) are in the best interests of the Debtors, their Estates, holders of Claims and Interests, and all other parties in interest, (v) were negotiated in good faith and at arm's length, (vi) confer substantial benefits on the Debtors' estate and their creditors, (vii) are fair, equitable, and reasonable, and (viii) pursuant to the Restructuring Support Agreement and the Creditors' Committee Global Settlement, are part of an integrated and global good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual and legal rights of the PTL Lenders.

hh.    <u>Modifications to Plan</u>.    Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan made after solicitation of the Plan or in this Confirmation Order (including those modifications announced on the record of the Confirmation Hearing) constitute technical or clarifying changes, changes with respect to particular Claims by agreement with holders of such Claims, or such modifications do not materially and adversely affect or change the treatment of any other Claim under the Plan.    Notice of these modifications was adequate and appropriate under the facts and circumstances of these chapter 11 cases.    In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims or Interests be afforded any further opportunity to change previously cast acceptances or rejections of the Plan.    Accordingly, the Plan is properly before this Court, and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

ii.    <u>Compromises and Settlements</u>.    The Plan is deemed to constitute a motion under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 with respect to all settlements provided for therein, including those set forth in <u>Section 5.1(a)</u> and <u>(b)</u>, (collectively, the "**Plan Settlements**").    Entry of this Confirmation Order constitutes this Court's approval of the terms of the Plan Settlements provided for under the Plan.    In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, including the Consenting Parties and the Global Settlement Parties, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Causes of Action, disputes, and controversies released, settled,

compromised, or otherwise resolved pursuant to the Plan.  In addition, the compromises and Plan Settlements embodied in the Plan are integral to the Plan and preserve value by enabling the Debtors to avoid extended, value-eroding litigation that could delay the Debtors' emergence from chapter 11.  Entry of this Confirmation Order constitutes this Court's approval of the Plan Settlements and compromises, including the releases in connection with the Plan Settlements, and a finding by this Court that the Plan Settlements are fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and holders of Claims and Interests because, among other things: (a) each of the Plan Settlements reflects a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent each of the Plan Settlements, there is a likelihood of complex and protracted litigation with the attendant expense, inconvenience, delay and uncertainty that has a possibility to derail the Debtors' reorganization efforts and would jeopardize the Debtors' ability to confirm and implement the Plan, and the compromises and settlements provided therein; (c) each of the parties supporting each of the Plan Settlements, including the Debtors, the Requisite Consenting Creditors, the Consenting Equity Holders, and the Global Settlement Parties, are represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) each of the Plan Settlements is the product of arm's-length bargaining and good faith negotiations between sophisticated parties; and (e) each of the Plan Settlements will maximize the value of the Debtors' Estates by preserving and protecting the ability of the Reorganized Debtors to continue operating outside of bankruptcy protection and in the ordinary course of business, and is essential to the successful implementation of the Plan.  Based on the foregoing, the Plan Settlements satisfy the requirements of applicable Fifth Circuit law for

approval of settlements and compromises pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and the Plan Settlements are hereby approved.

jj.     The Creditors' Committee Global Settlement is the product of good faith arm's-length negotiations between the Debtors, the Requisite Consenting Creditors, and the Creditors' Committee.  The Creditors' Committee Global Settlement, as incorporated into the Plan, resolves any and all claims and causes of action raised by the Creditors' Committee including all disputes raised or asserted by the Creditors' Committee in its letter dated April 4, 2023.  The Creditors' Committee supports the Plan and Plan Settlements in accordance with the terms of the Creditors' Committee Global Settlement.

kk.     <u>Exit Capital Structure, Exit Facilities, and New Debt</u>.  The evidentiary record demonstrates that the exit capital structure contemplated by the Plan, Plan Supplement, and the RSA is reasonable and appropriate and sufficient to fully perform all of the Debtors' obligations under the Plan, as well as all obligations of the Reorganized Debtors under all assumed agreements. The terms and structure of the New Term Loan and the Exit ABL Facility (together, the "**Exit Facilities**"), as currently contemplated by the Plan (and any commitments, engagements, or similar arrangements with respect to the provisions, arrangement or structuring thereof), are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration, and are in the best interests of the Debtors' Estates and their creditors.

ll.     <u>Good Faith</u>.  The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan, including the Plan Supplement) in good faith and not by any means forbidden by applicable law.  The Debtors' good faith is evident from the facts and record of these chapter 11 cases, the Solicitation Materials, the Supporting Declarations, the record of the Confirmation

Hearing, and other proceedings held before this Court in these chapter 11 cases. The Plan (including all documents necessary to effectuate the Plan, including the Plan Supplement) was negotiated at arm's length among the Consenting Parties, the Global Settlement Parties, the Released Parties, the Exculpated Parties and their respective advisors, each as applicable. The Debtors, the Consenting Parties, the Global Settlement Parties, the Released Parties, and the Exculpated Parties have been and will be acting in good faith if they proceed to: (i) consummate the Plan and the agreements, settlements, transactions, distributions, and other transfers contemplated therein and in this Confirmation Order, including the funding or deemed funding (in each case, to the extent applicable) of (a) the New Term Loan pursuant to the terms and conditions of the New Term Loan Credit Facility Agreement and any other documentation with respect thereto (the "**New Term Loan Documents**") and (b) the Exit ABL Facility pursuant to the terms and conditions of the Exit ABL Facility Credit Agreement and any other documentation with respect thereto (the "**Exit ABL Facility Documents**" and, together with the New Term Loan Documents, the "**Exit Facilities Documents**"); and (ii) take any actions authorized by the Plan and this Confirmation Order.

mm.    <u>Satisfaction of Confirmation Requirements</u>. The Plan satisfies the requirements for confirmation by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation, as set forth in section 1129 of the Bankruptcy Code.

nn.    <u>Likelihood of Satisfaction of Conditions Precedent to Effective Date</u>. Each of the conditions precedent to the Effective Date, as set forth in <u>Article IX</u> of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan.

## **ORDER**

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

**A.     Confirmation of Plan**

1.      The Plan and each of its provisions is confirmed pursuant to section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including the Plan Supplement (collectively, the "**Plan Documents**"), are hereby authorized and approved.  The terms of the Plan and the Plan Documents are incorporated herein by reference and are an integral part of this Confirmation Order.  The terms of the Plan, the Plan Documents, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.  Subject to the terms of the Plan and the DIP Documents, the Debtors reserve the right to alter, amend, update, or modify the Plan Documents prior to the Effective Date, consistent with the Restructuring Support Agreement.  The failure to specifically include or refer to any particular article, section, or provision of the Plan or the Plan Documents in this Confirmation Order shall not diminish or impair the effectiveness or enforceability of such article, section, or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

**B.     Objections**

2.      Except as set forth herein, any objections (including any reservations of rights contained therein) to confirmation of the Plan or other responses or reservations of rights with respect thereto that have not been withdrawn or resolved prior to entry of this Confirmation Order shall be, and hereby are, overruled on the merits and denied.

C.      **No Action**

3.      Pursuant to the appropriate provisions of any applicable State's general corporation or limited liability company laws, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code, (i) no action of the respective directors, managers, members, stockholders, or other equity holders of the Debtors, as applicable, shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including any Plan Document, and (ii) to the extent the Debtors determine any Person or Entity is a necessary party to execute and deliver or join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Plan, or perform any other act in furtherance of the transactions contemplated by the Plan and this Confirmation Order, and in furtherance of consummation of the Plan, and such Person or Entity is so informed by the Debtors, then such Person or Entity is directed to take such steps as necessary to comply with the foregoing and section 1142(b) of the Bankruptcy Code.

D.      **Governmental Approvals Not Required**

4.      Except as otherwise set forth herein, this Confirmation Order constitutes all approvals and consents required, if any, by the laws, rules, or regulations of any State or any other governmental authority with respect to the implementation and consummation of the Plan and the Plan Documents and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan or the Plan Documents to the fullest extent permitted by law and nothing herein to the contrary shall diminish the authority of section 1142 of the Bankruptcy Code.

E.     **Implementation and Effectiveness of Plan**

5.     On or before the Effective Date, the Debtors and the Reorganized Debtors, as applicable, and the appropriate officers, representatives, and members of the boards of managers or boards of directors thereof, as applicable, shall be authorized to and may issue, execute, deliver, file, or record such documents, securities, contracts, instruments, releases, and other agreements, including the Plan Documents, and take any other actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, including the Restructuring Transactions and all other actions delineated in <u>Article V</u> of the Plan or otherwise contemplated by the Plan, including the conversion, merger, or dissolution of any Debtor, without the need for any further approvals (including, without limitation, by any stockholder, member, board of directors, or board of managers), authorization, or consents, except for those expressly required pursuant to the Plan.  All actions contemplated by the Plan, including all actions in connection with any Plan Document, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, without further application to, or order of this Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or Reorganized Debtors.

F.     **Restructuring Transactions**

6.     On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions consistent with this Confirmation Order and the Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions and the issuance of the New Common Interests under and in connection with the Plan and the Plan Documents.

7.      This Confirmation Order shall, and shall be deemed to, pursuant to sections 363, 1123, 1142, 1145, and 1146 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions, and, to the extent such actions were taken before the Confirmation Date, such actions are ratified in all respects, and, in each case, no further approvals, authorization, or consents, except those expressly required pursuant to the Plan or this Confirmation Order, or, to the extent applicable, the DIP Documents, shall be required.  All Consenting Parties, all Global Settlement Parties, and any other parties necessary to effectuate, to the full extent permitted under section 1142 of the Bankruptcy Code, any transactions approved by, contemplated by, or necessary to effectuate the Plan, shall be deemed to consent to any such transactions, subject to the terms of the RSA.

**G.      Class 6B Trust**

8.      The Class 6B Trust Agreement, substantially in the form filed in the Plan Supplement, is hereby approved in all respects.  The Class 6B Trust shall be established and funded pursuant to, and in accordance with, the terms of the Plan and the Class 6B Trust Agreement.  The Debtors, the Reorganized Debtors, and any of their Affiliates (or anyone acting on their behalf) shall not be responsible for any Class 6B Trust Expenses and shall incur no liability in connection with the Class 6B Trust (subject to any obligations of the Debtors or Reorganized Debtors, as applicable, pursuant to the Plan or Class 6B Trust Agreement).  The appointment of UMB Bank, N.A. as Class 6B Trustee pursuant to the terms of the Class 6B Trust Agreement is hereby approved.

**H.      Authorization and Issuance of Plan Securities**

9.      The Reorganized Debtors are authorized to issue all Plan-related securities, including the New Common Interests, in accordance with the terms of the Plan; underlined provided that

nothing herein shall deem anything that is not a security to be a security; provided further that nothing herein or in the Plan Documents shall deem the Class 6B Trust Interests to be securities. All New Common Interests shall be, upon issuance, duly authorized, validly issued, fully paid and non-assessable.

## I.  Securities Registration Exemption

10.     The offer, issuance and distribution under the Plan of the New Common Interests to holders of FLSO Claims and Non-PTL Claims will, in each case, be exempt from registration under the Securities Act and any other applicable securities laws pursuant to section 1145 of the Bankruptcy Code.

11.     The New Common Interests may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, subject to: (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933; (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; and (iii) applicable regulatory approval.

12.     The availability of the exemption under section 1145 of the Bankruptcy Code or any other applicable securities laws shall not be a condition to the occurrence of the Effective Date.

## J.  Authorization and Entry into Exit Facilities

13.     The Reorganized Debtors are authorized to enter into, execute, and deliver the Exit Facilities Documents on the terms consistent with the Plan (including the consent rights thereunder).

14.     On and after the Effective Date, the Exit Facilities Documents shall constitute legal, valid, and binding obligations of the applicable Reorganized Debtors and be enforceable in

accordance with their respective terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan or this Confirmation Order, and the Reorganized Debtors, as applicable, shall be authorized to incur the obligations under the Exit Facilities and use the proceeds of such debt, in each case, in accordance with the terms of the Plan and the Exit Facilities Documents without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person or Entity.  The terms and conditions of the Exit Facilities Documents shall bind the Reorganized Debtors and each other Entity that enters into the Exit Facilities Documents.

15.     This Confirmation Order approves the Exit Facilities Documents (including the transactions and related agreements contemplated thereby, all actions to be taken, undertakings to be made, and obligations to be incurred, and fees, expenses, indemnities and other amounts paid and/or obligated to be paid by the Debtors or Reorganized Debtors, as applicable, in connection therewith), any commitment letters, engagement letters, fee letters, or similar arrangements in connection with the structuring, arranging, negotiation, or implementation of the Exit Facilities (including the transactions contemplated thereby, all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred, and fees, expenses, indemnities, and other amounts paid and/or obligated to be paid in connection therewith (including any payments under any such commitment letter, engagement letter, fee letter or similar agreement)), and, to the extent not approved by this Court previously, each Reorganized Debtor is authorized to, without further notice to this Court, (i) execute and deliver those documents necessary or appropriate to obtain the Exit Facilities, including the Exit Facilities Documents, and incur and pay any fees, expenses, indemnities, and other amounts paid and/or obligated to be paid in connection therewith, and (ii) in

connection with the Exit Facilities, make any act or take any action under applicable law, regulation, order or rule or vote, consent, authorization, or approval of any Person or Entity, subject to such modifications as the applicable Reorganized Debtor may deem to be necessary to enter into the Exit Facilities Documents.

16.     On the Effective Date, all of the claims, liens, and security interests to be granted in accordance with the terms of the Exit Facilities Documents, as applicable (i) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder, in accordance with the terms of the Exit Facilities Documents, (ii) shall be deemed automatically attached and perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Facilities Documents with the priorities established in respect thereof under applicable non-bankruptcy law and any intercreditor agreement entered into in connection with the Exit Facilities Documents, and (iii) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or applicable non-bankruptcy law.  To the extent provided in the Exit Facilities Documents, the New Term Loan Agent, the Exit ABL Agent, or any agent, trustee, or other representative of the relevant debtholders acting in a similar capacity, as applicable, under the Exit Facilities Documents, as applicable, are authorized, but not required, to file with the appropriate authorities mortgages, financing statements, and other documents and to take any other action in order to evidence, validate, and perfect such liens or security interests.

17.     Following the Effective Date, the PTL Lenders shall be indemnified by the Reorganized Debtors with respect to all present and future actions, suits, and proceedings against the PTL Lenders or their respective Related Parties in connection with or related to the Adversary

Proceeding, the Prepetition Adversary Actions, and/or any other claims, proceedings, actions, or causes of action in connection with or related to the PTL Credit Agreement, the Exchange Agreement, the Intercreditor Agreements, and/or the 2020 Transaction on the same terms and limitations as afforded under the PTL Credit Agreement and New Term Loan Credit Facility Agreement.

## K. Distributions

18.     The Debtors, the Reorganized Debtors, the Class 6B Trust, and the Disbursing Agents, as applicable, are authorized and directed to make all distributions under the Plan pursuant to the terms of the Plan and the Class 6B Trust Agreement and to pay, as applicable, any fees and expenses approved by this Confirmation Order, including by incorporation and adoption of the Adversary Findings of Fact and Conclusions of Law, or any other order of this Court.

19.     Any presentment or surrender of a security or the performance of any other act as a condition to participation in distribution under the Plan from the Debtors or Reorganized Debtors shall be taken not later than one year after the date of the entry of this Confirmation Order.  Any entity that has not within such time presented or surrendered such entity's security or taken any such other action that the Plan requires may not participate in distribution under the Plan.

## L. Executory Contracts and Unexpired Leases

20.     Pursuant to Section 8.1 of the Plan, as of and subject to the occurrence of the Effective Date (except as otherwise provided herein or in the Plan) and the payment of any applicable claim for Cure, all executory contracts and unexpired leases to which any of the Debtors are parties, and which have not expired by their own terms on or prior to the Confirmation Date shall be deemed assumed by the applicable Reorganized Debtor(s) except for any executory contract or unexpired lease that: (a) with the reasonable consent of the Requisite Consenting Creditors, previously has been assumed, assumed or assigned, or rejected pursuant to a Final Order

of this Court; (b) with the reasonable consent of the Requisite Consenting Creditors, is the subject of a separate (i) assumption motion filed by the Debtors or (ii) rejection motion filed by the Debtors under section 365 of the Bankruptcy Code before the Confirmation Date; (c) with the reasonable consent of the Requisite Consenting Creditors, is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts; or (d) is the subject of a pending Cure Dispute.

21.     Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor or assignee in accordance with its terms, except as modified by the provisions of the Plan, any order of this Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

22.     To the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed to be modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

23.     If a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign is not listed on a Cure Notice, the proposed Cure amount for such executory contract or unexpired lease is deemed to be zero dollars ($0).

24.     If there is a Cure Dispute pertaining to assumption or assumption and assignment of an executory contract or unexpired lease, such dispute shall be heard by this Court prior to such assumption or assumption and assignment, as applicable, being effective; provided that, on the Effective Date or as soon as reasonable practicable thereafter, or on such other terms as the parties to such executory contract or unexpired lease may otherwise agree, the Debtors or the Reorganized Debtors, as applicable (with the reasonable consent of the Requisite Consenting Creditors), may settle any dispute regarding the Cure amount or the nature thereof without any further notice to any party, other than the Class 6B Trust, or any action, order, or approval of this Court.

25.     Any counterparty to an executory contract or unexpired lease that fails to object timely to the notice of the proposed assumption or assumption and assignment, as applicable, of such executory contract or unexpired lease or the relevant Cure amount within fifteen (15) days of the service of the applicable Cure Notice, (i) shall be deemed to have assented to (A) such Cure amount and the nature thereof, (B) assumption or assumption and assignment, as applicable, of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease, or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or terminating or modifying such contract or lease on account of transactions contemplated by the Plan, and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or assumption and assignment, as applicable, or the Allowed amount of such Cure amount thereafter.

26.     Upon an agreement between the Debtors and the counterparty to the relevant executory contract or unexpired lease, any Cure Dispute or any other unresolved objection regarding the assumption of such executory contract or unexpired lease may be adjourned to a hearing after the Confirmation Hearing.

27.     If there is a Cure Dispute or a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtors or Reorganized Debtors, as applicable, shall have sixty (60) days following entry of a Final Order resolving such Cure Dispute to alter their treatment of such contract or lease by filing a notice indicating such altered treatment.

## M.     6A Trade Agreements

28.     Except as otherwise provided in the Plan, to receive treatment and a distribution under Class 6A, each holder of an Ongoing General Unsecured Claim (Class 6A) must execute a 6A Trade Agreement, except as expressly provided below, and deliver a copy of the fully executed 6A Trade Agreement to Epiq Corporate Restructuring, LLC by e-mail at SertaSimmons6ATA@epiqglobal.com by no later than the Effective Date (or such later date as agreed to by the Debtors).  If a holder of an Ongoing General Unsecured Claim (Class 6A) fails to execute and deliver a 6A Trade Agreement in accordance with the foregoing sentence, unless otherwise expressly agreed in writing by the Debtors or the Reorganized Debtors in their sole discretion, such holder will receive the treatment provided to such claims under Class 6B.

29.     Notwithstanding anything to the contrary in this Confirmation Order or the Plan, any counterparty to (i) an executory contract or unexpired lease assumed pursuant to Article VIII of the Plan or (ii) an existing CV Trade Agreement (provided that such CV Trade Agreement is in effect as of the Effective Date) shall not be required to execute a 6A Trade Agreement in order to receive treatment under Class 6A.

**N.      Compromises and Settlements**

30.      The Plan is a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual and legal rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

31.      The entry of this Confirmation Order constitutes this Court's approval of the compromise or settlement of all such Claims, Interests, and controversies referenced in paragraph 30 above, as well as a finding by this Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests and is fair, equitable, and reasonable.  The compromises, settlements, and releases described herein and in the Plan are nonseverable from each other and from all other terms of the Plan.  In accordance with and subject to the provisions of the Plan (including the consent rights thereunder), pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of this Court, after the Confirmation Date, (i) the Reorganized Debtors or the Class 6B Trust, as applicable and subject to the Class 6B Trust Agreement, may compromise and settle any Claims against, and Interests in, the Debtors and their Estates, and (ii) the Reorganized Debtors or the Class 6B Trust, as applicable and subject to the Class 6B Trust Agreement, may compromise and settle Causes of Action against other Persons or Entities.

32.      Certain Claims and Causes of Action may exist between one or more of the Debtors and one or more of their Affiliates, which Claims and Causes of Action have been settled, and such settlement is reflected in the treatment of the Intercompany Claims and the Claims against and Interests in each Debtor entity.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of such Claims and Causes of Action pursuant to Bankruptcy Rule 9019.

33.     The provisions of the Plan Settlements constitute a good faith compromise and settlement among the Debtors and the Consenting Parties of all Claims, Causes of Action, Interests, and controversies among such parties, including all potential Claims, Causes of Action, Interests, and controversies between the Debtors and the Consenting Parties, and are in consideration of the value provided to the Estates by the Consenting Parties pursuant to the Plan Settlements.  The Plan shall be deemed a motion to approve the Plan Settlements as a good faith compromise and settlement of all of the Claims, Interests, Causes of Action and controversies described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.  Entry of this Confirmation Order constitutes this Court's approval of the Plan Settlements, as well as a finding by this Court that the Plan Settlements are in the best interests of the Debtors, their Estates, and holders of Claims and Interests and are fair, equitable, and reasonable.

34.     <u>Creditors' Committee Global Settlement</u>.   The provisions of the Creditors' Committee Global Settlement constitute a good faith compromise and settlement among the Debtors, the Consenting Parties, and the Creditors' Committee (collectively, the "**Global Settlement Parties**") of all Claims, Causes of Action, Interests, and controversies among such parties, including all potential Claims, Causes of Action, Interests, and controversies between the Global Settlement Parties, and are in consideration of the value provided to the Estates by the Global Settlement Parties pursuant to the Creditors' Committee Global Settlement.  The Plan shall be deemed to be a motion to approve the Creditors' Committee Global Settlement as a good faith compromise and settlement of all of the Claims, Interests, Causes of Action and controversies described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Entry of this Confirmation Order constitutes this Court's

approval of the Creditors' Committee Global Settlement in all respects, as well as a finding by this Court that the Creditors' Committee Global Settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

35.     Solely with respect to the exculpation provisions in the Plan, notwithstanding anything to the contrary in the Plan or Plan Supplement, the Debtors, the Global Settlement Parties, and the Consenting Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (1) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, or (2) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the Plan.  No entity or person may commence or pursue a Claim or Cause of Action of any kind against any Debtor, Global Settlement Party, or Consenting Party that arose or arises from, in whole or in part, a Claim or Cause of Action subject to this paragraph 35 of this Confirmation Order, without this Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim that is not otherwise inconsistent with the terms and provisions of the Plan and this Confirmation Order or the Restructuring Transactions implemented by the Plan for actual fraud, gross negligence, or willful misconduct against any such Debtor, Global Settlement Party, or Consenting Party and such party is not exculpated pursuant to this provision; and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against such Debtor, Global Settlement Party, or Consenting Party.

**O.      Conditions Precedent to Effective Date**

36.     The Plan shall not become effective unless and until all conditions set forth in Section 9.1 of the Plan have been satisfied or waived pursuant to Section 9.3 of the Plan.

**P.      Release, Exculpation, and Injunction Provisions**

37.      As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan or any Plan Document, all injunction, release, discharge, and exculpation provisions embodied in the Plan, including those contained in Article X, are hereby approved and shall be effective and binding on all Persons and Entities, to the extent provided in the Plan, without further order or action by this Court.  For the avoidance of doubt, any holder of a Claim that abstained from voting to accept or reject the Plan but timely opted out of the releases set forth in the Plan shall not be a "Releasing Party" under the Plan. Notwithstanding the language of the following specified provisions of the Plan, nothing in Section 10.6(a) (Releases by Debtors), Section 10.6(b) (Releases by Holders of Claims and Interests), or Section 10.7 (Exculpation) shall be construed to release any Person from willful misconduct, intentional fraud, or gross negligence as determined by a Final Order.

**Q.      Dissolution of Official Committees**

38.      On the Effective Date, any official committees appointed in these chapter 11 cases, including the Creditors' Committee, shall dissolve; provided that, following the Effective Date, any such committees, including the Creditors' Committee, shall continue in existence solely for the purposes of (i) filing and prosecuting applications for allowance of Professional Fee Claims, (ii) seeking removal of the committee as a party in interest in any proceeding on appeal, and (iii) any appeals of this Confirmation Order.  Upon the dissolution of any official committees appointed in these chapter 11 cases, including the Creditors' Committee, such committee members and their respective Professionals shall cease to have any duty, obligation, or role arising from or related to these chapter 11 cases and shall be released and discharged from all rights and duties from or related to these chapter 11 cases; provided that, for the avoidance of doubt, any Claims or Causes of Action asserted by the Creditors' Committee, whether direct or derivative (including

any Claims seeking declaratory judgments) shall be withdrawn with prejudice and/or vest in the Debtors' Estates, to be immediately fully and indefensibly released in accordance with <u>Section 10.6</u> of the Plan.

**R.    Retention of Jurisdiction**

39.    Subject to <u>Article XI</u> of the Plan, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court shall retain exclusive jurisdiction with respect to all matters arising from or related to these chapter 11 cases, the Plan, the Adversary Proceeding, and the implementation of this Confirmation Order, including those matters set forth in <u>Article XI</u> of the Plan.

**S.    Statutory Fees**

40.    All fees due and payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date.  The Debtors shall file all monthly operating reports through the Effective Date.  On and after the Effective Date, the Reorganized Debtors or any Disbursing Agent shall pay any and all such fees in full in Cash when due and payable, and shall file with this Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to file a Proof of Claim or any other request for payment of quarterly fees.

**T.    Documents, Mortgages, and Instruments**

41.    Each federal, State, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions, including the Restructuring

Transactions, contemplated by the Plan and this Confirmation Order and directed pursuant to section 1142 of the Bankruptcy Code to take such steps with respect to the foregoing to implement the transactions necessary to consummate the Plan.

**U.      Exemption from Certain Transfer Taxes**

42.      Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation, filing or recording of any Lien, mortgage, deed of trust, or other security interest, (c) the making, assignment, filing or recording of any lease or sublease or the making or delivery of any deed, bill of sale, assignment or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan and Restructuring Transactions Exhibit (whether to one or more of the Reorganized Debtors or otherwise), (d) the grant of collateral under the New Term Loan Credit Facility Agreement, (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, this Confirmation Order, and (f) the transfer of Class 6B Trust Assets to the Class 6B Trust, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code and shall not be subject to or taxed under any law imposing any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded

shall, pursuant to this Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

**V.      Reversal/Stay/Modification/Vacatur of Order**

43.     Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors, the Reorganized Debtors, the Creditors' Committee, the Class 6B Trust, or any other Person or Entity authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

**W.      Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent**

44.     The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

**X.      Headings**

45.     Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**Y.      Governing Law**

46.      Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that a Plan Document provides otherwise with respect to such document, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of laws thereof (other than section 5-1401 and section 5-1402 of the New York General Obligations Law).  The rights, duties, and obligations arising under the Plan Documents shall be governed by the applicable law set forth therein.

**Z.      Applicable Non-Bankruptcy Law**

47.      Pursuant to sections 1123(a) and 1142 of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**AA.    Professional Fee Claims**

48.      Subject to Section 2.2 of the Plan, all Professionals seeking approval by the Bankruptcy Court of Professional Fee Claims may file, on or before the date that is forty-five (45) days after the Effective Date (unless extended by the Reorganized Debtors), their respective applications for combined interim and final allowances of compensation for services rendered and reimbursement of expenses incurred.

**BB.    Notice of Entry of Confirmation Order and Effective Date**

49.      In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Confirmation Date, the Debtors shall serve notice of the entry of this Confirmation Order, substantially in the form attached as **Exhibit B** hereto (the "**Confirmation Notice**"), on all parties who hold a Claim or Interest in these cases, the U.S. Trustee, and any other

parties in interest.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order.

50.     As soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall serve notice of the occurrence of the Effective Date, substantially in the form attached as **Exhibit C** hereto (the "**Consummation Notice**"), on all parties who hold a Claim or Interest in these cases, the U.S. Trustee, and any other parties in interest.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of occurrence of the Effective Date.

## CC.     Final Order

51.     This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

## DD.     Waiver of Stay

52.     The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to the Bankruptcy Code, Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

## EE.     Inconsistency

53.     The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each, however, if there is determined to be any inconsistency between any provision of the Plan and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern, and any such provisions of this Confirmation Order shall be deemed a modification of the Plan.

**FF.    Valid and Binding**

54.     All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.

**GG.    Term of Injunctions or Stays**

55.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays arising under or entered during these chapter 11 cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**HH.    Substantial Consummation**

56.     On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

**II.    Closure of these Chapter 11 Cases**

57.     The Reorganized Debtors shall, in consultation with the Class 6B Trust, after the full administration of these chapter 11 cases, file with this Court all documents required by Bankruptcy Rule 3022 and any applicable order of this Court to close these chapter 11 cases.  As of the Effective Date, the Reorganized Debtors, in consultation with the Class 6B Trust, may submit separate orders to this Court under certification of counsel closing certain individual chapter 11 cases and changing the caption of these chapter 11 cases accordingly.  Matters concerning Claims may be heard and adjudicated in a Debtor's chapter 11 case that remains open regardless of whether the applicable Claim is against a Debtor in a chapter 11 case that is closed.

**JJ.**     **Miscellaneous Provisions.**

58.     *Epiq Services*.  The Debtors are hereby authorized to employ Epiq to implement the Restructuring, including as a distribution and paying agent.

59.     *Texas Comptroller*.  Nothing provided in the Plan or this Confirmation Order shall impair any valid statutory or common law setoff rights of the Texas Comptroller of Public Accounts (the "**Texas Comptroller**"), in accordance with section 553 of the Bankruptcy Code. Further, nothing provided in the Plan or this Confirmation Order shall preclude the payment of interest at the statutory rate on the Texas Comptroller's Priority Tax Claim(s) or Administrative Expense Claim(s) after the later of the due date of the liabilities or the Effective Date in accordance with the Bankruptcy Code.  In connection with the foregoing, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under applicable law in favor of the Debtors, Reorganized Debtors, or the Texas Comptroller, as applicable, are preserved.

60.     The following paragraphs 61 through 64 of this Confirmation Order will govern the treatment of the Texas Comptroller concerning the duties and responsibilities of the Debtors and the Reorganized Debtors relating to all unclaimed property presumed abandoned (the "**Texas Unclaimed Property**") under Texas Property Code, Title 6, Chapters 72-76 and other applicable Texas laws (the "**Texas Unclaimed Property Laws**").

61.     Notwithstanding section 362 of the Bankruptcy Code and/or any injunction contained in Section 10.5 of the Plan, after the Effective Date, the Texas Comptroller and its agents may commence an audit of the Debtors in accordance with the Texas Unclaimed Property Laws (the "**Texas Unclaimed Property Audit**").  Upon completion of the Texas Unclaimed Property Audit, the Texas Comptroller will promptly inform the Debtors or the Reorganized Debtors, as applicable, that such audit is complete and the results.  The Debtors, the Reorganized Debtors, and the Texas Comptroller shall retain and reserve, and nothing in the Plan or this Confirmation Order

shall prejudice such party's right to argue, all rights, defenses, claims, counterclaims, and affirmative defenses that exist under applicable law arising from or relating to Texas Unclaimed Property, the Texas Unclaimed Property Audit, and/or any action to recover Texas Unclaimed Property, including but not limited to arguments that Texas Unclaimed Property is or is not property of the Debtors' Estates that vests in the Reorganized Debtors' Estates, that alleged Texas Unclaimed Property is held in trust for the State of Texas, and that claims asserted against the Debtors or the Reorganized Debtors are or are not unsecured claims subject to discharge in these chapter 11 cases.

62.    Upon agreement between the Debtors or the Reorganized Debtors and the Texas Comptroller or a final nonappealable determination by a court or other tribunal with jurisdiction as to the amount of unremitted Texas Unclaimed Property, if any, that is due in connection with the Texas Unclaimed Property Audit, the Debtors or the Reorganized Debtors shall turn over such unremitted Texas Unclaimed Property and all known information about absent owners of the Texas Unclaimed Property to the Texas Comptroller.

63.    The Texas Comptroller may amend any timely filed Proofs of Claim in these chapter 11 cases following the Effective Date (i) to reflect a pending audit or the results of an audit that may be performed with respect to alleged Texas Unclaimed Property, (ii) following the filing of any property reports by the Debtors or Reorganized Debtors in connection with Texas Unclaimed Property, or (iii) to liquidate an unliquidated claim in connection with Texas Unclaimed Property; provided that the foregoing does not prejudice the Debtors' or Reorganized Debtors' rights to object to such Proofs of Claim in accordance with the Bankruptcy Code.

64.    Nothing herein or in the Plan exempts the Debtors from compliance from and after the Effective Date with obligations pursuant to the Texas Unclaimed Property Laws. The Texas

Comptroller of Public Accounts reserves all rights relating to any unclaimed property presumed abandoned by the Reorganized Debtors from and after the Effective Date pursuant to the Texas Unclaimed Property Laws and any defenses, claims, counterclaims, and affirmative defenses that exist under applicable law in favor of the Debtors, to contest any action of the Texas Comptroller to recover Texas Unclaimed Property are preserved.

65.     *Maricopa County*.  Notwithstanding anything to the contrary contained in the Plan or Disclosure Statement, any taxes due by any of the Debtors to the Maricopa County Treasurer in the State of Arizona ("**MCT**") for the 2023 tax year shall be paid in the ordinary course.  Any secured claims of MCT shall be entitled to interest to the extent provided under sections 506(b), 1129 and/or 511 of the Bankruptcy Code.  Any valid and perfected liens securing MCT's claims shall retain the same force and effect and priority pursuant to state law until such claims are satisfied in full.  In connection with the foregoing, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under applicable law in favor of the Debtors, Reorganized Debtors, or MCT, as applicable, are preserved.

66.     *Texas Taxing Authorities*.  Notwithstanding anything to the contrary contained in the Plan or Disclosure Statement, any secured ad valorem taxes due by any of the Debtors to Cypress-Fairbanks Independent School District, Dallas County and Harris County (each, a "**Texas Taxing Authority**") for tax years 2022 and prior shall be paid on or before the Effective Date, or when such claim is Allowed, subject to the applicable time limitations, if any, under the Bankruptcy Code.  Any 2023 ad valorem taxes due by any of the Debtors to any Texas Taxing Authority shall be paid in the ordinary course.  Any secured claims of each Texas Taxing Authority shall be entitled to interest to the extent provided under sections 506(b), 1129 and/or 511 of the Bankruptcy Code.  Any valid and perfected liens securing each Texas Taxing Authority's claims

shall retain the same force and effect and priority pursuant to state law until such claims are satisfied in full.  In connection with the foregoing, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under applicable law in favor of the Debtors, Reorganized Debtors, or each Texas Taxing Authority, as applicable, are preserved.  Each Texas Taxing Authority may amend any timely filed Proof of Claim to liquidate an unliquidated claim; provided that the foregoing does not prejudice the Debtors' or Reorganized Debtors' rights to object to such Proofs of Claim in accordance with the Bankruptcy Code.

67.     *Mississippi Department of Revenue*.    Nothing provided in the Plan or this Confirmation Order shall impair any valid statutory or common law setoff rights of the Mississippi Department of Revenue (the "**MDOR**"), in accordance with section 553 of the Bankruptcy Code. Nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of any administrative expense tax claims held by the MDOR.  The MDOR may amend any timely filed Proof of Claim (a) to reflect a pending audit or an audit that may be performed with respect to any pre- or post-petition tax return, (b) following the filing of a tax return, or (c) to liquidate an unliquidated claim.  Nothing in the Plan or this Confirmation Order shall preclude the payment of interest on any valid Claim of MDOR in accordance with the Bankruptcy Code.  In connection with the foregoing, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under applicable law in favor of the Debtors, Reorganized Debtors, or the MDOR, as applicable, are preserved.

68.     *Louisiana Department of Revenue*.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order: (i) the Louisiana Department of Revenue ("**LDR**") shall not be deemed a Releasing Party under the terms of the Plan irrespective of the withdrawal of LDR's objection to the Plan; (ii) LDR shall not be required to file any request for any payment of

Administrative Expense Claims for such expenses to be Allowed expenses and paid in the ordinary course of business; (iii) any postpetition tax returns and taxes due to LDR by the Debtors or the Debtors' Estate shall be filed and paid in the ordinary course of business when due pursuant to Louisiana law, and all delinquent prepetition returns shall be filed and paid as soon as practicable before any order on a motion for final decree is entered by this Court; (iv) any administrative tax expenses due to LDR shall be paid with interest and penalties to the extent provided for in sections 503(b)(1)(B) and (C) and 1129(a)(9)(A) of the Bankruptcy Code at the rate required by section 511 of the Bankruptcy Code; (v) any Allowed Priority Tax Claims of LDR shall be paid with interest to the extent provided for in section 1129(a)(9)(C) at the rate required by section 511 of the Bankruptcy Code not later than the time required by section 1129(a)(9)(C) of the Bankruptcy Code; (vi) payments received by LDR shall not be deemed paid on any date other than the date of receipt by LDR and such payments are not a settlement or compromise pursuant to Bankruptcy Rule 9019; (vii) no payment distribution due to LDR by the Debtors or the Debtors' Estates shall be deemed unclaimed property of the Estates and all distributions due to LDR shall remain due until received by LDR; (viii) the valid statutory or common law setoff rights and recoupment rights of the LDR are fully preserved; and (ix) LDR may amend any timely filed Proof of Claim (a) to reflect a pending audit or an audit that may be performed with respect to any pre- or post-petition tax return, (b) following the filing of a tax return, or (c) to liquidate an unliquidated claim.

69.     *AIG.*  All insurance policies that have been issued (or provided coverage) by National Union Fire Insurance Company of Pittsburgh, Pa. and/or each of the affiliates and successors (collectively, "**AIG**") to which any Debtor is a party as of the Effective Date and any agreements, endorsements, addenda, schedules, documents or instruments relating thereto (the "**AIG Insurance Contracts**") shall be assumed in their entirety under the Plan and nothing

herein shall alter, modify, waive or otherwise amend the terms and conditions of (or the coverage provided by) the AIG Insurance Contracts or the Debtors' obligations thereunder, regardless of when they arise.  In lieu of Cure, all obligations due and unpaid under such agreements accruing prior to the Effective Date shall be unimpaired and reinstated; <u>provided</u> that, in connection with each assumption and the related obligations (if any), any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under such agreement and applicable law in favor of the Debtors, Reorganized Debtors, or AIG, as applicable, are preserved.  For the avoidance of doubt, all parties' rights are reserved regarding the enforceability of the arbitration provisions under the AIG Insurance Contracts.

70.    *Life Insurance Company of North America*.   Notwithstanding anything to the contrary in this Confirmation Order, the Plan, or any notice related thereto, the Employee Benefits Agreements (as defined in the *Objection of Life Insurance Company of North America to Disclosure Statement for Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. 489)) shall be assumed under the Plan and, in lieu of Cure, all obligations due and unpaid under such agreements accruing prior to the Effective Date shall be unimpaired and reinstated; <u>provided</u> that, in connection with each assumption and the related obligations (if any), any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under such agreement and applicable law in favor of the Debtors, Reorganized Debtors, or the Life Insurance Company of North America, as applicable, are preserved.

71.    *SIR Policy Claims*.   For the avoidance of doubt, nothing in the Plan or this Confirmation Order, including <u>Section 5.1(b)(iv)</u> and <u>Section 8.7(d)</u> of the Plan, shall (i) require any payment on account of an SIR for an Insured Litigation Claim before such holder of an Insured Litigation Claim can pursue recovery in excess of an applicable SIR from any applicable insurance

policy; and (ii) limit the amount a holder of an Insured Litigation Claim can pursue against any applicable insurance policy above any applicable SIR; <u>provided</u> that any recovery on account of the Insured Litigation Claim in excess of an applicable SIR shall be recoverable solely from the Debtors' or Reorganized Debtors' (as applicable) insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof.

72.   *McCormick Carve-Out*.  With regard to the plaintiffs, their successors and assigns, (collectively, the "**McCormick Claimants**") in the products liability personal injury suit styled *Lashan McCormick et al. v. Serta Simmons Holding, LLC a/k/a Serta Simmons Bedding, LLC, et al.*, Case No. CC21CV968 (the "**McCormick Action**"), pending in the Circuit Court of Montgomery County, Tennessee, for the Nineteenth Judicial District at Clarksville (the "**TN State Court**"), against certain Debtors, as described in the McCormick Claimants' timely filed proofs of claim (claim numbers: 20165, 20167, 20168, 20169, 20170, 20171, and 20175), as such proofs of claim may be revised or amended from time to time (the "**McCormick POCs**"):

    a.  For a period of 75 days following the Effective Date, the McCormick Action will remain subject to the injunction provisions of the Plan, during which time, the McCormick Claimants, the Reorganized Debtors and the Class 6B Trust shall confer in good faith regarding the consensual reconciliation of the McCormick Action and, to the extent such reconciliation cannot be accomplished, an appropriate mechanism for the reconciliation of the McCormick POCs.

    b.  Upon the expiration of such 75-day period, the McCormick Claimants, shall, by stipulation amongst the McCormick Claimants, the Reorganized Debtors and the Class 6B Trust in form reasonably satisfactory to the parties, be granted limited relief from the injunction provisions of the Plan that: (i) allows the McCormick Claimants to pursue the McCormick Action in TN State Court nominally against the Debtors solely to recover from proceeds of the Debtors' or Reorganized Debtors' (as applicable) applicable insurance policies (ii) waives any right of recovery against the Debtors and their estates, the Reorganized Debtors, or the Class 6B Trust other than on account of any applicable SIR; (iii) provides that the McCormick Claimants assume all risks with respect to coverage under any applicable insurance policies to the extent coverage is not confirmed by an applicable insurance provider during the 75-day period; and (iv) provides that neither the Reorganized Debtors nor the Class

6B Trustee shall have any obligation to participate or otherwise expend any resources, financially or otherwise, in connection with the McCormick Action. The Reorganized Debtors and the Class 6B Trust, as applicable, shall provide the McCormick Claimants reasonable access to such information as is reasonably appropriate to identify the extent of coverage available under any applicable insurance policy.

c. To the extent the parties are unable to agree to the stipulation set forth in (b) above, the McCormick Parties shall have the right to seek relief from the injunction provisions of the Plan with all rights of the Reorganized Debtors and the Class 6B Trust reserved.

73. Nothing in this Confirmation Order or the Plan, including Section 7.3 of the Plan, shall, with respect to a party to the McCormick Action, increase or diminish any rights of any party with regard to any request to estimate the McCormick POCs under section 502(c) of the Bankruptcy Code including, without limitation, the McCormick Claimant's right to challenge the jurisdiction or constitutional authority of a court to estimate the McCormick POCs and the McCormick Claimant's rights to seek reconsideration of any estimation of the McCormick POCs under section 502(j) of the Bankruptcy Code.

74. *Continuum*. Notwithstanding anything to the contrary in this Confirmation Order or the Cure Notice subject to and upon the assumption of the CMS Agreements (as defined below), the Debtors shall, in accordance with Article VIII of the Plan and section 365 of the Bankruptcy Code, pay any undisputed outstanding, past-due invoices (both pre- and postpetition), provided that, to the extent a disputed invoice contains amounts that are not in dispute, Debtors shall pay all such undisputed amounts, pursuant to the following agreements: (i) that certain *Master Services Agreement*, dated as of December 17, 2021, by and between Continuum Marketing Services LLC ("**CMS**") and Serta Simmons Bedding and (ii) that certain *SOW Pop & Marketing Print Managed Services Agreement*, dated as of December 17, 2021, by and between CMS and Serta Simmons Bedding (collectively, the "**CMS Agreements**"); provided that nothing herein shall effect CMS's

right to assert an administrative claim for unpaid, post-petition services provided by CMS to the Debtors.

75.     *Ratzon Realty*.  Nothing in this Confirmation Order shall be construed to release, waive, or enjoin any Claims that Ratzon Realty (Interstate Park Logistics Center Florida) Limited Partnership ("**Ratzon Realty**") may assert against the Debtors' applicable insurance providers with respect to third-party claims related to the Debtors' use and occupancy of the applicable premises prior to the Effective Date, as long as such pursuit does not result in any liability to the Debtors or their estates, provided, however, for the avoidance of doubt, nothing herein (a) creates a direct right of action if one does not otherwise exist under applicable law, and (b) shall be deemed to modify, amend, waive, or otherwise prejudice any of the insurance providers' rights or defenses under or with respect to the insurance policies.  All rights of Ratzon Realty to payment of attorney's fees under its unexpired lease are reserved and any dispute regarding such fees will be adjourned to a date to be agreed between the Debtors and Ratzon Realty.

76.     *Unexpired Leases of Ratzon Realty and WPG*.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to any unexpired leases of non-residential real property of Ratzon Realty or WPG Legacy, LLC ("**WPG**") assumed under the Plan, the Debtors or Reorganized Debtors, as applicable, shall be obligated to pay any undisputed accrued but unbilled amounts under such assumed unexpired lease as any such amounts become due in accordance with the terms of the applicable unexpired lease.  Nothing in the Plan or this Confirmation Order shall modify the respective rights, if any, of Ratzon Realty and WPG, each as a counterparty to an assumed unexpired lease, to assert any right of indemnification, setoff, subrogation or recoupment that such counterparty may have under applicable law except to the extent modified by the Plan (including the injunction set forth in <u>Section 10.5</u> of the Plan) or under

such party's unexpired lease.   In connection with the foregoing, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under applicable law in favor of the Debtors, Reorganized Debtors, Ratzon Realty, or WPG, as applicable, are preserved.

77.     *Humphries Carve-Out*.  With regard to the plaintiffs, their successors and assigns, (collectively, the "**Humphries Claimants**") in the automobile collision related personal injury suit styled *Ruth Ann Humphries and Alan Humphries v Reginald Jervon Pauley and SSB Logistics, LLC*, Cause No. 2023-CP-46-01106, (the "**Humphries Action**"), pending in the in the Court of Common Pleas, County of York, South Carolina (the "**SC State Court**"), against SSB Logistics, LLC and Reginald Jervon Pauley, as described in the Humphries Claimants' proofs of claim, which are deemed timely (claim numbers 20408, 20409, 20410 and 20411) (collectively, the "**Humphries POCs**"):

    a.  For a period of 75 days following the Effective Date, the Humphries Action will remain subject to the Plan Injunction, during which time, the Humphries Claimants, the Reorganized Debtors and the Class 6B Trust shall confer in good faith regarding the consensual reconciliation of the Humphries Action and, to the extent such reconciliation cannot be accomplished, an appropriate mechanism for the reconciliation of the Humphries POCs.

    b.  Upon the expiration of such 75-day period, the Humphries Claimants, shall, by stipulation amongst the Humphries Claimants, the Reorganized Debtors and the Class 6B Trust in form reasonably satisfactory to the parties, be granted limited relief from the Plan Injunction that: (i) allows the Humphries Claimants to pursue the Humphries Action in SC State Court nominally against the Debtors solely to recover from proceeds of the Debtors' or Reorganized Debtors' (as applicable) applicable insurance policies; (ii) waives any right of recovery against the Debtors and their estates, the Reorganized Debtors, or the Class 6B Trust other than on account of any applicable SIR; (iii) provides that the Humphries Claimants assume all risks with respect to coverage under any applicable insurance policies to the extent coverage is not confirmed by an applicable insurance provider during the 75-day period; and (iv) provides that neither the Reorganized Debtors nor the Class 6B Trustee shall have any obligation to participate or otherwise expend any resources, financially or otherwise, in connection with the Humphries Action.  The Reorganized Debtors and the Class 6B Trust, as applicable, shall provide the Humphries Claimants

reasonable access to such information as is reasonably appropriate to identify the extent of coverage available under any applicable insurance policy.

c.   To the extent the parties are unable to agree to the stipulation set forth in (b) above, the Humphries Claimants shall have the right to seek relief from the injunction provisions of the Plan with all rights of the Reorganized Debtors and the Class 6B Trust reserved.

78.   The Humphries Claimants are deemed to have opted out of the third party releases contained in Section 10.6 of the Plan.

79.   Nothing in this Confirmation Order or the Plan, including Section 7.3 of the Plan, shall, with respect to a party to the Humphries Action, increase or diminish any rights of any party with regard to any request to estimate the claims asserted in the Humphries POCs under section 502(c) of the Bankruptcy Code including, without limitation, the Humphries Claimant's right to challenge the jurisdiction or constitutional authority of a court to estimate the Humphries POCs and the Humphries Claimant's rights to seek reconsideration of any estimation of the Humphries POCs under section 502(j) of the Bankruptcy Code.  The Humphries Claimants acknowledge and agree that any such request to estimate or reconsider the related rights and defenses shall be brought in and decided by this Court.

80.   *Minority Licensees*.  Nothing provided in the Plan or this Confirmation Order shall impair beyond the scope of the Bankruptcy Code any and all defenses or counterclaims of the Minority Licensees with respect to claims that may be asserted by any of the Reorganized Debtors, including any statutory or common law rights of setoff and recoupment preserved in accordance with section 553 of the Bankruptcy Code.

81.   *State of Connecticut*.  In accordance with the Plan, following the Effective Date, the initial Class 6B Cash Contribution Allocation may be reallocated in accordance with the Plan by the Class 6B Trust, acting by and through the Class 6B Trustee, with the consent of the

Reorganized Debtors, in their reasonable business judgment to recalibrate for, among other things, (i) the amount of the Allowed Other General Unsecured Claims against each Debtor as determined in accordance with the reconciliation and objection process provided for in the Plan, (ii) the amount and purpose of Class 6B Trust Expenses, and (iii) any recoveries by the Class 6B Trust on account of Class 6B Causes of Action; provided that such reallocation will be effective upon 10 days' notice of the reallocation being filed with this Court.

Dated: _____, 2023
       Houston, Texas

                                   _____
                                   THE HONORABLE DAVID R. JONES
                                   UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Plan**

**[Exhibit Omitted]**

**<u>Exhibit B</u>**

**Confirmation Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | **Chapter 11** |
| **SERTA SIMMONS BEDDING, LLC,** *et al.,* | § § § | **Case No. 23-90020 (DRJ)** |
| Debtors.[1] | § § § | **Jointly Administered** |

### NOTICE OF ENTRY OF ORDER CONFIRMING
### SECOND AMENDED JOINT CHAPTER 11 PLAN OF
### SERTA SIMMONS BEDDING, LLC AND ITS AFFILIATED DEBTORS

    **PLEASE TAKE NOTICE** that on May [●], 2023, the Honorable David R. Jones, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), entered the *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. [●]) (the "**Confirmation Order**") confirming the *Second Amended Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors*, dated May 23, 2023 (Docket No. 977) (as supplemented, the "**Plan**").[2]

    **PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, Plan, and Disclosure Statement may be obtained free of charge by visiting the website maintained by Epiq Corporate Restructuring, LLC ("**Epiq**") at https://dm.epiq11.com/sertasimmons.  Parties may also obtain any documents filed in the Chapter 11 Cases for a fee via PACER at https://www.pacer.gov/.  Please note that a PACER password and login are required to access documents via PACER.

    **PLEASE TAKE FURTHER NOTICE** that the Plan and the provisions thereof are binding on the Debtors, the Reorganized Debtors, any holder of a Claim against, or Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder voted to accept the Plan.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957).  The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Dated:  May [●], 2023
      Houston, Texas

                                */s/ Draft*
                                              _____

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan
Stephanie N. Morrison
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

– and –

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Alexander W. Welch (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors
and Debtors in Possession*

.                                                       2

**<u>Exhibit C</u>**

**Consummation Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **SERTA SIMMONS BEDDING, LLC,** | § | Case No. 23-90020 (DRJ) |
| *et al.,* | § | |
| | § | Jointly Administered |
| Debtors.[1] | § | |

**NOTICE OF EFFECTIVE DATE OF MODIFIED
FIRST AMENDED JOINT CHAPTER 11 PLAN OF
SERTA SIMMONS BEDDING, LLC AND ITS AFFILIATED DEBTORS**

     **PLEASE TAKE NOTICE** that on May [●], 2023, the Honorable David R. Jones, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), entered the *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors* (Docket No. [●]) (the "**Confirmation Order**") confirming the *Second Amended Joint Chapter 11 Plan of Serta Simmons Bedding, LLC and Its Affiliated Debtors*, dated May 23, 2023 (Docket No. 977) (as supplemented, the "**Plan**").[2]

     **PLEASE TAKE FURTHER NOTICE** that on [●], 2023 all conditions precedent to consummation of the Plan were satisfied or waived in accordance with Article IX of the Plan. Further, no stay of the Confirmation Order is in effect.  Accordingly, [●], 2023 is the Effective Date of the Plan.  As of the Effective Date, the injunction set forth in Section 10.5 of the Plan is now in place.

     **PLEASE TAKE FURTHER NOTICE** that in accordance with Section 8.1 of the Plan, on the Effective Date, except as otherwise provided in the Plan, and subject to the payment of any applicable Cure amount, subject to Section 8.6 of the Plan governing Employee Arrangements, and subject to the Consenting Creditor Consent Rights and any other applicable consent rights set forth in the Restructuring Support Agreement, all executory contracts and unexpired leases to which any of the Debtors are parties, and which have not expired by their own terms on or prior to the Confirmation Date shall be deemed to be assumed except for any executory contract or unexpired lease that (a) with the reasonable consent of the Requisite Consenting Creditors,

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957).  The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

previously has been assumed, assumed or assigned, or rejected pursuant to a Final Order of the Bankruptcy Court, (b) with the reasonable consent of the Requisite Consenting Creditors, is the subject of a separate (i) assumption motion filed by the Debtors, or (ii) rejection motion filed by the Debtors under section 365 of the Bankruptcy Code before the Confirmation Date, (c) with the reasonable consent of the Requisite Consenting Creditors, is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts, or (d) is the subject of a pending Cure Dispute.  As of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, Plan and Disclosure Statement may be obtained free of charge by visiting the website maintained by Epiq Corporate Restructuring, LLC ("**Epiq**") at https://dm.epiq11.com/sertasimmons.  Parties may also obtain any documents filed in the Chapter 11 Cases for a fee via PACER at https://www.pacer.gov/.  Please note that a PACER password and login are required to access documents via PACER.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the provisions thereof (including the exhibits and schedules thereto and all documents and agreements executed pursuant thereto or in connection therewith), the Plan Supplement, and the Confirmation Order are effective and enforceable and shall bind the Reorganized Debtors, the Released Parties, the Exculpated Parties, all holders of Claims and Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted or are deemed to have accepted the Plan), any other person giving, acquiring, or receiving property under the Plan, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.  All settlements, compromises, releases (including, without limitation, the releases set forth in Section 10.6 of the Plan), waivers, discharges, exculpations, and injunctions set forth in the Plan are effective and binding on any Person or entity that may have had standing to assert any settled, compromised, released, waived, discharged, exculpated, or enjoined Causes of Action.

*[Remainder of Page Left Blank Intentionally]*

Dated:  [●], 2023
        Houston, Texas

           */s/ Draft*
           _____

WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan
Stephanie N. Morrison
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

– and –

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Alexander W. Welch (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors*
*and Debtors in Possession*